No. 23-972

—————————————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

—————————————————————

**UNITED STATES OF AMERICA,**

*Appellee,*

**v.**

**SHEN ZHEN NEW WORLD I, LLC,**

*Defendant-Appellant.*

—————————————————————

On Appeal from the United States District Court
for the Central District of California
20-CR-326 (Hon. John F. Walter)

—————————————————————

**APPELLANT'S EXCERPTS OF RECORD
VOLUME 1 of 14**

—————————————————————

Richard M. Steingard
LAW OFFICES OF
RICHARD M. STEINGARD
724 Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 260-9449
rsteingard@steingardlaw.com

Yaakov M. Roth
Harry S. Graver
Alexis Zhang
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone: (202) 879-3939
yroth@jonesday.com

*Counsel for Defendant-Appellant*

## United States District Court
## Central District of California

UNITED STATES OF AMERICA vs.          Docket No.        **CR 20-326(A)-JFW**

**Defendant**    4. Shen Zhen New World I, LLC          Federal Tax ID:    27-1896960

Identifying Information:  Date of Establishment: February 5, 2010; California Corporate Number: 21003910401; Pacts No: 830393; The L.A. Grand Hotel Downtown 333 S. Figueroa Street, Los Angeles, CA 90071

In the presence of the attorney for the government, the defendant appeared in person on

| MONTH | DAY | YEAR |
|---|---|---|
| **May 12, 2023** | | |

**COUNSEL**    **Richard Steingard, Retained and Craig Wilke, Retained**

**PLEA**    ☐ **GUILTY,** and the court being satisfied that there is a factual basis for the plea.    ☐ NOLO CONTENDERE    ☒ NOT GUILTY

**FINDING**    There being a jury verdict of **GUILTY,** defendant has been convicted as charged of the offense(s) of:
**Honest Services Mail and Wire Fraud in violation of 18 U.S.C. §§ 1341, 1343, 1346, 2(b) [Counts 2, 3, 4] ; Interstate and Foreign Travel in Aid of Racketeering in violation of 18 U.S.C. §§ 1952(a)(3), 2(b) [Counts 18, 19, 20, 21]; Bribery Concerning Programs Receiving Federal Funds in violation of 18 U.S.C. § 666(a)(2) [Count 23] as charged in the 41-Count Superseding Indictment filed on November 12, 2020 amended on October 19, 2022**

**JUDGMENT AND PROB/ COMM ORDER**    The Court asked whether there was any reason why judgment should not be pronounced.  Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that:

**Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Shen Zhen New World I, LLC, is hereby placed on probation on Counts 2, 3, 4, 18, 19, 20, 21 and 23 of the First Superseding Indictment for a term of five years under the following terms and conditions:**

1.    During the period of probation, the defendant organization shall pay the special assessment, fine, and costs in accordance with this judgment's orders pertaining to such payment.

2.    The defendant organization shall not commit another federal, state, or local crime.

3.    The defendant organization shall provide the Probation Officer access to any requested financial information.

4.    Within 30 days from the date of this judgment, the defendant organization shall designate an official of the organization to act as the organization's representative and to be the primary contact with the Probation Officer.

5.    The defendant organization shall answer truthfully all inquiries by the Probation Officer and follow the instructions of the Probation Officer.

6.    The defendant organization shall notify the Probation Officer ten days prior to any change in the principal business or mailing address or within 72 hours if advance notice is not possible.

**ER-0002**

USA vs. **4. Shen Zhen New World I, LLC**    Docket No.: **CR 20-326(A)-JFW**

7.  The defendant organization shall permit a Probation Officer to visit the organization at any of its operating business sites.

8.  The defendant organization shall report to the Probation Officer as directed and shall submit a truthful and complete written report within the first five days of each month.

9.  The defendant organization shall be required to notify the Court or Probation Officer immediately upon learning of (1) any material adverse change in its business or financial condition or prospects, or (2) the commencement of any bankruptcy proceeding, major civil litigation, criminal prosecution, or administrative proceeding against the organization, or any investigation or formal inquiry by government authorities regarding the organization.

10. The defendant organization shall notify the Probation Officer immediately of any intent to sell the organization, change the name of the organization, merge with another business entity, or otherwise dissolve and/or modify, in any form or manner, the organizational structure from its present status.

11. If the defendant organization changes its name, or merges with another company through a stock or assets purchase, the renamed, newly-created, or merged company shall be obliged to meet all of the obligations of the defendant organization in accordance with this judgment's orders pertaining to payment of the fine, special assessment, and costs.

12. The defendant organization shall publicize the nature of the offense committed, the fact of conviction, the nature of the punishment imposed, and the steps that will be taken to prevent the recurrence of similar offenses on defendant's company website (in both the Chinese and English languages. Drafts of publication shall first be reviewed and approved by the Probation Office. The defendant organization shall bear the expense of the publication.

13. The defendant organization shall develop and submit to the Court an effective compliance and ethics program consistent with the requirements set forth in §8B2.1, including a schedule for the implementation of the compliance and ethics program on or before July 1, 2023.

14. Upon approval by the Court of the compliance and ethics program, the defendant organization shall notify its employees and shareholders of its criminal behavior and of the program.

15. The defendant organization shall make periodic submissions to the Probation Officer, as directed by the

    Probation Officer, (A) reporting on the organization's financial condition and results of business operations, and accounting for the disposition of all funds received, and (B) reporting on the organization's progress in implementing the compliance and ethics program. Reports shall disclose any criminal prosecution, civil litigation, or administrative proceeding commenced against the organization, or any investigation or formal inquiry by governmental authorities of which the defendant organization learned since its last report.

16. The defendant organization shall submit to: (A) a reasonable number of regular or unannounced examinations of its books and records at appropriate business premises by the Probation Officer or experts engaged by the Court; and (B) interrogation of knowledgeable individuals within the organization. Compensation to and costs of any experts engaged by the Court shall be paid by the organization.

\\

CR-104 (wpd 12/20)                    JUDGMENT & PROBATION/COMMITMENT ORDER                    Page 2 of 6

USA vs.  **4. Shen Zhen New World I, LLC**                 Docket No.:  **CR 20-326(A)-JFW**

It is ordered that the defendant organization shall pay to the United States a special assessment of $3,200, which is due immediately.

It is ordered that the defendant organization shall pay to the United States costs of prosecution in the amount of $7,481.06, which is due immediately.

It is ordered that the defendant shall pay to the United States a total fine of $4,000,000.  The fine shall be paid in full no later than 60 days after the date of this judgment.

Defendant informed of right to appeal.

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release within this judgment be imposed.  The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

May 12, 2023
_____
Date

_____
U.S. District Judge

It is ordered that the Clerk deliver a copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.

Clerk, U.S. District Court

May 12, 2023
_____
Filed Date

By _____
Deputy Clerk

CR-104 (wpd 12/20)                JUDGMENT & PROBATION/COMMITMENT ORDER                Page 3 of 6

USA vs.  **4. Shen Zhen New World I, LLC**          Docket No.:  **CR 20-326(A)-JFW**

The defendant must comply with the standard conditions that have been adopted by this court (set forth below).

## STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

While the defendant is on probation or supervised release pursuant to this judgment:

1.  The defendant must not commit another federal, state, or local crime;
2.  The defendant must report to the probation office in the federal judicial district of residence within 72 hours of imposition of a sentence of probation or release from imprisonment, unless otherwise directed by the probation officer;
3.  The defendant must report to the probation office as instructed by the court or probation officer;
4.  The defendant must not knowingly leave the judicial district without first receiving the permission of the court or probation officer;
5.  The defendant must answer truthfully the inquiries of the probation officer, unless legitimately asserting his or her Fifth Amendment right against self-incrimination as to new criminal conduct;
6.  The defendant must reside at a location approved by the probation officer and must notify the probation officer at least 10 days before any anticipated change or within 72 hours of an unanticipated change in residence or persons living in defendant's residence;
7.  The defendant must permit the probation officer to contact him or her at any time at home or elsewhere and must permit confiscation of any contraband prohibited by law or the terms of supervision and observed in plain view by the probation officer;
8.  The defendant must work at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons and must notify the probation officer at least ten days before any change in employment or within 72 hours of an unanticipated change;
9.  The defendant must not knowingly associate with any persons engaged in criminal activity and must not knowingly associate with any person convicted of a felony unless granted permission to do so by the probation officer. This condition will not apply to intimate family members, unless the court has completed an individualized review and has determined that the restriction is necessary for protection of the community or rehabilitation;
10.  The defendant must refrain from excessive use of alcohol and must not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
11.  The defendant must notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
12.  For felony cases, the defendant must not possess a firearm, ammunition, destructive device, or any other dangerous weapon;
13.  The defendant must not act or enter into any agreement with a law enforcement agency to act as an informant or source without the permission of the court;
14.  The defendant must follow the instructions of the probation officer to implement the orders of the court, afford adequate deterrence from criminal conduct, protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**ER-0005**

[X]   The defendant must also comply with the following special conditions (set forth below).

## STATUTORY PROVISIONS PERTAINING TO PAYMENT AND COLLECTION OF FINANCIAL SANCTIONS

The defendant must pay interest on a fine or restitution of more than $2,500, unless the court waives interest or unless the fine or restitution is paid in full before the fifteenth (15th) day after the date of the judgment under 18 U.S.C. § 3612(f)(1). Payments may be subject to penalties for default and delinquency under 18 U.S.C. § 3612(g). Interest and penalties pertaining to restitution, however, are not applicable for offenses completed before April 24, 1996. Assessments, restitution, fines, penalties, and costs must be paid by certified check or money order made payable to "Clerk, U.S. District Court." Each certified check or money order must include the case name and number. Payments must be delivered to:

United States District Court, Central District of California
Attn: Fiscal Department
255 East Temple Street, Room 1178
Los Angeles, CA 90012

or such other address as the Court may in future direct.

If all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, the defendant must pay the balance as directed by the United States Attorney's Office. 18 U.S.C. § 3613.

The defendant must notify the United States Attorney within thirty (30) days of any change in the defendant's mailing address or residence address until all fines, restitution, costs, and special assessments are paid in full. 18 U.S.C. § 3612(b)(l)(F).

The defendant must notify the Court (through the Probation Office) and the United States Attorney of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay a fine or restitution, as required by 18 U.S.C. § 3664(k). The Court may also accept such notification from the government or the victim, and may, on its own motion or that of a party or the victim, adjust the manner of payment of a fine or restitution under 18 U.S.C. § 3664(k). See also 18 U.S.C. § 3572(d)(3) and for probation 18 U.S.C. § 3563(a)(7).

Payments will be applied in the following order:

1. Special assessments under 18 U.S.C. § 3013;
2. Restitution, in this sequence (under 18 U.S.C. § 3664(i), all non-federal victims must be paid before the United States is paid):
   Non-federal victims (individual and corporate),
   Providers of compensation to non-federal victims,
   The United States as victim;
3. Fine;
4. Community restitution, under 18 U.S.C. § 3663(c); and
5. Other penalties and costs.

## CONDITIONS OF PROBATION AND SUPERVISED RELEASE PERTAINING TO FINANCIAL SANCTIONS

As directed by the Probation Officer, the defendant must provide to the Probation Officer:  (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns or a signed release authorizing their disclosure and (3) an accurate financial statement, with supporting documentation as to all assets, income and expenses of the defendant.  In addition, the defendant must not apply for any loan or open any line of credit without prior approval of the Probation Officer.

When supervision begins, and at any time thereafter upon request of the Probation Officer, the defendant must produce to the Probation and Pretrial Services Office records of all bank or investments accounts to which the defendant has access, including any business or trust accounts. Thereafter, for the term of supervision, the defendant must notify and receive approval of the Probation Office in advance of opening a new account or modifying or closing an existing one, including adding or deleting signatories; changing the account number or name, address, or other identifying information affiliated with the account; or any other modification. If the Probation Office approves the new account, modification or closing, the defendant must give the Probation Officer all related account records within 10 days of opening, modifying or closing the account. The defendant must not direct or ask anyone else to open or maintain any account on the defendant's behalf.

The defendant must not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the Court have been satisfied in full.

These conditions are in addition to any other conditions imposed by this judgment.

USA vs.  **4. Shen Zhen New World I, LLC**          Docket No.:   **CR 20-326(A)-JFW**

---

## RETURN

I have executed the within Judgment and Commitment as follows:

Defendant delivered on _____  to _____

Defendant noted on appeal on _____

Defendant released on _____

Mandate issued on _____

Defendant's appeal determined on _____

Defendant delivered on _____  to _____

at _____

the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

United States Marshal

By _____

_____       _____
Date                              Deputy Marshal

## CERTIFICATE

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

Clerk, U.S. District Court

By _____

_____       _____
Filed Date                        Deputy Clerk

---

## FOR U.S. PROBATION OFFICE USE ONLY

Upon a finding of violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed) _____       _____
         Defendant                          Date

_____       _____
U. S. Probation Officer/Designated Witness        Date

CR-104 (wpd 12/20)          JUDGMENT & PROBATION/COMMITMENT ORDER          Page 6 of 6

1529

1    Q    And as you sit here today, are you certain that

2  Jose Huizar -- on occasion other people received more chips

3  than Jose Huizar?

4    A    Yes.  Yes.  Correct.  Sometimes Yong Ping would

10:50AM  5  receive more.

6    Q    Did you ever tell the Government that it did not

7  matter who all was present, that Jose Huizar always received

8  the most amount of casino chips from Huang -- Chairman Huang?

9    A    I remember I said that.

10:50AM  10    Q    Did it concern you that Chairman Huang was giving

11  thousands of dollars in casino chips to Jose Huizar during the

12  trips to Las Vegas?

13    A    Yes.

14    Q    Why did it concern you that Chairman Huang was

10:51AM  15  giving thousands of dollars in casino chips to Jose Huizar?

16    A    Because he was a government official.

17    Q    Do you know if Frank Chu had the same concerns?

18    MR. WILKE:  Objection, Your Honor.  Calls for

19  speculation and/or hearsay.

10:51AM  20    THE COURT:  Sustained.

21  BY MR. BUXTON:

22    Q    Without revealing the content of your

23  communications, did you have conversations with Frank Chu about

24  your concerns that Chairman Huang was giving thousands of

10:51AM  25  dollars to Jose Huizar?

1530

| | |
|---|---|
| 1 | MR. WILKE:  Same objection, Your Honor. |
| 2 | THE COURT:  That's a different frame on the |
| 3 | question.  I thought before Chu had told him, and now you're |
| 4 | talking about this witness telling Chu or whoever this person |
| 10:52AM  5 | is?  Is that the call of the question now? |
| 6 | MR. BUXTON:  Yes, Your Honor.  I was going to do |
| 7 | it in several parts. |
| 8 | MR. WILKE:  Objection.  Relevance, then. |
| 9 | THE COURT:  The objection to relevance is |
| 10:52AM  10 | overruled. |
| 11 | THE WITNESS:  Frank Chu also expressed himself, |
| 12 | too. |
| 13 | BY MR. BUXTON: |
| 14 | Q     Frank Chu also expressed those concerns? |
| 10:52AM  15 | MR. WILKE:  I'm going to object and move to |
| 16 | strike as hearsay. |
| 17 | THE WITNESS:  Yes. |
| 18 | BY MR. BUXTON: |
| 19 | Q     Do you know if Frank Uhn also had the same |
| 10:53AM  20 | concerns you did? |
| 21 | MR. WILKE:  Same objection.  Speculation. |
| 22 | Hearsay. |
| 23 | THE COURT:  Sustained. |
| 24 | BY MR. BUXTON: |
| 10:53AM  25 | Q     Did you have any conversations with Frank Uhn |

**ER-0009**

1531

|  |  |  |
|---|---|---|
| | 1 | about your concerns that Chairman Huang was providing casino |
| | 2 | chips to Jose Huizar in Las Vegas? |
| | 3 | MR. WILKE:  Same objection.  Hearsay. |
| | 4 | THE COURT:  Overruled. |
| 10:53AM | 5 | THE WITNESS:  Frank Uhn also mentioned it to me, |
| | 6 | too. |
| | 7 | BY MR. BUXTON: |
| | 8 | Q    Did you have any conversations with Yong Ping |
| | 9 | about your concern that Chairman Huang was giving thousands of |
| 10:53AM | 10 | dollars in casino chips to Jose Huizar? |
| | 11 | MR. WILKE:  Objection.  Hearsay. |
| | 12 | THE COURT:  Overruled. |
| | 13 | A    Yes. |
| | 14 | Q    Do you know if Yong Ping shared your concerns? |
| 10:54AM | 15 | MR. WILKE:  Same objection, Your Honor. |
| | 16 | THE COURT:  Overruled. |
| | 17 | THE WITNESS:  He also mentioned it. |
| | 18 | BY MR. BUXTON: |
| | 19 | Q    During one of the early trips to Las Vegas at the |
| 10:54AM | 20 | Wynn Casino, did you, Chairman Huang and Jose Huizar meet in a |
| | 21 | private room for about five minutes? |
| | 22 | A    Yes. |
| | 23 | Q    Can you describe that event? |
| | 24 | A    We went back to the room, and then we talked for |
| 10:54AM | 25 | a little while.  And then the boss asked him to enter the |

1586

1    Q    The only people that Mr. Huang said let's not

2  bring them anymore is Jose Huizar and George; correct?

3    A    Yes.  That's correct.

4    Q    And did that seem like a good idea that a public

01:16PM   5  official under investigation by the FBI -- maybe it's not a

6  good idea to bring him to Las Vegas for the weekends.  Does

7  that seem like a good idea to you?

8    A    Should not bring him along.

9    Q    And you always had some doubts about whether you

01:17PM  10  should bring Mr. Huizar to Las Vegas; correct?

11    A    Yes.  Correct.

12    Q    And that's because he was a public official;

13  correct?

14    A    Yes.  Correct.

01:17PM  15    Q    And you thought it looked bad; correct?

16    A    Yes.  Correct.

17    Q    And you thought it could lead to trouble;

18  correct?

19    A    Yes.  Correct.

01:17PM  20    Q    You raised these concerns with Chairman Huang;

21  correct?

22    A    Yes.  Correct.

23    Q    And the first time you raised them with

24  Chairman Huang --

01:17PM  25        MR. BUXTON:  Objection.  Hearsay.

1587

```
            1                THE COURT:  Sustained.

            2                MR. WILKE:  I haven't asked the question yet,

            3    Your Honor.

            4                THE COURT:  Go ahead and finish the question.

  01:17PM   5    BY MR. WILKE:

            6         Q     The first time you raised them with

            7    Chairman Huang, what was his reaction?

            8                MR. BUXTON:  Objection.  Calls for hearsay.

            9                THE COURT:  Sustained.

  01:18PM  10                MR. WILKE:   Goes to state of mind, Your Honor.

           11    Not offered for its truth.

           12                THE COURT:  The objection is sustained.

           13    BY MR. WILKE:

           14         Q     Did Chairman Huang have a reaction?

  01:18PM  15         A     Yes.

           16         Q     What was his reaction?

           17                MR. BUXTON:  Objection.  Calls for hearsay.

           18                THE COURT:  Sustained.

           19    BY MR. WILKE:

  01:18PM  20         Q     Did Chairman Huang, when you had first raised

           21    this issue with him, did he express any concern that this was

           22    somehow illegal or inappropriate?

           23                MR. BUXTON:  Objection.  Calls for hearsay.

           24                THE COURT:  Sustained.

  01:18PM  25                MR. WILKE:  I'm not asking for what he said.
```

1588

1    THE COURT:  It's a backdoor way of getting a
2 hearsay statement in.
3    MR. WILKE:  It goes to his state of mind, not
4 offered for the truth.
5    THE COURT:  The objection is sustained.
6 BY MR. WILKE:
7    Q    When you raised these concerns for the first time
8 with Chairman Huang, he continued to invite Jose Huizar and
9 George Esparza to Las Vegas; correct?
10   A    Yes.
11   Q    And that went on for several other trips until
12 you learned about this FBI investigation; correct?
13   A    Yes.  Correct.
14   Q    After you learned about the FBI investigation and
15 Mr. Huizar stopped coming on the trips, Chairman Huang
16 continued forward with the tower project, didn't he?
17   THE INTERPRETER:  Excuse me, Counsel?
18   MR. WILKE:  Do you want me to restate the
19 question?
20   THE INTERPRETER:  The questions kind of drops
21 off.
22   MR. WILKE:  I'm sorry.
23 BY MR. WILKE:
24   Q    Focusing on this period of time around the
25 Cabo San Lucas trip, where you learned about the FBI

01:18PM  (line 5)
01:19PM  (line 10)
01:19PM  (line 15)
01:19PM  (line 20)
01:20PM  (line 25)

1643

| | |
|---|---|
| 1 | the 6th of November. It's Docket No. 794. It's a request for |
| 2 | reconsideration of my ruling sustaining the hearsay objection, |
| 3 | and I have reviewed the defendant's offer of proof and the |
| 4 | Government's -- and both the defendant and the Government's |
| 08:19AM 5 | position and I think my ruling was correct and I'm not going to |
| 6 | change it. |
| 7 | So we will wait for the juror, and then we will |
| 8 | begin with Mr. Zheng. |
| 9 | (A recess was taken at 8:19 a.m.) |
| 08:19AM 10 | (The following proceedings were held in |
| 11 | open court in the presence of the jury:) |
| 12 | THE COURT: All right. Good morning, ladies and |
| 13 | gentlemen. We're prepared to proceed. |
| 14 | You may resume your cross-examination. |
| 08:27AM 15 | MR. WILKE: Thank you, Your Honor. |
| 16 | **RICKY ZHENG,** |
| 17 | **GOVERNMENT'S WITNESS, PREVIOUSLY SWORN.** |
| 18 | **CROSS-EXAMINATION (RESUMED)** |
| 19 | BY MR. WILKE: |
| 08:27AM 20 | Q Mr. Zheng, when we left on Friday, we were |
| 21 | talking about this period of time prior to 2013 when -- before |
| 22 | Mr. Huang had met Mr. Huizar. |
| 23 | Do you recall that period of time? |
| 24 | A Yes, I do. |
| 08:28AM 25 | Q Okay. Now, you had testified on direct |

ORIGINAL

**Redacted**

| FILED |
| CLERK, U.S. DISTRICT COURT |
| 11/10/22 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: _____ SR _____ DEPUTY |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,       )   Case No. **CR 20-326(A)-JFW**
                                )
                Plaintiff,      )   **VERDICT FORM**
                                )
        v.                      )
                                )
SHEN ZHEN NEW WORLD I, LLC,     )
                                )
                Defendant.      )
_____)

## COUNT TWO

### Honest Services Wire Fraud

1.  We, the Jury, unanimously find the defendant SHEN ZHEN NEW WORLD I, LLC (**check one**):

       ✓       GUILTY

      _____       NOT GUILTY

of honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, as charged in Count Two of the First Superseding Indictment.

**(If your response to Question No. 1 is "GUILTY," you _must_ answer Question Nos. 2 and 3.  If your response to Question No. 1 is "NOT GUILTY," please _skip_ Question Nos. 2 and 3 and proceed to Question No. 4.)**

1

1    2.   We, the Jury, further unanimously find in support of

2  our verdict on Count Two that as part of the scheme or plan

3  to defraud the City of Los Angeles and its citizens of their

4  right to Jose Huizar's honest services, defendant SHEN ZHEN

5  NEW WORLD I, LLC provided financial benefits to Jose Huizar

6  intending to receive, in exchange for those financial

7  benefits, the following official act(s) (check all that

8  apply):

9         ✓       Jose Huizar presenting motions and

10     resolutions in various City of Los Angeles (the "City")

11     committees to benefit the redevelopment of the L.A. Grand

12     Hotel.

13        ✓       Jose Huizar voting on the redevelopment of

14     the L.A. Grand Hotel in various City committees,

15     including the PLUM Committee, and City Council.

16        ✓       Jose Huizar taking action in the PLUM

17     committee to expedite the approval process and affect

18     project costs for the redevelopment of the L.A. Grand

19     Hotel.

20        ✓       Jose Huizar exerting pressure on other City

21     officials to influence the approval process of the

22     redevelopment of the L.A. Grand Hotel.

23        ✓       Jose Huizar introducing or voting on City

24     resolutions to enhance the professional reputation and

25     marketability of defendant SHEN ZHEN NEW WORLD I, LLC

26     and/or Wei Huang in the City to benefit the redevelopment

27     of the L.A. Grand Hotel.

28           **(Please proceed to Question No. 3.)**

2

**ER-0017**

3. We, the Jury, unanimously find as follows on the question of the statute of limitations regarding Count Two only (**check one**): Did the government prove beyond a reasonable doubt that the scheme or plan to defraud the City of Los Angeles and its citizens of their right to Jose Huizar's honest services affected a financial institution?

_____✓_____ YES

_____ NO

**(Please proceed to Question No. 4.)**

3

## COUNT THREE

### Honest Services Wire Fraud

4.   We, the Jury, unanimously find the defendant SHEN ZHEN NEW WORLD I, LLC (**check one**):

_____✓_____   GUILTY

_____   NOT GUILTY

of honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, as charged in Count Three of the First Superseding Indictment.

(**If your response to Question No. 4 is "GUILTY," you _must_ answer Question No. 5.  If your response to Question No. 4 is "NOT GUILTY," please _skip_ Question No. 5 and proceed to Question No. 6.)**

4

5.   We, the Jury, further unanimously find in support of our verdict on Count Three that as part of the scheme or plan to defraud the City of Los Angeles and its citizens of their right to Jose Huizar's honest services, defendant SHEN ZHEN NEW WORLD I, LLC provided financial benefits to Jose Huizar intending to receive, in exchange for those financial benefits, the following official act(s) (**check all that apply**):

    ✓    Jose Huizar presenting motions and resolutions in various City committees to benefit the redevelopment of the L.A. Grand Hotel.

    ✓    Jose Huizar voting on the redevelopment of the L.A. Grand Hotel in various City committees, including the PLUM Committee, and City Council.

    ✓    Jose Huizar taking action in the PLUM committee to expedite the approval process and affect project costs for the redevelopment of the L.A. Grand Hotel.

    ✓    Jose Huizar exerting pressure on other City officials to influence the approval process of the redevelopment of the L.A. Grand Hotel.

**(Please Proceed to Question No. 6.)**

## COUNT FOUR

### Honest Services Wire Fraud

6.   We, the Jury, unanimously find the defendant SHEN ZHEN NEW WORLD I, LLC (**check one**):

_____   ✓   GUILTY

_____   NOT GUILTY

of honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, as charged in Count Four of the First Superseding Indictment.

**(If your response to Question No. 6 is "GUILTY," you _must_ answer Question No. 7.  If your response to Question No. 6 is "NOT GUILTY," please _skip_ Question No. 7 and proceed to Question No. 8.)**

6

7.   We, the Jury, further unanimously find in support of our verdict on Count Four that as part of the scheme or plan to defraud the City of Los Angeles and its citizens of their right to Jose Huizar's honest services, defendant SHEN ZHEN NEW WORLD I, LLC provided financial benefits to Jose Huizar intending to receive, in exchange for those financial benefits, the following official act(s) (**check all that apply**):

     ✓     Jose Huizar presenting motions and resolutions in various City committees to benefit the redevelopment of the L.A. Grand Hotel.

     ✓     Jose Huizar voting on the redevelopment of the L.A. Grand Hotel in various City committees, including the PLUM Committee, and City Council.

     ✓     Jose Huizar taking action in the PLUM committee to expedite the approval process and affect project costs for the redevelopment of the L.A. Grand Hotel.

     _____     Jose Huizar exerting pressure on other City officials to influence the approval process of the redevelopment of the L.A. Grand Hotel.

**(Please Proceed to Question No. 8.)**

7

## COUNT EIGHTEEN

### Interstate and Foreign Travel In Aid of Bribery

8.    We, the Jury, unanimously find the defendant SHEN ZHEN NEW WORLD I, LLC (**check one**):

_____     ✓          GUILTY

_____                NOT GUILTY

of interstate and foreign travel in aid of bribery, in violation of 18 U.S.C. § 1952(a)(3), as charged in Count Eighteen of the First Superseding Indictment.

**(Please Proceed to Question No. 9.)**

8

**ER-0023**

## COUNT NINETEEN

### Interstate and Foreign Travel In Aid of Bribery

9.    We, the Jury, unanimously find the defendant SHEN ZHEN NEW WORLD I, LLC (**check one**):

    ✓        GUILTY

    _____        NOT GUILTY

of interstate and foreign travel in aid of bribery, in violation of 18 U.S.C. § 1952(a)(3), as charged in Count Nineteen of the First Superseding Indictment.

**(Please Proceed to Question No. 10.)**

9

**ER-0024**

**COUNT TWENTY**

**Interstate and Foreign Travel In Aid of Bribery**

10. We, the Jury, unanimously find the defendant SHEN ZHEN NEW WORLD I, LLC (**check one**):

_____ ✔ GUILTY

_____ NOT GUILTY

of interstate and foreign travel in aid of bribery, in violation of 18 U.S.C. § 1952(a)(3), as charged in Count Twenty of the First Superseding Indictment.

**(Please Proceed to Question No. 11.)**

10

**ER-0025**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT TWENTY-ONE

## Interstate and Foreign Travel In Aid of Bribery

11. We, the Jury, unanimously find the defendant SHEN ZHEN NEW WORLD I, LLC (**check one**):

    ✓    GUILTY

    _____    NOT GUILTY

of interstate and foreign travel in aid of bribery, in violation of 18 U.S.C. § 1952(a)(3), as charged in Count Twenty-One of the First Superseding Indictment.

**(Please Proceed to Question No. 12.)**

11

**ER-0026**

**COUNT TWENTY-THREE**

**Bribery Concerning Programs Receiving Federal Funds**

12. We, the Jury, unanimously find the defendant SHEN ZHEN NEW WORLD I, LLC (**check one**):

_____ ✓      GUILTY

_____        NOT GUILTY

of bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(2), as charged in Count Twenty-Three of the First Superseding Indictment.

**(The foreperson should now sign and date this verdict form.)**

/S/

_____
FOREPERSON OF THE JURY

DATED: November 10, 2022, at Los Angeles, California.

12

**ER-0027**

ORIGINAL

1

2 **FILED**
CLERK, U.S. DISTRICT COURT
3

4
11/10/22
5

6 **CENTRAL DISTRICT OF CALIFORNIA**
BY: _____SR_____ **DEPUTY**
7

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA, ) Case No. **CR 20-326(A)-JFW**
)
12             Plaintiff, ) **JURY INSTRUCTIONS**
)
13      v. )
)
14 SHEN ZHEN NEW WORLD I, LLC, )
)
15             Defendant. )
)
16 ————————————————————————

17

18

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. 1.

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be available in the jury room for you to consult.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts. It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law. You will recall that you took an oath promising to do so at the beginning of the case. You should also not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances. Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.

You must follow all these instructions and not single out some and ignore others; they are all important. Please do not read into these instructions, or into anything I may have said or done, any suggestion as to what verdict you should return -- that is a matter entirely up to you.

1

COURT'S INSTRUCTION NO. 2.

You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality.

The case is important to the government, for the enforcement of criminal laws is a matter of prime concern to the community. Equally, it is important to the defendant, who is charged with a serious crime.

The fact that the prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration. All parties, whether government or individuals, stand as equals at the bar of justice.

2

COURT'S INSTRUCTION NO. 3.


The fact that a defendant is a California limited liability company should not affect your verdict.  Under the law, a limited liability company is considered a person and all persons are equal before the law.  A limited liability company is entitled to the same fair and conscientious consideration by you as any other person.

3

COURT'S INSTRUCTION NO. 4.

The charges against the defendant are contained in an indictment. The indictment is not evidence. The defendant has pleaded not guilty to the charges. The defendant is presumed to be innocent unless and until the government proves the defendant guilty beyond a reasonable doubt. In addition, the defendant does not have to present any evidence to prove innocence. The defendant does not have to prove innocence; the government has the burden of proving every element of the charges beyond a reasonable doubt.

4

COURT'S INSTRUCTION NO. 5.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced the defendant is guilty.  It is not required that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation.  It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty.  On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.

COURT'S INSTRUCTION NO. 6.


The evidence you are to consider in deciding what the
facts are consists of:

First, the sworn testimony of any witness;

Second, the exhibits received in evidence; and

Third, any facts to which the parties have agreed.

6

**ER-0034**

COURT'S INSTRUCTION NO. 7.

The following things are not evidence and you may not consider them in deciding what the facts are:

1. Questions, statements, objections, and arguments by the lawyers are not evidence. The lawyers are not witnesses. Although you must consider a lawyer's questions to understand the answers of a witness, the lawyer's questions are not evidence. Similarly, what the lawyers have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

2. Any testimony that I have excluded, stricken, or instructed you to disregard is not evidence. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence in a limited way, you must do so.

3. Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

7

COURT'S INSTRUCTION NO. 8.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which you can find another fact.

You are to consider both direct and circumstantial evidence. Either can be used to prove any fact. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

8

COURT'S INSTRUCTION NO. 9.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

First, the witness's opportunity and ability to see or hear or know the things testified to;

Second, the witness's memory;

Third, the witness's manner while testifying;

Fourth, the witness's interest in the outcome of the case, if any;

Fifth, the witness's bias or prejudice, if any;

Sixth, whether other evidence contradicted the witness's testimony;

Seventh, the reasonableness of the witness's testimony in light of all the evidence; and

Eighth, any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

9

**ER-0037**

1    However, if you decide that a witness has deliberately

2  testified untruthfully about something important, you may

3  choose not to believe anything that witness said.  On the

4  other hand, if you think the witness testified untruthfully

5  about some things but told the truth about others, you may

6  accept the part you think is true and ignore the rest.

7    The weight of the evidence as to a fact does not

8  necessarily depend on the number of witnesses who testify.

9  What is important is how believable the witnesses were, and

10  how much weight you think their testimony deserves.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

**ER-0038**

COURT'S INSTRUCTION NO. 10.


You are here only to determine whether the defendant is guilty or not guilty of the charges in the indictment. The defendant is not on trial for any conduct or offense not charged in the indictment.

11

**ER-0039**

COURT'S INSTRUCTION NO. 11.


A separate crime is charged against the defendant in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

12

**ER-0040**

1          COURT'S INSTRUCTION NO. 12.

2

3          You have heard testimony of a witness who testified in

4    the Chinese language and a witness who testified in the

5    Spanish language.  Witnesses who do not speak English or are

6    more proficient in another language testify through an

7    official interpreter.  Although some of you may know the

8    Chinese language or Spanish language, it is important that

9    all jurors consider the same evidence.  Therefore, you must

10   accept the interpreter's translation of the witness's

11   testimony.  You must disregard any different meaning.

12          You must not make any assumptions about a witness or a

13   party based solely on the fact that an interpreter was used.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

**ER-0041**

COURT'S INSTRUCTION NO. 13.

The indictment alleges that certain acts and offenses were committed "on or about" certain dates.

Although it is necessary for the government to prove beyond a reasonable doubt that the offense was committed on a date reasonably near the dates alleged in the indictment, it is not necessary for the government to prove that the offense was committed precisely on the date charged.

14

**ER-0042**

COURT'S INSTRUCTION NO. 14.


The indictment alleges that approximate amounts of money were involved in the crimes charged. It is not necessary for the government to prove the exact or precise amounts of money alleged in the indictment.

15

**ER-0043**

COURT'S INSTRUCTION NO. 15.

You have heard testimony from George Esparza, a witness who pleaded guilty to a crime arising out of the same events for which the defendant is on trial and hopes to receive benefits and favored treatment from the government in connection with this case. His guilty plea is not evidence against the defendant, and you may consider it only in determining this witness's believability.

For these reasons, in evaluating the testimony of George Esparza, you should consider the extent to which or whether his testimony may have been influenced by any of these factors. In addition, you should examine the testimony of George Esparza with greater caution than that of other witnesses.

16

COURT'S INSTRUCTION NO. 16.

You have heard testimony from Ricky Zheng who received limited immunity from the government. His testimony was given in exchange for a promise by the government not to use the witness's testimony or any evidence derived therefrom in a later prosecution against that witness, subject to certain limitations.

For this reason, in evaluating the testimony of Ricky Zheng, you should consider the extent to which or whether his testimony may have been influenced by this factor. In addition, you should examine the testimony of Ricky Zheng with greater caution than that of other witnesses.

17

COURT'S INSTRUCTION NO. 17.


You have heard testimony about the government's investigation in this case. Law enforcement officials may engage in stealth and deception, such as the use of surreptitious recordings, in order to investigate criminal activities.

18

COURT'S INSTRUCTION NO. 18.

Certain charts and summaries have been admitted into evidence. Charts and summaries are only as good as the underlying supporting material. You should, therefore, give them only such weight as you think the underlying material deserves.

19

COURT'S INSTRUCTION NO. 19.

The defendant is charged in Counts Two, Three, and Four of the indictment with honest services wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346. For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant devised or knowingly participated in a scheme or plan to deprive the City of Los Angeles or its citizens of their right of honest services;

Second, the scheme or plan consisted of financial benefits that defendant provided intending, at the time, to receive in exchange at least one official act by Jose Huizar in connection with the approval of the redevelopment of the L.A. Grand Hotel. The "exchange" may be express or may be implied from all the surrounding circumstances.

Third, Jose Huizar owed a fiduciary duty to the City of Los Angeles or its citizens;

Fourth, the defendant acted with the intent to defraud by depriving the City of Los Angeles or its citizens of their right of honest services;

Fifth, the defendant's act was material; that is, it had a natural tendency to influence, or was capable of influencing a person or entity's acts; and

Sixth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out the scheme or plan. The interstate wire

20

ER-0048

communication charged in Count Two of the indictment is a bank wire of $570,000 transmitted on or about September 23, 2014 from Jose Huizar's East West Bank account ending in 0407 to a Wells Fargo account ending in 7209. The interstate wire communication charged in Count Three of the indictment is an e-mail sent on or about October 19, 2016 from Ricky Zheng to Jose Huizar, forwarding an e-mail and attachment from Wei Huang regarding the redevelopment of the L.A. Grand Hotel. The interstate wire communication charged in Count Four of the indictment is the e-mail sent on or about December 19, 2016 from Jose Huizar to Ricky Zheng providing recommendations for consultants for the redevelopment of the L.A. Grand Hotel.

In addition, with respect to Count Two <u>only</u>, in order for the defendant to be found guilty, the government also must prove beyond a reasonable doubt that the scheme or plan to defraud affected at least one financial institution. The scheme or plan "affects" a financial institution if it exposes a financial institution to a new or increased risk of loss. A financial institution need not have actually suffered a loss in order to have been affected by the scheme or plan.

<u>Scheme to Defraud</u>

In determining whether a scheme to defraud exists, you may consider not only the defendant's and co-schemers' words and statements, but also the circumstances in which they are used as a whole.

21

## Official Act

"Official act" means any decision or action on a question, matter, cause, suit, proceeding, or controversy involving the formal exercise of governmental power. The question, matter, cause, suit, proceeding, or controversy must be pending, or be able by law to be brought, before a public official, and the question, matter, cause, suit, proceeding, or controversy must be something specific and focused, rather than a broad policy objective.

The official's decision or action may include using his official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act by another official. The bribe recipient need not be the final decisionmaker.

The government does not need to prove that the official ever actually intended to perform an official act or that the official ever did, in fact, perform an official act. Merely arranging a meeting, hosting an event, or giving a speech do not qualify as the taking of a specific action.

## Public Official and Fiduciary Duty

A "public official," includes an agent of a State or local government, or any agency thereof, that is, a person authorized to act on behalf of a government, including an employee, officer, manager, or representative.

A public official serves as a trustee for the citizens and the local government, and thus owes a fiduciary duty to

22

**ER-0050**

1    the citizens and the local government.  A public official has
2    a fiduciary duty to act only for the benefit of the public.
3        The defendant need not owe the fiduciary duty personally,
4    so long as the defendant devises or participates in a bribery
5    scheme intended to deprive the public of its right to a
6    fiduciary's honest services.
7
8    Interstate Wire Communication
9        A wire communication is caused when one knows that a wire
10   will be used in the ordinary course of business or when one
11   can reasonably foresee such use.
12       It need not have been reasonably foreseeable to the
13   defendant that the wire communication would be interstate in
14   nature.  Rather, it must have been reasonably foreseeable to
15   the defendant that some wire communication would occur in
16   furtherance of the scheme, and an interstate wire
17   communication must have actually occurred in furtherance of
18   the scheme.
19
20
21
22
23
24
25
26
27
28

23

**ER-0051**

COURT'S INSTRUCTION NO. 20.

If you decide that the defendant was a knowing participant or member of a scheme to defraud and that the defendant had the intent to defraud, the defendant may be responsible for other co-schemers' actions during the course of and in furtherance of the scheme, even if the defendant did not know what they said or did.

For the defendant to be guilty of an offense committed by a co-schemer in furtherance of the scheme, the offense must be one that the defendant could reasonably foresee as a necessary and natural consequence of the scheme to defraud.

24

**ER-0052**

COURT'S INSTRUCTION NO. 21.


The defendant is charged in Counts Eighteen, Nineteen, Twenty, and Twenty-One of the indictment with interstate or foreign travel in aid of bribery in violation of Title 18, United States Code, Section 1952(a)(3). For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant, acting through its agent, Wei Huang, traveled, or caused another to travel, from one state to another, or from the United States to some place outside the United States;

Second, the defendant, acting through its agent, Wei Huang, did so with intent to promote, manage, establish, carry on, or facilitate an unlawful activity, namely, bribery in violation of California law, including California Penal Code sections 67.5, 85, or 165; and

Third, thereafter the defendant, acting through its agent, Wei Huang, performed the charged act to promote, manage, establish, carry on, or facilitate bribery in violation of California Penal Code sections 67.5, 85, or 165.


For Count Eighteen of the indictment, that charged act is, between on or about January 1 and 10, 2016, the defendant, acting through its agent, Wei Huang, provided group expenses and Australian currency, in exchange for Jose Huizar agreeing to perform official acts to benefit the redevelopment of the L.A. Grand Hotel.

25

**ER-0053**

1     For Count Nineteen of the indictment, that charged act is

2 between on or about April 30 and May 2, 2016, the defendant,

3 acting through its agent, Wei Huang, provided group expenses

4 and casino gambling chips, in exchange for Jose Huizar

5 agreeing to perform official acts to benefit the

6 redevelopment of the L.A. Grand Hotel.

7     For Count Twenty, that charged act is, between on or

8 about August 5 and 7, 2016, the defendant, acting through its

9 agent, Wei Huang, provided group expenses and casino gambling

10 chips, in exchange for Jose Huizar agreeing to perform

11 official acts to benefit the redevelopment of the L.A. Grand

12 Hotel.

13     For Count Twenty-One, that charged act is, between on or

14 about February 4 and 6, 2017, the defendant, acting through

15 its agent, Wei Huang, provided group expenses and casino

16 gambling chips, in exchange for Jose Huizar agreeing to

17 perform official acts to benefit the redevelopment of the

18 L.A. Grand Hotel.

19

20     The government does not need to prove that the unlawful

21 activity was the only or even primary reason the defendant

22 traveled.

23

24 <u>California Penal Code Sections 67.5, 85, and 165</u>

25     California Penal Code Section 67.5 is violated when a

26 person gives or offers a bribe to any ministerial officer,

27 employee, or appointee of the City of Los Angeles (or to

28 someone acting on his behalf).

26

**ER-0054**

1    California Penal Code Section 85 is violated when a
2 person gives or offers a bribe to any member of the
3 legislative body of the City of Los Angeles (or to someone
4 acting on his behalf).

5    California Penal Code Section 165 is violated when a
6 person gives or offers a bribe to any councilmember of the
7 City of Los Angeles (or someone acting on his behalf).

8    A "bribe" is anything of value or advantage, present or
9 future, or a promise to give such a thing, that is given or
10 offered with the corrupt intent to unlawfully influence the
11 public or official action, vote, or opinion of the person to
12 whom the bribe is given.  There need not be a specific
13 official action pending when the bribe is given, or proof
14 that the bribe was intended to influence any particular such
15 act.  It is sufficient that there were subjects of potential
16 action by the recipient, and that the bribe was given with
17 the intent that some such action be influenced.

18
19
20
21
22
23
24
25
26
27
28

27

**ER-0055**

COURT'S INSTRUCTION NO. 22.

The defendant is charged in Count Twenty-Three of the indictment with bribery concerning programs receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(2).

In order to prove that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, Jose Huizar or George Esparza was an agent of a local government -- specifically, the City of Los Angeles;

Second, the defendant gave, offered, or agreed to give a thing of value to Jose Huizar or George Esparza; namely, casino gambling chips, accommodations, and travel expenses, and approximately $575,000 in collateral applied to Jose Huizar's personal loan from East West Bank.

Third, the defendant acted corruptly, that is, with an intent to influence Jose Huizar or George Esparza in connection with any business, transaction, or series of transactions of the City involving anything of value of $5,000 or more. Specifically, the Government must prove that the defendant intended to influence Jose Huizar or George Esparza in connection with the redevelopment of the L.A. Grand Hotel, including in (1) presenting motions in various City committees to benefit the redevelopment of the L.A. Grand Hotel; (2) voting on the redevelopment of the L.A. Grand Hotel in various City committees, including the PLUM Committee and City Council; (3) taking action in the PLUM Committee to expedite the approval process of the

**ER-0056**

1  redevelopment of the L.A. Grand Hotel; or (4) exerting
2  pressure on other City of Los Angeles officials to influence
3  the approval process of the redevelopment of the L.A. Grand
4  Hotel.

5      Fourth, the City received benefits in excess of $10,000
6  under a Federal program involving a grant, contract, subsidy,
7  loan, guarantee, insurance, or other form of Federal
8  assistance in any one-year period.

9      The term "agent" means a person authorized to act on
10  behalf of a local government, including an employee, officer,
11  manager, or representative.

12      The term "local" means of, or pertaining to, a political
13  subdivision within a State of the United States.

14      The phrase "in any one-year period" means a continuous
15  period that commences no earlier than 12 months before the
16  commission of the offense or that ends no later than 12
17  months after the commission of the offense.  Such period may
18  include time both before and after the commission of the
19  offense.

20      The government does not need to prove that any of the
21  Federal benefits in excess of $10,000 received by the City of
22  Los Angeles were misappropriated or otherwise connected to
23  the commission of the offense.

24
25
26
27
28

29

**ER-0057**

COURT'S INSTRUCTION NO. 23.

The defendant is a limited liability company ("LLC"). An LLC may be found guilty or not guilty of a criminal offense. An LLC can act only through its agents, that is, its members, managers, directors, officers, employees, and other persons authorized to act for it or with authority to direct others to act for it. The knowledge obtained by agents of LLCs acting within the scope of their employment is imputed to the LLC. Accordingly, if a specific agent knows something within the scope of his or her employment, then the LLC can be said to know the same thing.

To find an LLC guilty, you must find beyond a reasonable doubt that:

First, each element of the crime charged against the LLC was committed by one or more of its agents;

Second, in committing those acts the agent(s) intended, at least in part, to benefit the LLC; and

Third, each act was within the scope of employment of the agent who committed it.

For an act to be within the scope of an agent's employment, it must relate directly to the performance of the agent's general duties for the LLC. It is not necessary for the act itself to have been authorized by the LLC.

If an agent was acting within the scope of his or her employment, the fact that an agent's act was illegal, contrary to his or her employer's instructions, or against

30

**ER-0058**

1  the LLC's policies will not relieve the LLC of criminal

2  responsibility for it.

31

**ER-0059**

1        COURT'S INSTRUCTION NO. 24.

2

3        An act is done knowingly if the defendant is aware of the

4   act and does not act through ignorance, mistake, or accident.

5   You may consider evidence of the defendant's words, acts, or

6   omissions, along with all the other evidence, in deciding

7   whether the defendant acted knowingly.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ER-0060**

1                      COURT'S INSTRUCTION NO. 25.

2

3      A defendant may be found guilty of the crimes charged

4 even if the defendant did not personally commit the acts

5 constituting the crime if the defendant willfully caused an

6 act to be done that if directly performed by him would be an

7 offense against the United States.  A defendant who puts in

8 motion or causes the commission of an indispensable element

9 of the offense may be found guilty as if the defendant had

10 committed this element itself.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33

**ER-0061**

COURT'S INSTRUCTION NO. 26.

When you begin your deliberations, elect one member of the jury as your foreperson who will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict, whether guilty or not guilty, must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially. You should also not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances. Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases. Unconscious biases are stereotypes, attitudes, or preferences that people may

34

**ER-0062**

1   consciously reject but may be expressed without conscious

2   awareness, control, or intention.

3       It is your duty as jurors to consult with one another and

4   to deliberate with one another with a view towards reaching

5   an agreement if you can do so.  During your deliberations,

6   you should not hesitate to reexamine your own views and

7   change your opinion if you become persuaded that it is wrong.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. 27.

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This restriction includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, text messaging, or any Internet chat room, blog, website or any other forms of social media. This restriction applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party

36

**ER-0064**

1  has had an opportunity to address.  A juror who violates

2  these restrictions jeopardizes the fairness of these

3  proceedings, and a mistrial could result that would require

4  the entire trial process to start over.  If any juror is

5  exposed to any outside information, please notify the court

6  immediately.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

37

**ER-0065**

COURT'S INSTRUCTION NO. 28.

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

38

**ER-0066**

COURT'S INSTRUCTION NO. 29.

The punishment provided by law for this crime is for the court to decide. You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.

39

COURT'S INSTRUCTION NO. 30.

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

40

COURT'S INSTRUCTION NO. 31.

If it becomes necessary during your deliberations to
communicate with me, you may send a note through the clerk,
signed by any one or more of you.  No member of the jury
should ever attempt to communicate with me except by a signed
writing, and I will respond to the jury concerning the case
only in writing or here in open court.  If you send out a
question, I will consult with the lawyers before answering
it, which may take some time.  You may continue your
deliberations while waiting for the answer to any question.
Remember that you are not to tell anyone -- including me --
how the jury stands, numerically or otherwise, on any
question submitted to you, including the question of the
guilt of the defendant, until after you have reached a
unanimous verdict or have been discharged.

41

**ER-0069**

```
1    E. MARTIN ESTRADA
     United States Attorney
2    SCOTT M. GARRINGER
     Assistant United States Attorney
3    Chief, Criminal Division
     MACK E. JENKINS (Cal. Bar No. 242101)
4    Assistant United States Attorney
     Chief, Public Corruption & Civil Rights Section
5    SUSAN S. HAR (Cal. Bar No. 301924)
     J. JAMARI BUXTON (Cal Bar. No. 268383)
6    Assistant United States Attorneys
     Public Corruption & Civil Rights Section
7    PATRICK CASTAÑEDA (Cal Bar No. 319431)
     Assistant United States Attorney
8    International Narcotics, Money Laundering,
     & Racketeering Section
9         1500 United States Courthouse
          312 North Spring Street
10        Los Angeles, California 90012
          Telephone: (213) 894-3289
11        Facsimile: (213) 894-6436
          E-mail:   Susan.Har@usdoj.gov
12                  Jamari.Buxton@usdoj.gov
                    Patrick.Castaneda@usdoj.gov
13
     Attorneys for Plaintiff
14   UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:20-326(A)-JFW-4 |
| Plaintiff, | AMENDED JOINT MEMORANDUM OF LAW IN SUPPORT OF DISPUTED JURY INSTRUCTIONS |
| v. | |
| SHEN ZHEN NEW WORLD I, LLC, | Trial Date: October 27, 2022 |
| Defendant. | Trial Time: 8:00 A.M. |
| | Location:  Courtroom of the Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Mack E. Jenkins,

Susan S. Har, J. Jamari Buxton, and Patrick Castañeda, and defendant

SHEN ZHEN NEW WORLD I, LLC, by and through their counsel of record

1

**ER-0070**

1    Richard Steingard and Craig Wilke, hereby submit their Amended Joint
2    Memorandum of Law in Support of Disputed Jury Instructions.

3         On October 24 and 25, 2022, counsel for the parties conferred
4    regarding the disputed jury instructions. Counsel for both parties
5    edited their previously filed disputed instructions to conform with
6    their understanding of the Court's rulings at the October 21, 2022
7    pretrial conferences. Where the parties are requesting conflicting
8    instructions, each party's requested instruction is set forth with
9    the disputed portions highlighted, followed by each party's
10   objection to the opposing party's instruction. Specifically, the
11   parties propose conflicting language for "In the Course of Trial"
12   Instruction No. 7 and "End of Trial" Instruction Nos. 8, 16, 17, 23,
13   30, and 38.

14        The remaining disputed instructions are instructions that one
15   party seeks to have the Court provide, and that the other party
16   opposes; specifically: "In the Course of Trial" Instruction No. 10
17   and "End of Trial" Instruction Nos. 11, 22, 27, 28, 29, 32, 35, 36,
18   37, and 47. With the exception of Instruction No. 28, which is
19   requested by the government, all other instructions are requested by
20   defendant. Where one party requests that an instruction be given,
21   and the other party opposes without alternative language, the
22   instruction is not highlighted.
23   //
24   //
25   //
26   //
27   //
28

2

**ER-0071**

1     The parties request leave of the Court to submit additional

2  jury instructions as may be appropriate.

3

4  Dated: October 25, 2022        Respectfully submitted,

5                      E. MARTIN ESTRADA
                      United States Attorney

6

7                      SCOTT M. GARRINGER
                      Assistant United States Attorney
                      Chief, Criminal Division

8

9                      */s/*
                      SUSAN S. HAR

10                     MACK E. JENKINS
                     J. JAMARI BUXTON

11                     PATRICK CASTAÑEDA
                     Assistant United States Attorneys

12

13                     Attorneys for Plaintiff
                     UNITED STATES OF AMERICA

14

15

16  Dated: October 25, 2022        */s/ per email authorization*
                     RICHARD STEINGARD

17                     CRAIG WILKE
                     Attorneys for Defendant
                     SHEN ZHEN NEW WORLD I, LLC

18

19

20

21

22

23

24

25

26

27

28

3

| Proposed No. | Court No. | Title | Source | Page |
|---|---|---|---|---|
| | | **Instructions in the Course of Trial** | | |
| 7 | | Evidence for Limited Purpose – Re: Ethics Code **(Disputed, Government's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 2.12 (modified) | 2 |
| 7 | | Evidence for Limited Purpose – Re: Ethics Code **(Disputed, Defendant's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 2.12 (modified) | 3 |
| | | Government's Position re: Proposed Instruction No. 7 | | 4 |
| | | Defendant's Position re: Proposed Instruction No. 7 | | 5 |
| 10 | | Limiting Instruction re: George Esparza Guilty Plea **(Disputed, Government Does Not Believe This Instruction Should Be Given)** | | 6 |
| 10 | | Limiting Instruction re: George Esparza Guilty Plea **(Disputed, Defendant's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022 ed.) | 7 |

i

| | | | | |
|---|---|---|---|---|
| | | Government's Position re: Proposed Instruction No. 10 | | 8 |
| | | Defendant's Position re: Proposed Instruction No. 10 | | 9 |
| **Instructions at the End of Trial** | | | | |
| 8 | | Direct and Circumstantial Evidence **(Disputed, Government's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 6.8 (2022 ed.) (modified) | 11 |
| 8 | | Direct and Circumstantial Evidence **(Disputed, Defendant's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 6.8 (2022 ed.) | 12 |
| | | Government's Position re: Proposed Instruction No. 8 | | 13 |
| | | Defendant's Position re: Proposed Instruction No. 8 | | 14 |
| 11 | | Other Acts of Jose Huizar **(Disputed, Government Does Not Believe This Instruction Should Be Given)** | | 15 |

| 11 | | Other Acts of Jose Huizar<br><br>**(Disputed, Defendant's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 3.3 (2022 ed.) | 16 |
| | | Government's Position re: Proposed Instruction No. 11 | | 17 |
| | | Defendant's Position re: Proposed Instruction No. 11 | | 19 |
| 16 | | Testimony of Witnesses Involving Special Circumstances – Immunity, Benefits, Accomplice, Plea – George Esparza and Salvador Huizar<br><br>**(Disputed, Government's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022 ed.) (modified) | 20 |
| 16 | | Testimony of Witnesses Involving Special Circumstances – Immunity, Benefits, Accomplice, Plea – George Esparza<br><br>**(Disputed, Defendant's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022 ed.) | 21 |
| | | Government's Position re: Proposed | | 22 |

| | | | | |
|---|---|---|---|---|
| | | Instruction No. 16 | | |
| | | Defendant's Position re: Proposed Instruction No. 16 | | 24 |
| 17 | | Testimony of Witnesses Involving Special Circumstances – Immunity, Benefits, Accomplice, Plea – Ricky Zheng, Yan Yan, Isidra Huizar **(Disputed, Government's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022 ed.) (modified) | 26 |
| 17 | | Testimony of Witnesses Involving Special Circumstances – Immunity, Benefits, Accomplice, Plea – Ricky Zheng, Yan Yan, Isidra Huizar, and Salvador Huizar **(Disputed, Defendant's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022 ed.) | 27 |
| | | Government's Position re: Proposed Instruction No. 17 | | 28 |
| | | Defendant's Position re: Proposed Instruction No. | | 29 |

iv
**ER-0076**

| | | | | |
|---|---|---|---|---|
| | | 17 | | |
| 22 | | Honest Services Wire Fraud - Allegations<br><br>**(Disputed, Government Does Not Believe This Instruction Should Be Given)** | | 30 |
| 22 | | Honest Services Wire Fraud - Allegations<br><br>**(Disputed, Defendant's Version)** | | 31 |
| | | Government's Position re: Proposed Instruction No. 22 | | 33 |
| | | Defendant's Position re: Proposed Instruction No. 22 | | 37 |
| 23 | | Honest Services Wire Fraud - Elements<br><br>**(Disputed, Government's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 15.34 (2022 ed.) (modified); Ninth Circuit Model Criminal Jury Instructions, No. 15.35 (2022 ed.) (2022 ed.) (modified); Ninth Circuit Model Criminal Jury Instructions, No. 10.1 (2022 ed.) (modified); 18 U.S.C. § 666(a)(1) & d; <u>United States v. Kincaid-Chauncey</u>, 556 F.3d 923, 939 (9th Cir. 2009); Seventh | 38 |

| | | | | Circuit Model Criminal Jury Instructions, 18 U.S.C. §§ 1341, 1343 & 1346 (2020 ed.); <u>United States v. Stargell</u>, 738 F.3d 1018, 1023 (9th Cir. 2013) | |
|---|---|---|---|---|---|
| | 23 | | Honest Services Wire Fraud – Elements<br><br>**(Disputed, Defendant's Version)** | Ninth Cir. Model Crim. Jury Inst. 15.34, 15.35 (2022) (modified); <u>see also Skilling v. United States</u>; <u>McDonnell v. United States</u>; <u>United States v. Milovanovic</u>, 678 F.3d 713, 722 (9th Cir. 2012); <u>United States v. Kincaid-Chauncey</u>, 556 F.3d 923, 943 n.15 (9th Cir. 2009) | 43 |
| | | | Government's Position re: Proposed Instruction No. 23 | | 45 |
| | | | Defendant's Position re: Proposed Instruction No. 23 | | 48 |
| | 27 | | Statute of Limitations for Count Two<br><br>**(Disputed, Government Does Not Believe This Instruction Should Be Given)** | | 57 |
| | 27 | | Statute of Limitations for Count Two | | 58 |

vi
**ER-0078**

| | | | | |
|---|---|---|---|---|
| | | **(Disputed, Defendant's Version)** | | |
| | | Government's Position re: Proposed Instruction No. 27 | | 60 |
| | | Defendant's Position re: Proposed Instruction No. 27 | | 62 |
| 28 | | Scheme to Defraud -- Vicarious Liability **(Disputed, Government's Version)** | Ninth Circuit Model Criminal Jury Instructions, No. 15.33 (2022 ed.) | 63 |
| 28 | | Scheme to Defraud -- Vicarious Liability **(Disputed, Defendant Does Not Believe This Instruction Should Be Given)** | | 64 |
| | | Government's Position re: Proposed Instruction No. 28 | | 65 |
| | | Defendant's Position re: Proposed Instruction No. 28 | | 66 |
| 29 | | Travel Act Violations – Allegations | | 67 |

vii
**ER-0079**

| | | | | |
|---|---|---|---|---|
| | | **(Disputed, Government Does Not Believe This Instruction Should Be Given)** | | |
| 29 | | Travel Act Violations – Allegations<br><br>**(Disputed, Defendant's Version)** | | 68 |
| | | Government's Position re: Proposed Instruction No. 29 | | 70 |
| | | Defendant's Position re: Proposed Instruction No. 29 | | 71 |
| 30 | | Interstate or Foreign Travel in Aid of Bribery<br><br>**(Disputed, Government's Version)** | 18 U.S.C § 1952(a)(3); Fed. Crim. Jury Instr. 7th Cir. 1952[1] (2022 ed.); Pattern Crim. Jury Instr. 11th Cir. OI O71 (2020); United States v. Walsh, 700 F.2d 846, 854 (2d Cir. 1983); Cal. Penal Code §§ 7(6), 67.5, 85, and 165; Judicial Council Of California Criminal Jury Instruction 2601 (Pen. Code, § 67.5); People v. Gaio, 81 Cal. App. 4th 919, 928 (2000) | 72 |
| 30 | | Interstate or Foreign Travel in Aid of Bribery | Ninth Cir. Model Crim. Jury Instr. 18.1 (2022) (modified) see also Richardson v. | 75 |

| | | | | |
|---|---|---|---|---|
| | | | **(Disputed, Defendant's Version)** | United States, 526 U.S. 813, 817 (1999); but see United States v. Hofus, 598 F.3d 1171, 1175-76 (9th Cir. 2010) | |
| | | | Government's Position re: Proposed Instruction No. 30 | | 76 |
| | | | Defendant's Position re: Proposed Instruction No. 30 | | 78 |
| 32 | | | Bribery Concerning Programs Receiving Federal Funds – Allegations **(Disputed, Government Does Not Believe This Instruction Should Be Given)** | | 79 |
| 32 | | | Bribery Concerning Programs Receiving Federal Funds – Allegations **(Disputed, Defendant's Version)** | | 80 |
| | | | Government's Position re: Proposed Instruction No. 32 | | 81 |
| | | | Defendant's | | 83 |

| 1 |  |  | Position re: Proposed Instruction No. 32 |  |  |
| 2 |  |  |  |  |  |
| 3 |  |  |  |  |  |
| 4 | 35 |  | Quid Pro Quo **(Disputed, Government Does Not Believe This Instruction Should Be Given)** |  | 84 |
| 5 |  |  |  |  |  |
| 6 |  |  |  |  |  |
| 7 |  |  |  |  |  |
| 8 | 35 |  | Quid Pro Quo **(Disputed, Defendant's Version)** | United States v. Sun-Diamond Growers of California, 526 U.S. 398, 404-05 (1999); McCormick v. United States, 111 S. Ct. 1807, 1816-17 (1991); cf. United States v. Silver, 948 F.3d 538, 577 (2d Cir. 2020); McConnell v. United States, 136 S.Ct. at 2372; United States v. Inzuza, 580 F.3d 894, 900 (9th Cir. 2009); see also Citizens United, 558 U.S. at 360; McCutcheon v. FEC, 572 U.S. 185, 192 (2014); see also United States v. Arthur, 544 F.2d 730, 734-35 (4th Cir. 1976); United States v. Hamilton, No. 21-11157, slip op. at 14 (5th Cir. 2022); United States v. Fernandez, 722 F.3d 1, 26 (1st Cir. 2013); see also United States v. Jennings, 160 F.3d 1006, 1015 & nn.3-4 (4th Cir. 1998) | 85 |
| 9 |  |  |  |  |  |
| 10 |  |  |  |  |  |
| 11 |  |  |  |  |  |
| 12 |  |  |  |  |  |
| 13 |  |  |  |  |  |
| 14 |  |  |  |  |  |
| 15 |  |  |  |  |  |
| 16 |  |  |  |  |  |
| 17 |  |  |  |  |  |
| 18 |  |  |  |  |  |
| 19 |  |  |  |  |  |
| 20 |  |  |  |  |  |
| 21 |  |  |  |  |  |
| 22 |  |  |  |  |  |
| 23 |  |  |  |  |  |
| 24 |  |  |  |  |  |
| 25 |  |  |  |  |  |
| 26 |  |  |  |  |  |
| 27 |  |  | Government's Position re: |  | 87 |
| 28 |  |  |  |  |  |

| | | | | |
|---|---|---|---|---|
| | | Proposed Instruction No. 35 | | |
| | | Defendant's Position re: Proposed Instruction No. 35 | | 90 |
| 36 | | Official Act<br><br>**(Disputed, Government Does Not Believe This Instruction Should Be Given)** | | 92 |
| 36 | | Official Act<br><br>**(Disputed, Defendant's Version)** | McDonnell v. United States, 579 U.S. ___, ___ (2016) | 93 |
| | | Government's Position re: Proposed Instruction No. 36 | | 94 |
| | | Defendant's Position re: Proposed Instruction No. 36 | | 96 |
| 37 | | Limiting Instruction re: Non-Official Acts<br><br>**(Disputed, Government Does Not Believe This Instruction Should Be Given)** | | 97 |
| 37 | | Limiting Instruction re: Non-Official Acts<br>**(Disputed, Defendant's** | McDonnell v. United States, 579 U.S. 550, 571-74 (2016); see also Ninth Cir. Model Crim. Jury Instr. 2.10 | 98 |

| | | | | |
|---|---|---|---|---|
| | | **Version)** | (2022) (Other Acts of Defendant). | |
| | | Government's Position re: Proposed Instruction No. 37 | | 101 |
| | | Defendant's Position re: Proposed Instruction No. 37 | | 101 |
| 38 | | Corporate Liability **(Disputed, Government's Version** | Eighth Circuit Model Criminal Jury Instructions, No. 5.03 (2021 ed.) (modified); Seventh Circuit Model Criminal Jury Instructions, No. 7.06 (2018 ed.) (modified); United States v. Hilton Hotels Corp., 467 F.2d 1000 (9th Cir. 1973); United States v. Basic Const. Co., 711 F.2d 570 (4th Cir. 1983); United States v. Mongol Nation, 370 F. Supp. 3d 1090 (C.D. Cal. 2019); United States v. Shortt Accountancy Corp., 785 F.2d 1448 (9th Cir. 1986) | 102 |
| 38 | | Corporate Liability **(Disputed, Defendant's Version)** | | 104 |
| | | Government's Position re: Proposed | | 105 |

| | | | | |
|---|---|---|---|---|
| | | Instruction No. 38 | | |
| | | Defendant's Position re: Proposed Instruction No. 38 | | 108 |
| 47 | | Limited Purpose of Evidence Regarding L.A. Grand Hotel **(Disputed, Government Does Not Believe This Instruction Should Be Given)** | | 109 |
| 47 | | Limited Purpose of Evidence Regarding L.A. Grand Hotel **(Defendant's Version)** | | 110 |
| | | Government's Position re: Proposed Instruction No. 47 | | 111 |
| | | Defendant's Position re: Proposed Instruction No. 47 | | 112 |

xiii
**ER-0085**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13          **DISPUTED INSTRUCTIONS - IN THE COURSE OF TRIAL**
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISPUTED INSTRUCTION NO. 7**

**RE: LIMITING INSTRUCTION RE: ETHICS CODE**

**PROPOSED BY THE GOVERNMENT**

[For Exhibit 139]

[if applicable]

Exhibit 139 is the City of Los Angeles Code of Ethics.  I instruct you that this evidence is admitted only for the limited purpose of establishing that the Code of Ethics applies to public officials of the City of Los Angeles and therefore, you must consider it only for that limited purpose and not for any other purpose.  Exhibit 139 does not provide guidance as to any laws that apply to the defendant in this case.

Ninth Circuit Model Criminal Jury Instructions, No. 2.12 (2022 ed.) [Evidence for Limited Purpose] (modified to reflect facts of the case)

**DISPUTED INSTRUCTION NO. 7**

**RE: LIMITING INSTRUCTION RE: ETHICS CODE**

**PROPOSED BY DEFENDANT**

[For Exhibit 139]

[if applicable]

Exhibit 139 is the City of Los Angeles Code of Ethics. A violation of the Code of Ethics is not a crime charged in this case. I instruct you that this evidence is admitted only for the limited purpose of establishing that the Code of Ethics applies to public officials of the City of Los Angeles and therefore, you must consider it only for that limited purpose and not for any other purpose. Exhibit 139 does not provide guidance as to any laws that apply to the defendant in this case.

Ninth Circuit Model Criminal Jury Instructions, No. 2.12 (2022 ed.) [Evidence for Limited Purpose] (modified to reflect facts of the case)

**GOVERNMENT'S POSITION RE: INSTRUCTION NO. 7**

The government's proposed limiting instruction on this exhibit closely mirrors the same one that was given in the Lee/940 Hill trial and should be given in this trial as well. Defendant's limiting instruction adds the sentence "A violation of the Code of Ethics is not a crime." This is a misstatement of the law and is confusing. A violation of the Code <u>can</u> be a crime; for instance, taking bribes violates the Code and is also a crime. It is also confusing because the instruction makes a blanket generalization about violations of the Code of Ethics and whether they rise to the level of a crime or not. The jury will hear about and see the text of the Code of Ethics and will be properly instructed on the elements for the charged crimes in this case.

1  **DEFENDANT'S POSITION RE: INSTRUCTION NO. 7:**

2      Defendant objects to the admission of the City Code of Ethics

3  on the ground that any probative value it may have is substantially

4  outweighed by the danger of unfair prejudice, confusing the issues,

5  and misleading the jury. Fed. R. Evid. 403. If admitted, a limiting

6  instruction is necessary to ensure that the jury does not consider a

7  violation of the City Code of Ethics to be a crime charged in this

8  case. Defendant modified its proposed instruction to read "not a

9  crime *charged in this case*" to account for the government's

10 objection.

1    **DISPUTED INSTRUCTION NO. 10**

2    **RE: LIMITING INSTRUCTION RE: GEORGE ESPARZA GUILTY PLEA**

3    **PROPOSED BY GOVERNMENT**

4         This instruction should be not given during trial.  The

5    government's proposed instruction regarding Esparza's guilty plea

6    should be given at the end of trial.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 10**

**RE: LIMITING INSTRUCTION RE: GEORGE ESPARZA GUILTY PLEA**

**PROPOSED BY DEFENDANT**

You [are about to hear/have heard] testimony that George Esparza pleaded guilty to a crime arising out of the same events for which the defendant is on trial. This guilty plea is not evidence against the defendant, and you may consider it only in determining this witness's believability.

Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022 ed.)

1    **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 10**

2       The government's version of the cautionary instruction for

3 George Esparza's testimony should be provided at the end of trial

4 and not before he testifies, just as the Court did in the Lee/940

5 Hill trial for both Esparza and Justin Kim. Esparza will testify on

6 direct about his plea agreement and will certainly be subject to

7 ample cross-examination by the defense about his plea. Providing

8 the cautionary instruction at the end of trial, is therefore

9 sufficient.

1    **<u>DEFENDANT'S POSITION RE: INSTRUCTION NO. 10</u>**

2        The government does not dispute that Geoge Esparza's guilty

3    plea is not evidence against the defendant and is admissible only

4    for the limited purpose of assessing Esparza's credibility. The

5    government's dispute is only whether the instruction should be given

6    during trial. When evidence is admitted for a limited purpose, the

7    court must give a limiting instruction when requested. Fed. R. Evid.

8    105. The Model Jury Instruction Committee recommends the "use

9    limiting instructions whenever evidence is received for a limited

10   purpose. Ninth Cir. Model Crim. Instruction 2.12, comment.

11   [Instructions During Course of Trial - Evidence for Limited

12   Purpose].

1
2
3
4
5
6
7
8
9
10
11
12
13 **DISPUTED INSTRUCTIONS - END OF TRIAL**
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **DISPUTED INSTRUCTION NO. 8 RE:**

2    **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

3    **PROPOSED BY THE GOVERNMENT**

4    Evidence may be direct or circumstantial. Direct evidence is

5    direct proof of a fact, such as testimony by a witness about what

6    that witness personally saw or heard or did. Circumstantial

7    evidence is indirect evidence, that is, it is proof of one or more

8    facts from which you can find another fact.

9    You are to consider both direct and circumstantial evidence.

10   Either can be used to prove any fact. The law makes no distinction

11   between the weight to be given to either direct or circumstantial

12   evidence. It is for you to decide how much weight to give to any

13   evidence.

14   By way of example, if you wake up in the morning and see that

15   the sidewalk is wet, you may find from that fact that it rained

16   during the night. However, other evidence, such as a turned-on

17   garden hose, may provide an explanation for the water on the

18   sidewalk. Therefore, before you decide that a fact has been proven

19   by circumstantial evidence, you must consider all the evidence in

20   the light of reason, experience, and common sense.

21

22

23

24   Ninth Circuit Model Criminal Jury Instructions, No. 6.8 (2022 ed.)

25   [Direct and Circumstantial Evidence] (modified to reflect example in

26   comment)

27

28

**ER-0097**

1    **DISPUTED INSTRUCTION NO. 8 RE:**

2    **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

3    **PROPOSED BY DEFENDANT**

4         Evidence may be direct or circumstantial.  Direct evidence is

5    direct proof of a fact, such as testimony by a witness about what

6    that witness personally saw or heard or did.  Circumstantial

7    evidence is indirect evidence, that is, it is proof of one or more

8    facts from which you can find another fact.

9         You are to consider both direct and circumstantial evidence.

10   Either can be used to prove any fact.  The law makes no distinction

11   between the weight to be given to either direct or circumstantial

12   evidence.  It is for you to decide how much weight to give to any

13   evidence.

14

15

16

17

18

19

20

21

22

23

24

25

26

27   Ninth Circuit Model Criminal Jury Instructions, No. 6.8 (2022 ed.)

28   [Direct and Circumstantial Evidence]

1    **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 8:**

2         This instruction is both legally correct, appropriate and

3    helpful to the jury.

4         The government's proposed language exactly tracks the model

5    instruction and it additionally adds the illustrative example from

6    the comment, which the comment endorses as "helpful."  This

7    illustrative example was also provided to the jury in the Lee/940

8    Hill trial, as it is often provided in trials in this district.

9         As set forth in the instruction and in the law,

10   "[c]ircumstantial and testimonial evidence are indistinguishable

11   insofar as the jury fact-finding function is concerned, and

12   circumstantial evidence can be used to prove any fact."  United

13   States v. Ramirez-Rodriquez, 552 F.2d 883, 884 (9th Cir. 1977) (per

14   curiam) (citations omitted).  The jury is therefore instructed to

15   treat direct and circumstantial evidence the same, yet a jury may

16   have a harder time understanding what circumstantial evidence is,

17   particularly since the model language defines it in negative

18   relation to direct evidence (as "indirect evidence"), i.e., "proof

19   of one or more facts from which you can find another fact."  This

20   simple yet concrete example of a wet sidewalk helps to illustrate

21   exactly what circumstantial evidence is and will thereby aid the

22   jury in understanding and following this instruction.

**DEFENDANT'S POSITION RE: INSTRUCTION NO. 8:**

    Government's Proposed Instruction 8 modifies Model Ninth Circuit Instruction 6.8 offered by the defendant to add the "garden hose" example.  The government's modification is argumentative. It is also prejudicial by suggesting that the jurors may substitute their "reason, experience, and common sense" for evidence.

**DISPUTED INSTRUCTION NO. 11 RE:**

**OTHER ACTS OF JOSE HUIZAR**

**PROPOSED BY GOVERNMENT**

This instruction misstates the law, is confusing, and not necessary.  The government believes this instruction should not be given for the reasons set forth below.

## DISPUTED INSTRUCTION NO. 11 RE:

## OTHER ACTS OF JOSE HUIZAR

## PROPOSED BY DEFENDANT

You have heard evidence that Jose Huizar committed other acts not charged here. You may consider this evidence only for its bearing, if any, on the question of the defendant's intent or knowledge, and for no other purpose.

Ninth Circuit Model Criminal Jury Instructions, No. 3.3 (2022 ed.) [Other Crimes, Wrongs, or Acts of Defendant]

1 **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 11:**

2 Defendant's proposed instruction misstates the law, is

3 confusing, and unnecessary.

4 Tellingly, defendant's instruction, which attempts to limit the

5 jury's consideration of Jose Huizar's acts, is based on the model

6 instruction for "Other Crimes, Wrongs, or Acts of Defendant" and is

7 consequently confusing. (See Ninth Circuit Model Instruction No.

8 3.3.) Defendant's proposed instruction incorrectly advises that

9 Jose Huizar "committed other acts not charged here." Although

10 defendant revised the language to strike the language that Huizar's

11 acts may not be used as evidence of guilt of the crime for which the

12 defendant is now on trial, that is still the implication when the

13 instruction limits consideration of the evidence to "defendant's

14 intent or knowledge."

15 It is unclear to the government what "other acts" the defense

16 contends Huizar committed that were "not charged here." Evidence of

17 Huizar's acts go directly to the charged scheme and defendant's

18 participation in it, as well as to proving defendant's intent and

19 knowledge. For example, as this Court previously explained, the

20 evidence of Huizar's acts to conceal his relationship with Wei

21 Huang/defendant and the benefits Wei Huang/defendant provided

22 (including through money laundering) all go to the existence of the

23 charged scheme or plan to defraud and to defendant's involvement

24 therein. (9/22/22 Hr'g Tr. at 9:22-10:2 ("[T]he acts of concealment

25 tend to show that an illegal bribery scheme existed, that Shen Zhen

26 and Wei Huang were involved in the scheme, that Shen Zhen and Wei

27 Huang acted with a corrupt intent when they gave Huizar and, Esparza

28 benefits as part of the scheme, and that Huizar and Esparza

1   understood the corrupt nature of the benefits."); id. at 106:7-16

2   (same regarding Huizar's concealment of cash payments from Huang and

3   SZNW).)  Defendant's instruction seeks to improperly narrow the

4   jury's consideration of admissible evidence that is directly

5   relevant to defendant's guilt of the charged crimes.

**DEFENDANT'S POSITION RE: INSTRUCTION NO. 11:**

In denying in part the defendant's motion to exclude evidence of Jose Huizar's money laundering activities (MIL 10), the Court ruled that the government could introduce evidence of such activity prior to February 17, 2017. SZNW maintains its position that such evidence should be excluded as irrelevant, unfairly prejudicial, and misleading to the jury. Nevertheless, if the Court is to admit this evidence, a limiting instruction is proper.

Defendant's proposed limiting instruction modifies the Model Ninth Circuit Instruction 3.3 which is the limiting instruction for other crimes, wrongs, or acts of the defendant. The fact that the other act evidence at issue does not involve acts of the SZNW or even acts of which it had knowledge makes the need for a limiting instruction even more critical. Defendant has deleted the last sentence of the model instruction in accordance with the Court's ruling that the evidence is admissible against SZNW.

1           **DISPUTED INSTRUCTION NO. 16 RE:**

2 **TESTIMONY OF WITNESSES INVOLVING SPECIAL CIRCUMSTANCES — IMMUNITY,**

3 **BENEFITS, ACCOMPLICE, PLEA — GEORGE ESPARZA AND SALVADOR HUIZAR**

4                 **PROPOSED BY THE GOVERNMENT**

5     You have heard testimony from George Esparza, a witness who

6 pleaded guilty to a crime arising out of the same events for which

7 the defendant is on trial and hopes to receive benefits and favored

8 treatment from the government in connection with this case. His

9 guilty plea is not evidence against the defendant, and you may

10 consider it only in determining this witness's believability.

11     You have also heard testimony from Salvador Huizar, who

12 pleaded guilty to a crime arising out of some of the same events you

13 will hear about at trial and hopes to receive benefits and favored

14 treatment from the government in connection with this case. His

15 guilty plea is not evidence against the defendant, and you may

16 consider it only in determining this witness's believability.

17     For these reasons, in evaluating the testimony of George

18 Esparza and Salvador Huizar, you should consider the extent to which

19 or whether their testimony may have been influenced by any of these

20 factors. In addition, you should examine the testimony of George

21 Esparza and Salvador Huizar with greater caution than that of other

22 witnesses.

23

24

25     Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022

26 ed.) [Testimony of Witnesses Involving Special Circumstances –

27 Immunity, Benefits, Accomplice, Plea] (modified to reflect facts of

28 case)

**DISPUTED INSTRUCTION NO. 16 RE:**

**CAUTIONARY/LIMITING INSTRUCTION FOR WITNESS GEORGE ESPARZA**

**PROPOSED BY DEFENDANT**

You have heard testimony from George Esparza, a witness who

received immunity. That testimony was given in exchange for a promise by the government that the testimony will not be used in any case against the witness;

received benefits and favored treatment from the government in connection with this case; and

pleaded guilty to a crime arising out of the same events for which the defendant is on trial. This guilty plea is not evidence against the defendant, and you may consider it only in determining this witness's believability.

In evaluating the testimony of George Esparza, you should consider the extent to which or whether his testimony may have been influenced by any of these factors. In addition, you should examine the testimony of George Esparza with greater caution than that of other witnesses.

Ninth Cir. Model Crim. Jury Instr. 3.9 (2022).

1 **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 16:**

2   Defendant's proposed instruction is confusing and inaccurate.

3 First, it begins by stating that George Esparza received immunity in

4 exchange for his testimony. But Esparza's testimony at trial will

5 be given pursuant to his cooperation plea agreement, not an immunity

6 agreement. Esparza was charged with and has pleaded guilty to a

7 crime pursuant to that cooperation plea agreement. Because the jury

8 will hear testimony from uncharged witnesses at trial who received

9 limited immunity in exchange for their trial testimony (see Disputed

10 Instruction No. 17), adding immunity language to this instruction

11 would confuse the jury.

12   Unlike a cooperator who has already received immunity, 5K1.1.

13 credit, dismissal of charges, or even a non-prosecution agreement,

14 Esparza has not received such benefits or favored treatment. The

15 government's instruction therefore makes clear that Esparza hopes to

16 receive benefits and favored treatment (namely, a favorable

17 recommendation from the government for a future sentencing).

18   Second, defendant's instruction states that the government has

19 promised Esparza this his trial testimony "will not be used in any

20 case against the witness," but that is an incomplete and misleading

21 description of the provisions contained in his cooperation

22 agreement. Instead, the government has agreed that any "cooperation

23 information" Esparza gives (including trial testimony) will not be

24 used in the government's case-in-chief against him or at sentencing,

25 but that it may be used in many other circumstances, including on

26 cross-examination and in any criminal prosecution of Esparza for

27 false statement, obstruction of justice, or perjury. Of course,

28 that agreement is subject to Esparza telling the truth. This jury

1    instruction is not intended to restate every provision of a

2    cooperation agreement (the defense may cross-examine Esparza on

3    specific provisions it wishes to) but rather to put the jury on

4    notice that this witness has pleaded guilty and received certain

5    benefits from the government and to inform the jury to treat such

6    witnesses with greater caution than other witnesses.  The

7    government's instruction does just that.

8         For all the same reasons, this instruction should also include

9    Salvador Huizar, who has also pled guilty in connection with this

10   case, as the government's proposed instruction sets forth.

**DEFENDANT'S POSITION RE: INSTRUCTION NO. 16:**

Both parties rely on Ninth Circuit Model Instruction 3.9, which is the limiting and cautionary instruction for witnesses who have pleaded guilty, received immunity, and received benefits. However, there are two disputes.

First, the government proposes to advise the jury that Salvador Huizar's guilty plea is not evidence against the defendant. This limiting instruction applies when a witness is an accomplice – *i.e.* pleads guilty to a crime arising out of the same events for which the defendant is charged. Ninth Cir. Model Instr. 3.9 (2022). It does not apply to Salvador Huizar because he did not plead guilty to a crime arising out of the same events for which defendant is on trial. Rather, Salvador Huizar pleaded guilty to making a false statement relating to Jose Huizar's alleged money laundering activities. As SZNW is not charged with these activities and there will be no evidence that SZNW participated or even knew of these activities, the limiting instruction as to Salvador Huizar's guilty plea is not appropriate.

Second, the government's proposed instruction relating to George Esparza omits the portion of Model Ninth Circuit Instruction 3.9 that applies to witnesses whose receive immunity. The government does not dispute that Espazara's cooperation plea agreement grants him immunity. Nonetheless, the government claims that this instruction does not apply because the jury will already be instructed that Esparza received benefits and favored treatment from the government. Ninth Circuit Model Instruction 3.9 treats these factors as different influences on the witness's testimony and independent reasons for considering the witness's testimony with

1    greater caution.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  <u>DISPUTED INSTRUCTION NO. 17 RE:</u>

2  <u>TESTIMONY OF WITNESSES INVOLVING SPECIAL CIRCUMSTANCES – IMMUNITY,</u>

3  <u>BENEFITS, ACCOMPLICE, PLEA – RICKY ZHENG, YAN YAN, ISIDRA HUIZAR</u>

4  <u>PROPOSED BY THE GOVERNMENT</u>

5      You have heard testimony from Ricky Zheng, Yan Yan, and Isidra

6  Huizar, who received limited immunity from the government.  Their

7  testimony was given in exchange for a promise by the government not

8  to use the witness's testimony or any evidence derived therefrom in

9  a later prosecution against that witness, subject to certain

10 limitations.  Limited immunity does not mean the government agreed

11 to not charge them with any crime, only that any charges could not

12 utilize their testimony against them.

13      For this reason, in evaluating the testimony of Ricky Zheng,

14 Yan Yan, and Isidra Huizar, you should consider the extent to which

15 or whether their testimony may have been influenced by this factor.

16 In addition, you should examine the testimony of these witnesses

17 with greater caution than that of other witnesses.

18

19

20

21

22

23

24

25 Ninth Circuit Model Criminal Jury Instructions, No. 3.9 (2022 ed.)

26 [Testimony of Witnesses Involving Special Circumstances – Immunity,

27 Benefits, Accomplice, Plea] (modified to reflect facts of case)

28

1      DISPUTED INSTRUCTION NO. 17 RE:

2 CAUTIONARY INSTRUCTION FOR RICKY ZHENG, YAN YAN, ISIDRA HUIZAR, AND

3                    SALVADOR HUIZAR

4                 PROPOSED BY DEFENDANT

5      You have heard testimony from Ricky Zheng, Yan Yan, Isidra

6 Huizar, and Salvador Huizar, witnesses who received immunity. That

7 testimony was given in exchange for a promise by the government that

8 the testimony will not be used in any case against the witness.

9      For this reason, in evaluating the testimony of Ricky Zheng,

10 Yan Yan, Isidra Huizar, and Salvador Huizar, you should consider the

11 extent to which or whether their testimony may have been influenced

12 by this factor. In addition, you should examine the testimony of

13 Ricky Zheng, Yan Yan, Isidra Huizar, and Salvador Huizar with

14 greater caution than that of other witnesses.

15

16

17

18

19

20

21

22

23

24

25

26

27

28 Ninth Cir. Model Crim. Jury Instr. 3.9 (2022).

1   **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 17:**

2      The defense's instruction improperly includes Salvador Huizar

3 who has pled guilty and is more appropriately addressed in the

4 government proposed Instruction No. 16.

5      The parties' instructions for No. 17 also differ in two related

6 respects: (1) the government requests that the word "limited"

7 precede "immunity" to accurately reflect the type of immunity

8 agreement the government has with these witnesses; and (2) for the

9 same reason, the government requests language explaining that the

10 government's promise of immunity is not absolute (as defendant's

11 instruction suggests); that is, that the government has promised not

12 to "use the witness's testimony or any evidence derived therefrom in

13 a later prosecution against that witness, subject to certain

14 limitations." This statement is accurate because, per the limited

15 immunity agreements, the government may use the witness's statement

16 against that witness in a prosecution for perjury or making a false

17 statement. That is, the government can use the testify against the

18 witness if he/she lies on the stand, in a prosecution relating to

19 that false statement/perjury. Here again, defendant's simplified

20 language is misleading, inaccurate, and accordingly likely to

21 confuse the jury.

22

23

24

25

26

27

28

1    **DEFENDANT'S POSITION RE: INSTRUCTION NO. 17:**

2         The parties' competing instructions differ in two ways. First,

3    the government's proposed instruction does not include Salvador

4    Huizar among the witnesses who received immunity. The government

5    proposes to treat Salvador Huizar as an accomplice – *i.e.*, a witness

6    who pleaded guilty to a crime arising out to the same event for

7    which the defendant is on trial. *See Gov't Prop. Instr. 16.* For

8    reasons, previously discussed, the limiting instruction applicable

9    to Esparza does not apply to Salvador Huizar.

10        The government's proposed instruction also modifies Model Ninth

11   Circuit Instruction 3.9 to describe the immunity received by the

12   witnesses as "limited" and "subject to certain limitations." This

13   modification to model Ninth Circuit instruction is unnecessary and

14   argumentative.

1

<u>**DISPUTED INSTRUCTION NO. 22 RE:**</u>

2

<u>**HONEST SERVICES WIRE FRAUD - ALLEGATIONS**</u>

3

<u>**PROPOSED BY THE GOVERNMENT**</u>

4

This instruction misrepresents the charges and the law and

5

misleadingly elevates the government's burden.  As explained below,

6

this instruction should not be given.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 22 RE:**

**HONEST SERVICES WIRE FRAUD - ALLEGATIONS**

**PROPOSED BY DEFENDANT**

The defendant is charged in Counts Two, Three and Four of the indictment with honest services wire fraud in violation of Sections 1343 and 1346 of Title 18 of the United States Code. These counts allege that the defendant participated in a scheme to defraud the City of Los Angeles and its citizens of the honest services of Los Angeles City Councilman Jose Huizar through bribery.

More specifically, these counts allege that the scheme consisted of the defendant giving Councilman Huizar financial benefits in exchange for Councilman Huizar taking or agreeing to take  official acts to benefit the redevelopment of the L.A. Grand Hotel.

The alleged financial benefits were cash; casino gambling chips; flights on private jets and commercial airlines; stays at luxury hotels; expensive meals; spa services; escort services; political contributions; and a favorable loan.

The official acts for which these financial benefits were allegedly exchanged consisted of presenting motions and resolutions in various City committees to benefit the L.A. Grand Hotel redevelopment project; voting on the project in various City committees, including the Planning and Land Use Committee, and City Council; taking or not taking action in the Planning and Land Use Committee to expedite or delay the approval process and affect the project cost; exerting pressure on other City officials to influence the approval process of the project; and, for Count Two only, introducing or voting on City resolutions to enhance the

**ER-0117**

1  professional reputation and marketability of the defendant and its

2  owner.

3      Count Two alleges that, on September 23, 2014, the defendant

4  caused the transmission of a bank wire in the amount of $570,000

5  from Jose Huizar's account at East West Bank ending in -0407 to

6  Wells Fargo Bank account ending in -7209 which was routed through

7  Minnesota, for the purpose of executing the scheme.

8      Count Three alleges that, on October 19, 2016, the defendant

9  caused the transmission of an email from Ricky Zheng to Jose Huizar

10  which forwarded an email and attachment from Wei Huang regarding the

11  L.A. Grand Hotel project which traveled between two locations in Los

12  Angeles County through a Google server located outside of

13  California, for the purpose of executing the scheme.

14      Count Four alleges that, on December 19, 2016, the defendant

15  caused the transmission of an email from Jose Huizar to Ricky Zheng

16  providing recommendations for consultants for the L.A. Grand Hotel

17  project which traveled between two locations in Los Angeles County

18  through a Google server located outside of California, for the

19  purpose of executing the scheme.

20

21

22

23

24

25

26

27

28

1 **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 22:**

2     Defendant's proposed instruction on the allegations of the

3 indictment misrepresents the charges and the law and misleadingly

4 elevates the government's burden.

5     Defendant's characterization of the allegations is misleading

6 in two ways. It (1) incorrectly suggests there must have been an

7 actual *agreement* or "exchange" between defendant and Huizar; and

8 (2) incorrectly suggests there must have been an actual taking of

9 specific official acts.

10     Despite the Court's clear instructions on these two issues--

11 specifically, that there is no requirement of an agreement or the

12 performance of specific official acts, defendant's revised

13 instruction continues to suggest otherwise.

14 ***No Actual Agreement/Exchange Needed***

15     When, as here, the defendant is the <u>briber</u>, an <u>agreement</u> by the

16 public official is not needed to complete the bribery crime. <u>See</u>

17 <u>United States v. Silver</u>, 948 F.3d 538, 551 (2d Cir. 2020) (rejecting

18 argument that honest services fraud requires a "meeting of the minds

19 between the payor and the official as to the corrupt purpose of the

20 payments"). As a general matter, to complete the crime of bribery,

21 the briber need only provide the bribe <u>intending to receive in</u>

22 <u>exchange</u> an official act. <u>See United States v. Garrido</u>, 713 F.3d

23 985, 996-97 (9th Cir. 2013) (defining <u>quid pro quo</u> for briber to

24 mean briber's "<u>intent</u> to give . . . something of value in exchange

25 for an official act" (emphasis added)); <u>accord</u> <u>United States v.</u>

26 <u>Jacobs</u>, 431 F.2d 754, 759-60 (2d Cir. 1970) ("Section 201(b) is

27 violated even though the official offered a bribe is not corrupted,

28 or the object of the bribe could not be attained, or it could make

1    no difference if after the act were done it turned out that there

2    had been actually no occasion to seek to influence any official

3    conduct.  It is also perfectly plain that the crime is consummated

4    irrespective of whether an offer of an amount of money to influence

5    an official's behavior is accepted by the official." (emphasis

6    added)); United States v. Rasco, 853 F.2d 501, 505 (7th Cir. 1988)

7    ("The crime of offering a bribe is completed when a defendant

8    expresses an ability and a desire to pay the bribe.").

9         The original language of the FSI pled a single scheme to

10   defraud against all defendants (that is, against both the

11   bribees/public officials, defendants Jose Huizar and Raymond Chan,

12   and the bribers/non-public officials, defendants SZNW, Wei Huang,

13   and others).  Taken out of context, as defendant has, those

14   allegations may incorrectly suggest that defendant SZNW must have

15   actually obtained Huizar's official acts, or Huizar's agreement to

16   perform official acts, "in exchange" for defendant's bribes.  But

17   that is not the law, and defendant's instruction misleadingly

18   suggest otherwise.  All that the law requires is that defendant

19   provide bribes intending to receive in exchange official acts (or an

20   agreement to perform official acts) by Jose Huizar.

21   ***No Intent to Receive Specific Official Acts Needed***

22        Defendant's instruction misleadingly suggests that defendant

23   must have received, or intended to receive, *specific* official acts.

24   As the Court has already ruled in the context of defendants' motion

25   to dismiss briefing, that is also not the law.  McDonnell v. United

26   States, 579 U.S. 550, 572 (2016) ("[T]he public official need not

27   specify the means that he will use to perform his end of the

28   bargain."); United States v. Silver, 948 F.3d 538, 553 (2d Cir.

1   2020) (honest services fraud does not require "that the official

2   specify the means that he will use to perform his end of the

3   bargain" (citation omitted)); United States v. Ma, 2021 WL 5860893,

4   at *2 (9th Cir. Dec. 10, 2021) ("[A]quid pro quo arrangement giving

5   rise to honest services fraud can be 'implicit' and need not

6   'concern a specific official act.'" (citation omitted).)

7        The law requires only that a specific and focused matter be

8   identified.  McDonnell, 579 U.S. at 574.  The government's

9   Instruction No. 23 (Honest Services Wire Fraud) identifies the

10   required specific matter involving a formal exercise of governmental

11   power: approval of the redevelopment of the L.A. Grand Hotel.

12   ***Impermissible Narrowing of the Project***

13        Given the Court's ruling at the 10/21/2022 hearing, defendant

14   no longer seeks to misleadingly and incorrectly limit the specific

15   object of the bribe to a single precise iteration of the

16   redevelopment project, complete with a 77-story tower.

17        Defendant's instruction mischaracterizing and narrowing of the

18   allegations of the charges, should be not provided.  It is also

19   unnecessary.  The government's instruction No. 23 clearly defines

20   what the specific question/matter is, what constitutes an official

21   act, and specifies the predicate wires for each of the honest

22   services counts.  The government's proposed special verdict form

23   similarly identifies the specific question/matter and enumerates the

24   qualifying official acts for the honest services wire fraud counts,

25   including that for Count Two, City resolutions to enhance

26   professional reputation also qualify.

27        Moreover, setting forth a detailed description of the

28   allegations in the form of a Court-ordered "instruction" is

1    problematic, given that the allegations are just that: allegations.

2    The government proposes sending a "trial indictment" setting forth

3    the correct and defendant-specific allegations from the FSI that can

4    be provided to the jury to aid their deliberations and to be used in

5    combination with the jury instruction and verdict form to guide

6    their understanding of the allegations and the decisions they must

7    make to find defendant guilty or not guilty.  The stand-alone trial

8    indictment will state clearly on every page that "The Trial

9    Indictment is not evidence" and will not present as a Court

10   instruction.  A draft version of this trial indictment has been

11   provided to the defense.

1 **DEFENDANT'S POSITION RE: INSTRUCTION NO. 22:**

2     SZNW understands that the Court will not provide the jury with

3 a copy of the First Superseding Indictment. Without a description of

4 the material allegations of the charge, the Court and the parties

5 have no assurance that the jury's verdict will be based on the

6 allegations for which the grand jury found probable cause.

7 Defendant's Instruction 22 is necessary to ensure that any

8 conviction is based on a charge presented to the grand jury.

9     SZNW has modified the previously submitted version of Disputed

10 Instruction 22 to account for the government's objections and

11 defense counsel's understanding of the Court's rulings at the

12 October 21 pretrial conference. Disputed Instruction 22 accurately

13 summarizes the charges against SZNW as set forth in the first

14 superseding indictment.

1       **DISPUTED INSTRUCTION NO. 23 RE:**

2       **HONEST SERVICES WIRE FRAUD -- ELEMENTS**

3       **PROPOSED BY THE GOVERNMENT**

4       The defendant is charged in Counts Two, Three, and Four of the

5   indictment with honest services wire fraud in violation of Title 18,

6   United States Code, Sections 1343 and 1346.  For the defendant to be

7   found guilty of that charge, the government must prove each of the

8   following elements beyond a reasonable doubt:

9       First, the defendant devised or knowingly participated in a

10  scheme or plan to deprive the City of Los Angeles or its citizens of

11  their right of honest services;

12      Second, the scheme or plan consisted of a bribe that defendant

13  provided intending, at the time, to receive in exchange at least one

14  official act by Jose Huizar in connection with the approval of the

15  redevelopment of the L.A. Grand Hotel.  The "exchange" may be

16  express or may be implied from all the surrounding circumstances.

17      Third, Jose Huizar owed a fiduciary duty to the City of Los

18  Angeles or its citizens;

19      Fourth, the defendant acted with the intent to defraud by

20  depriving the City of Los Angeles or its citizens of their right of

21  honest services; an intent to defraud is an intent to deceive and

22  cheat;

23      Fifth, the defendant's act was material; that is, it had a

24  natural tendency to influence, or was capable of influencing a

25  person's acts; and

26      Sixth, the defendant used or caused to be used, an interstate

27  wire communication to carry out or attempt to carry out the scheme

28  or plan.  The interstate wire communication charged in Count Two of

1  the indictment is a bank wire of $570,000 transmitted on or about
2  September 23, 2014 from Jose Huizar's East West Bank account ending
3  in 0407 to a Wells Fargo account ending in 7209.  The interstate
4  wire communication charged in Count Three of the indictment is an e-
5  mail sent on or about October 19, 2016 from Ricky Zheng to Jose
6  Huizar, forwarding an e-mail and attachment from Wei Huang regarding
7  the redevelopment of the L.A. Grand Hotel.  The interstate wire
8  communication charged in Count Four of the indictment is the e-mail
9  sent on or about December 19, 2016 from Jose Huizar to Ricky Zheng
10 providing recommendations for consultants for redevelopment of the
11 L.A. Grand Hotel.
12      In addition, with respect to Count Two only, in order for the
13 defendant to be found guilty, the government also must prove beyond
14 a reasonable doubt that the scheme or plan to defraud affected at
15 least one financial institution.  The scheme or plan "affects" a
16 financial institution if it exposes a financial institution to a new
17 or increased risk of loss.  A financial institution need not have
18 actually suffered a loss in order to have been affected by the
19 scheme or plan.
20
21 Scheme to Defraud
22      In determining whether a scheme to defraud exists, you may
23 consider not only the defendant's and co-schemers' words and
24 statements, but also the circumstances in which they are used as a
25 whole.
26
27 Official Act
28      "Official act" means any decision or action on a question,

1  matter, cause, suit, proceeding, or controversy involving the formal

2  exercise of governmental power. The question, matter, cause, suit,

3  proceeding, or controversy must be pending, or be able by law to be

4  brought, before a public official, and the question, matter, cause,

5  suit, proceeding, or controversy must be something specific and

6  focused, rather than a broad policy objective.

7      The official's decision or action may include using his

8  official position to exert pressure on another official to perform

9  an official act, or to advise another official, knowing or intending

10  that such advice will form the basis for an official act by another

11  official. The bribe recipient need not be the final decisionmaker.

12      The government does not need to prove that the official ever

13  actually intended to perform an official act or that the official

14  ever did, in fact, perform an official act.

15      Merely arranging a meeting, hosting an event, or giving a

16  speech do not qualify as the taking of a specific action.

17

18  Public Official and Fiduciary Duty

19      A "public official," includes an agent of a State or local

20  government, or any agency thereof, that is, a person authorized to

21  act on behalf of a government, including an employee, officer,

22  manager, or representative.

23      A public official serves as a trustee for the citizens and the

24  local government, and thus owes a fiduciary duty to the citizens and

25  the local government, that is, a duty of honesty and loyalty to

26  them. A public official has a fiduciary duty to act only for the

27  benefit of the public.

28      The defendant need not owe the fiduciary duty personally, so

1    long as the defendant devises or participates in a bribery scheme
2    intended to deprive the public of its right to a fiduciary's honest
3    services.

4

5    <u>Interstate Wire Communication</u>

6         A wire communication is caused when one knows that a wire will
7    be used in the ordinary course of business or when one can
8    reasonably foresee such use.

9         It need not have been reasonably foreseeable to the defendant
10   that the wire communication would be interstate in nature.  Rather,
11   it must have been reasonably foreseeable to the defendant that some
12   wire communication would occur in furtherance of the scheme, and an
13   interstate wire communication must have actually occurred in
14   furtherance of the scheme.

15

16

17

18

19

20

21

22

23

24

25   Ninth Circuit Model Criminal Jury Instructions, No. 15.34 (2022 ed.)
26   [Mail Fraud -- Scheme to Defraud -- Deprivation of Intangible Right
27   of Honest Services (18 U.S.C. §§ 1341 and 1346)] (modified to
28   reflect facts of the case); Ninth Circuit Model Criminal Jury

1  Instructions, No. 15.35 (2022 ed.) [Wire Fraud (18 U.S.C. § 1343)]

2  (defining "wire communication"); Ninth Circuit Model Criminal Jury

3  Instructions, No. 10.1 (2022 ed.) [Official Act -- Defined]

4  (modified to reflect facts of case); 18 U.S.C. § 666(a)(1) & (d)(1)

5  (defining public official and agent); United States v. Kincaid-

6  Chauncey, 556 F.3d 923, 939 (9th Cir. 2009) (citations omitted)

7  (public officials owe a fiduciary duty to the public), abrogated on

8  other grounds by Skilling v. United States, 561 U.S. 358 (2010);

9  Seventh Circuit Model Criminal Jury Instructions, 18 U.S.C. §§ 1341,

10 1343 & 1346 [Definition of "Honest Services"] (2020 ed.) (fiduciary

11 duty of public officials; defendant need not owe a fiduciary duty);

12 United States v. Stargell, 738 F.3d 1018, 1023 (9th Cir. 2013)

13 (explaining definition of "affects" a financial institution within

14 the meaning of 18 U.S.C. § 1343).

1    <u>DISPUTED INSTRUCTION NO. 23 RE:</u>

2    <u>HONEST SERVICES WIRE FRAUD – ELEMENTS</u>

3    <u>PROPOSED BY DEFENDANT</u>

4    For the defendant to be found guilty of honest services wire

5    fraud as charged in Counts Two, Three and Four of the indictment,

6    the government must prove each of the following elements beyond a

7    reasonable doubt:

8    First, the defendant knowingly participated in a scheme to

9    deprive the City of Los Angeles and its citizens of their right to

10   the honest services of Los Angeles City Councilman Jose Huizar;

11   Second, the scheme consisted of the defendant bribing

12   Councilman Huizar by providing him with financial benefits in

13   exchange for Councilman Huizar taking or agreeing to take, at the

14   time he accepted the benefits, an official act to benefit with LA

15   Grand Hotel redevelopment project with all of you agreeing on the

16   official act that Councilman Huizar took or agreed to take;

17   Third, the defendant acted with the intent to defraud the City

18   of Los Angeles and its citizens of Councilman Huizar's honest

19   services through bribery;

20   Fourth, the scheme violated Councilman Huizar's fiduciary duty

21   to the City of Los Angeles and its citizens;

22   Fifth, the violation of Councilman Huizar's fiduciary duty was

23   material – that is, no reasonable fiduciary of the City of Los

24   Angeles and its citizens would have taken or agreed to take the

25   official act to benefit the LA Grand Hotel redevelopment project;

26   and

27   Sixth, the defendant used or caused to be used an

28

1    interstate wire communication <mark>as alleged in the indictment</mark> to carry

2    out or attempt to carry out the scheme.

3        A wire communication is caused when one knows that a wire will

4    be used in the ordinary course of business or when one can

5    reasonably foresee such use. It need not have been reasonably

6    foreseeable to the defendant that the wire communication would be

7    interstate in nature. Rather, it must have been reasonably

8    foreseeable to the defendant that some wire communication would

9    occur in furtherance of the scheme, and an interstate wire

10   communication must have actually occurred in furtherance of the

11   scheme.

12

13

14

15   Ninth Cir. Model Crim. Jury Inst. 15.34, 15.35 (2022) (modified to

16   account for defendant's role as alleged briber, deletion of

17   "implied" exchange, addition violation of fiduciary duty element,

18   and incorporate specific allegations in indictment); see also

19   Skilling v. United States, (honest services fraud requires scheme to

20   deprive another of honest services through bribes or kickbacks;

21   bribery requires quid pro quo exchange); McDonnell v. United States,

22   (bribery of public official requires official act); United States v.

23   Milovanovic, 678 F.3d 713, 722 (9th Cir. 2012) (en banc) (violation

24   of fiduciary duty is an element of honest services fraud); United

25   States v. Kincaid-Chauncey, 556 F.3d 923, 943 n.15 (9th Cir. 2009)

26   (honest services fraud requires specific intent to defraud another

27   of honest services).

28

1  **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 23:**

2      The government has revised element two to conform with the

3  Court's rulings at the 10/21/2022 hearing.  Specifically, the

4  element now (1) specifies that defendant must have provided the

5  bribe intending "at the time" to receive an official act; and

6  (2) identifies the official act in relation to a specific and

7  focused matter: "approval of the redevelopment of the L.A. Grand

8  Hotel."

9      Defendant's instruction, on the other hand, ignores the Court's

10 rulings, and continues to incorrectly state that the jury must find

11 Jose Huizar "took or agreed to take" an official act, and that, in

12 so doing, Huizar must have actually "violated [his] fiduciary duty."

13     The parties' main disputes concern the following: (1) the

14 government describes the second element as providing a bribe

15 **intending to receive** in exchange for at least one official act on

16 the specific matter of **the redevelopment of the L.A. Grand Hotel**;

17 (2) the defense maintains that, as an element, Jose Huizar must have

18 **violated his fiduciary duty**; and, relatedly (3) that the violation

19 of Huizar's fiduciary duty was "**material**," whereas the government's

20 instruction defines "material" in relation to the defendant's act.

21 The government's instruction also incorporates the charged predicate

22 wires and builds in all the applicable and helpful definitions,

23 including the definition of a scheme to defraud, official act, and

24 public official and fiduciary duty.

25     The government incorporates by reference its arguments set

26 forth in its position regarding Disputed Instruction No. 22 (Honest

27 Services Wire Fraud – Allegations).  As set forth in that position,

28 no actual exchange or official act is required, as defendant's

1 second element suggests. The government further notes that

2 defendant deletes the language from the model instruction that

3 defendant's intent of an exchange "may be implied from all the

4 surrounding circumstances" without explanation, despite that this is

5 an accurate and helpful statement of the law.

6 The correct statement of the fiduciary duty owed by a public

7 official and is drawn directly from the cited Ninth Circuit

8 authorities. See, e.g., United States v. Kincaid-Chauncey, 556 F.3d

9 923, 939 (9th Cir. 2009) ("In cases involving public officials, the

10 [fiduciary duty] theory relies on the idea that 'a public official

11 acts as 'trustee for the citizens and the State ... and thus owes

12 the normal fiduciary duties of a trustee, e.g., honesty and loyalty'

13 to them.'") (citations and quotation marks omitted). Additionally,

14 the government's proposed language explains that the defendant who

15 is on trial need not personally owe a fiduciary duty. Such an

16 instruction not only is a correct statement of the law but is

17 particularly helpful to the jury where, as here, the defendant on

18 trial is not the public official and accordingly not the party who

19 owes a fiduciary duty.

20 Defendant's instruction incorrectly states that the jury must

21 find an actual violation of Huizar's fiduciary duty. There is no

22 such requirement when, as here, the defendant on trial is the payor

23 and the non-public official. Again, there is no requirement that

24 defendant (the payor) attained a mutual agreement with the public

25 official for an official act, that the public official *intended* to

26 perform an official act, or that the matter at issue was even

27 currently pending before the public official. (See Ninth Circuit

28 Model Instruction No. 10.1 [Official Act – Defined]); see also

1    United States v. Kimbrew, 944 F.3d 810, 814 (9th Cir. 2019).  Nor

2    did United States v. Milovanovic, 678 F.3d 713 (9th Cir. 2012),

3    impose any such requirement *when the defendant is the briber/payor*.

4    Milovanovic is largely inapplicable here because it explored when

5    employees/agents (like independent contractors with the State) owed

6    a "fiduciary duty" at all and what types of crimes violated that

7    fiduciary duty.  On the latter question, bribery and kickbacks (as

8    opposed to conflicts of interest) do.  Skilling v. United States,

9    561 U.S. 358, 422.

10        For that same reason, the government's instruction regarding

11   materiality is the appropriate one.  It accurately instructs the

12   jury that defendant's act (providing a bribe) must have been

13   material and tracks the language in Model Instruction No. 15.34 of

14   the well-established and applicable materiality test, which the

15   comment notes is the "preferred formulation."

16        Finally, the applicable definitions are correct and

17   conveniently placed within the same instruction, as it was for the

18   honest services instruction the Lee/940 Hill trial.

1 **DEFENDANT'S POSITION RE: INSTRUCTION NO. 23:**

2     Defendant has modified its instruction to conform with the

3 Court's statements at the October 21 pretrial conference and address

4 soe of the government's objections. The government's instruction

5 amends confuses, misstates and errenosusly defines several

6 essential elements of the crime.

7     **1.    By conflating a "bribe" with a financial benefit, the**

8            **government's instruction wrongly suggests that bribery**

9            **does not require a quid pro quo.**

10     The second element of the government's proposed instruction

11 states that "the scheme or plan consisted of a bribe in exchange for

12 at least one official act ...." SZNW acknowledges that this language

13 is taken directly from the applicable Ninth Circuit model

14 instruction. Ninth Cir. Model Crim. Instr. 15.34 (2022).

15 Nevertheless, SZNW objects because the use of the term "bribe" in

16 this statement suggest that a bribe may exist in the absence of a

17 quid pro quo. A "bribe" is, by definition, the exchange of a

18 benefit, typically a financial benefit, for an official act. *See*

19 *Skilling v. United States*, 561 U.S. 358, 413 (2010) (quid pro quo is

20 element of honest services fraud); *see also United States v.*

21 *Kincaid-Chauncey*, 556 F.3d 923, 941 (9th Cir. 2009) (holding pre-

22 *Skilling* that bribery requires at least implicit quid pro quo); *cf.*

23 *United States v. McDonnell*, 136 S. Ct. 2355, 2372 (2016) (federal

24 bribery statute, 18 U.S.C. § 201, requires quid pro quo). By

25 conflating a bribe with a financial benefit, the instruction

26 misstates the law and is prejudicial to the defendant.

27     **2.    By stating that a "bribe in exchange for at least one**

28            **official act . . . may be implied from all the**

1              **surrounding circumstances," the government's instruction**
2              **would allow the jury to convict without finding that the**
3              **scheme involved quid pro quo bribery.**

4        The second element of the government's instruction states that
5  "[t]he 'exchange' [of a bribe for an official act] may be express or
6  may be implied from all the surrounding circumstances." SZNW
7  acknowledges that this statement is found in the Ninth Circuit model
8  instruction for honest services fraud. Ninth Cir. Model Crim. Instr.
9  15.34 (2022). Nonetheless, This is not an accurate statement of the
10 controlling law and is prejudicial to the defendant.

11       The commentary to the model instruction traces this statement
12 to *United States v. Kincaid-Chauncey*, 556 F.3d 923, 941 (9th Cir.
13 2009). *See* Ninth Cir. Model Crim. Jury Instr. 15.34, comment. (2022)
14 (citing *Kincaid-Chauncey* for statement that "[i]n the Ninth Circuit,
15 bribery requires at less an implicit *quid pro quo*."). In *Kincaid-*
16 Chauncey, the court held that "the intent to defraud [for honest
17 services fraud under a bribery theory] must have been shown at least
18 through an implicit *quid pro quo*," *id.* at 945, but did not approve
19 of any such language in the jury instruction. To the contrary, the
20 court found that an instruction that a public official defrauds the
21 public of his honest services if she "accepts something of value
22 with the intent to be influenced" to be "rather thin." *Id.* at 944-
23 45. Nevertheless, the court affirmed the conviction because other
24 instructions cautioned that "[a] public official does not commit
25 honest services fraud if his or her intent was limited to the
26 cultivation of a personal, business, or political friendship," the
27 public official must have had an intent "to be improperly influenced
28 in his or her official duties," and that a "public officials receipt

1  of hospitality does not defraud the public of his right to honest

2  services unless the public official accepts such hostility [sic]

3  with the intent to be influence or to deceive the public." *Id.* at

4  946. The court held that, when considered as a whole, these

5  instructions "adequately conveyed 'the idea that you get something

6  and you give something" and "contained an implicit *quid pro quo*

7  requirement." *Id.* at 946 (citation omitted).

8      In *McDonnell*, the Supreme Court clarified that, it is not the

9  exchange of a financial benefit for an official act that may be

10  implied, but rather the *agreement* of the public official to perform

11  an official act:

12          Under this Court's precedents, a public official is not

13          required to actually make a decision or take an action on

14          a "question, matter, cause, suit, proceeding or

15          controversy"; it is enough that the official agree to do

16          so. [Citation]. *The agreement need not be explicit*, and

17          the public official need not specify the means that he

18          will use to perform his end of the bargain. Nor must the

19          public official in fact intend to perform the "official

20          act," so long as he agrees to do so. A jury could, for

21          example, conclude that an agreement was reached if the

22          evidence shows that the public official received a thing

23          of value knowing that it was given with the expectation

24          that the official would perform an "official act" in

25          return. [Citation]. It is up to the jury, under the facts

26          of the case, to determine whether the public official

27          *agreed* to perform an "official act" at the time of the

28          alleged quid pro quo. The jury may consider a broad range

1       of pertinent evidence, including the nature of the

2       transaction, to answer that question.

3  *Id.* at 572-73. Collectively, *McDonnell* and *Chauncey-Kincaid* stand

4  for the unremarkable proposition that the mens rea for honest

5  services fraud may be inferred from all the surrounding

6  circumstances. The model instruction on circumstantial evidence to

7  which the parties have stipulated adequately conveys this point.

8  Ninth Cir. Model Crim. Jury Instr. 6.8 (2022); *see also United*

9  *States v. Inzunza*, 638 F.3d 1006, 1013 (9th Cir. 2011) (Hobbs Act

10 *quid pro quo* must be "clear and unambiguous, leaving no uncertainty

11 about the terms of the bargain" but not necessarily "verbally

12 explicit" – that is "[t]he jury may consider both direct and

13 circumstantial evidence, including the context in which a

14 conversation took place, to determine if there was a meeting of the

15 minds on a quid pro quo"). To instruct the jury that "[t]he

16 'exchange' [of a bribe for an official act] may be . . . implied

17 from all the surrounding circumstances," is unnecessary, misapplies

18 *Kincaid-Chauncey*'s holding, and substantially undermines the quid

19 pro quo element which is an essential element of the crime. *Skilling*

20 *v. United States*, 561 U.S. 368, 408-09 (2010).

21       **3.   The government's instruction defines erroneously defines**

22            **"intent to defraud."**

23       The government's instruction defines "intent to defraud" as

24 "intent to deceive and cheat." This definition is taken from *United*

25 *States v. Miller*, 953 F.3d 1095, 1101-03 (9th Cir. 2018), and

26 applies to money or property fraud cases. *See* Ninth Cir. Model Crim.

27 Jury Instr. 15.35, comment. (2022). The definition serves only to

28 confuse the jury in its determination of whether that government has

1  proven beyond a reasonable doubt that SZNW intended to defraud the
2  City of Los Angeles and its citizens of their right to Huizar's
3  honest services.

**4.  The government's instruction omits the essential element of whether Huizar breached his fiduciary duty to the City of Los Angeles and its citizens.**

7  In *United States v. Milovanovic*, 678 F.3d 713 (9th Cir. 2012)
8  (en banc), the Ninth Circuit held that a breach of a fiduciary duty
9  is an element of honest services fraud. *Id.* at 722. The government's
10  proposed instruction lowers the bar to only require proof of the
11  *existence* of a fiduciary duty. It is well-settled that a public
12  official owes a fiduciary duty to the citizens he serves. *United*
13  *States v. Garrido*, 713 F.3d 985, 992 (9th Cir. 2013) (citations
14  omitted). The government's proposed instruction would remove the
15  essential element of whether Huizar breached his fiduciary duty from
16  the jury's consideration in violation of SZNW's Fifth Amendment
17  right to due process of law and the Sixth Amendment right to jury
18  trial. *See United States v. Gaudin*, 515 U.S. 506, 509 (1995) (rights
19  "require criminal convictions to rest upon a jury determination that
20  the defendant is guilty of every element of the crime with which he
21  is charged, beyond a reasonable doubt") (citation and footnote
22  omitted).

**5.  The government's instruction misapplies the materiality element to SZNW's acts rather than Huizar's breach of his fiduciary duty.**

26  The government proposes to instruct the jury that, to convict,
27  it must find that "the defendant's act was material; that is, it had
28  a natural tendency to influence, or was capable of influencing a

1   person or entity's acts." The instruction incorrectly asks the jury

2   to determine whether the quid (the financial benefit) was material,

3   as opposed to whether the quo (the official act) was material. For

4   honest services fraud, materiality properly focuses on the bribee's

5   breach of fiduciary duty – that is, whether the fiduciary committed

6   a material breach of his or her duties. *See United States v.*

7   *Milovanic*, 678 F.3d 713 (9th Cir. 2012); *see also United States v.*

8   *Silver*, 864 F.3d 102, 121 (2nd Cir. 2017) (legislative proclamation

9   honoring a doctor was an "official act" for purposes of honest

10  services wire fraud, but a rational jury might conclude that "the

11  prolific and perfunctory nature of these resolutions make them de

12  minimis quos unworthy of a quid").

13      In *Milovanic*, the Ninth Circuit addressed the question of

14  whether the defendants, who worked as independent contractors for

15  government agencies for the State of Washington, could be charged

16  with honest services fraud based on a scheme to solicit and accept

17  bribes to help unqualified applicants obtain commercial driver's

18  licenses. The defendants argued that their status as independent

19  contractors meant they had no fiduciary duty to the State of

20  Washington, and thus could not be prosecuted. 678 F.3d at 721. The

21  court held that a breach of fiduciary duty is an element of honest

22  services mail fraud. *Id*. The fiduciary duty may be a formal one,

23  "but also extends to a trusting relationship in which one party acts

24  for the benefit of another and induces the trusting party to relax

25  the care and vigilance which it would ordinary exercise." *Id*. at

26  724. While independent contractors might qualify under this broader

27  definition, but the court remanded the case as "[t]he existence of a

28  fiduciary duty in a criminal prosecution is a fact-based

1   determination that must ultimately be determined by a jury properly

2   instructed on this issue." *Id*. at 723. "It is within the province of

3   the trier of fact to determine after hearing the evidence whether a

4   fiduciary duty exists between the parties based on a position of

5   trust, *for the material breach of which the victim was defrauded of*

6   *the entitlement to honest services by the defendants*." Id. at 724

7   (emphasis added). *Milovanic* makes clear that the materiality

8   question is not whether the bribe had a tendency to influence the

9   official. Rather, the court held that the government would have to

10  prove "material misrepresentations" that were "intentionally made,

11  in return for bribes, well knowing that the DOL [Washington

12  Department of Labor] would rely on those representations to issue

13  CDLs [commercial driver's licenses] to applicants who were not

14  qualified to obtain them." *Id*.; *see also id.* at 727 ("we hold that

15  the misrepresentation or omission at issue for an honest services

16  fraud conviction must be material, such that the misinformation or

17  omission would naturally tend to lead or is capable of leading a

18  reasonable employer to change its conduct").

19      Defendant's proposed instruction properly conveys that the jury

20  must decide whether Councilman Huizar had a fiduciary duty to the

21  City of Los Angeles and his citizens, whether he breached that duty

22  by agreeing to take or taking an official act to benefit the LA

23  Grand Hotel redevelopment project, and whether Huizar's breach of

24  his duty was material – that is, whether no reasonable fiduciary of

25  the City of Los Angeles and its citizens would not have agreed to

26  take or taken an official act to benefit the LA Grand Hotel

27  redevelopment project.

28

1     **6.   The government's instruction includes a modified**

2         **portion of Ninth Circuit model instruction for**

3         **money/property fraud that does not apply to honest**

4         **services fraud.**

5     The government's instruction includes the following: "In

6 determining whether a scheme to defraud exists, you may consider not

7 only the defendant's *and co-schemer's* words and statements but also

8 the circumstances in which they are used as a whole." The government

9 cites no authority for this statement. It is not found in the Ninth

10 Circuit model instruction for honest services fraud. Ninth Cir.

11 Model Crim. Instr. 15.34. It is derived from the Ninth Circuit model

12 instruction defining the elements for "a scheme or plan to defraud,

13 or a scheme or plan for obtaining money or property by means of

14 false or fraudulent pretenses, representations, or promises." Ninth

15 Cir. Model Instr. 15.35 (2022). As such, it has no applicability to

16 a bribery theory of honest services fraud. Moreover, without any

17 authority, the government modifies this inapplicable instruction to

18 allow the jury to consider statements by the co-schemers in

19 determine whether the charged scheme to defraud the City of Los

20 Angeles and its citizens exists. The instruction is improper and

21 would prejudice SZNW.

22     **7.   The government's proposed definition of "official act"**

23         **incomplete.**

24     The government's proposed definition of "official act" is

25 incomplete because it fails to instruct the jury that expressing

26 support for a governmental act or arranging a meeting, event or call

27 to discuss a matter is *not* an official act. *McDonnell*, 579 U.S. at

28

571 U.S. at 574. Defendant submits that its proposed instruction on "Offfial Acts" more fully and completely defines "official act."

**8. The government's proposed definition of "affect a financial institution" is incomplete.**

The government's proposed definition for the phrase "affect a financial institution" is incomplete because it does not specify that there must be a "realistic prospect" of financial loss, *United States v. Agne*, 214 F.3d 47, 52-3 (1st Cir. 2000); that a de minimis risk of loss is not sufficient, *United States v. Corollo*, 2011 WL 5023241m *4 (S.D.N.Y. 2011); and that the transfer of funds by wire communication does not affect a financial institution, *United States v. Grass*, 274 F.Supp.2d 648, 653-54 (M.D. Pa. 2003); *see also United States v. Ubakanma*, 215 F.3d 421, 426 (4th Cir.2000) (enhanced sentencing provisions for wire fraud affecting a financial institution apply only if "institution itself were victimized by the fraud, as opposed to the scheme's mere utilization of the financial institution in the transfer of funds").

1    **DISPUTED INSTRUCTION NO. 27 RE:**

2    **STATUTE OF LIMITATIONS FOR COUNT TWO**

3    **PROPOSED BY THE GOVERNMENT**

4         Defendant's instruction misstates the law and is confusing and

5    unnecessary.  As set forth in more detail below, the correct

6    statement of law of when a financial institution is "affected" is

7    incorporated into the government's proposed instruction on the

8    elements of honest services wire fraud.

1       **DISPUTED INSTRUCTION NO. 27 RE:**

2       **STATUTE OF LIMITATIONS FOR COUNT TWO**

3       **PROPOSED BY DEFENDANT**

4           Generally, a charge that is not filed within five years after

5       the commission of the offense is barred by the statute of

6       limitations. However, when the offense affects a financial

7       institution, a charge may be filed up to ten years after the

8       commission of the offense. Count Two alleges that the offense was

9       committed on September 23, 2014. The indictment was filed on

10      November 12, 2020 -- more than five years later. Accordingly, for

11      the defendant to be found guilty of the offense charged in Count Two

12      of the indictment, the government must prove beyond a reasonable

13      doubt that the offense affected a financial institution in addition

14      to all other elements of the offense as stated in my earlier

15      instruction.

16          The transfer of funds by wire communication does not affect a

17      financial institution. To affect a financial institution, the

18      offense must adversely impact the financial institution by creating

19      a new or increased risk of loss to the financial institution. This

20      increased risk of loss may not be speculative. Rather, there must be

21      a realistic prospect of a financial loss to the financial

22      institution.

23

24      18 U.S.C. § 1382(a) (five-year statute of limitations for honest

25      services wire fraud); 18 U.S.C. § 3293(2) (ten-year statute of

26      limitations for offense that "affects a financial institution");

27      <u>United States v. Drebin</u>, 557 F.2d 1316, 1333 (9th Cir. 1977)

28      (statute of limitations begins when every element of crime is

1   complete); <u>United States v. Poliak</u>, 823 F.2d 371, 372 (9th Cir.

2   1987)(once scheme to defraud exists, each wire constitutes separate

3   offense); <u>United States v. Stargell</u>, 738 F.3d 1018 (9th Cir. 2013)

4   (§ 3293(2) extension of statute of limitations requires "new or

5   increased risk of loss" to financial institution); <u>United States v.</u>

6   <u>Agne</u>, 214 F.3d 47, 52-3 (1st Cir. 2000) (offense does not affect

7   financial institution where bank suffered no actual or "realistic

8   prospect" of financial loss); <u>United States v. Grass</u>, 274 F.Supp.2d

9   648, 653-54 (M.D. Pa. 2003) ("merely used as an instrumentality of

10  the crime" to transfer funds does not affect financial institution);

11  <u>see also</u> <u>United States v. Corollo</u>, 2011 WL 5023241m *4 (S.D.N.Y.

12  2011) (ten-year statute of limitations does not apply where

13  financial institution suffered no actual loss and risk of loss is de

14  minimis); <u>cf.</u> <u>United States v. Ubakanma</u>, 215 F.3d 421, 426 (4th

15  Cir.2000) (enhanced sentencing provisions for wire fraud affecting a

16  financial institution apply only if "institution itself were

17  victimized by the fraud, as opposed to the scheme's mere utilization

18  of the financial institution in the transfer of funds").

19

20

21

22

23

24

25

26

27

28

1  **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 27**

2  Defendant's proposed standalone instruction misstates the law

3  and is confusing.

4  The government proposes instructing the jury regarding the

5  statutory element for Count Two within Instruction No. 23 (Honest

6  Services Wire Fraud), as follows: "In addition, with respect to

7  Count Two only, in order for the defendant to be found guilty, the

8  government also must prove beyond a reasonable doubt that the scheme

9  or plan to defraud affected at least one financial institution. The

10 scheme or plan 'affects' a financial institution if it exposes a

11 financial institution to a new or increased risk of loss. A

12 financial institution need not have actually suffered a loss in

13 order to have been affected by the scheme or plan." Positioning

14 this additional element in this way is logical and will avoid any

15 confusion.

16 Further, the Ninth Circuit has endorsed the government's

17 proposed definition of "affects a financial institution." See

18 United States v. Stargell, 738 F.3d 1018, 1023 (9th Cir. 2013)

19 (holding that a scheme or plan "affects" a financial institution if

20 it exposes a financial institution to a new or increased risk of

21 loss and that the financial institution need not have actually

22 suffered a loss in order to have been affected by the scheme or

23 plan). Thus, the government's proposed instruction is a correct

24 statement of the law (and a simpler construction than defendant's).

25 By contrast, defendant's proposed instruction contains

26 unnecessary details and is incorrect and confusing. The jury need

27 not be advised about the statute of limitations period or any facts

28 relating to it; rather, it must be advised only of each of the

1    elements it is required to find for Count Two, that is, the regular

2    Honest Services Wire Fraud elements <u>and</u> that the scheme or plan

3    affected a financial institution.  Including defendant's proposed

4    language about the statute of limitations period would only serve to

5    confuse the jury and the issues.  Defendant also adds the modifier

6    "<u>adversely</u> impacts," which is not in the case law and redundant of

7    the definition itself: creating a new or increased risk of loss.

8         Finally, defendant's proposed language that "the transfer of

9    funds by wire communication does not affect a financial institution"

10   is simply wrong.  Per Ninth Circuit precedent, the transfer of funds

11   *could* affect a financial institution if it exposes the institution

12   to a new or increased risk of loss.  Defendant cites no binding or

13   persuasive authority to support his position, ignoring the Ninth

14   Circuit precedent directly on point and instead relying on various

15   distinguishable, out-of-Circuit, and unpublished cases.  The Court

16   should decline to include this language in the instruction.

17        Per this Court's prior instructions, the government also

18   proposes a special verdict form that makes clear that the jury must

19   make this special finding with respect to affect on a financial

20   institution for Count Two.

21

22

23

24

25

26

27

28

1   **DEFENDANT'S POSITION RE: INSTRUCTION NO. 27**

2      Defendant requests that the instruction as to whether Count Two

3 is barred by the statute of limitations be separate from instruction

4 that defines elements of honest services fraud from Counts Two

5 through Four to avoid any confusion.

6      Defendant's proposed instruction puts the statute of

7 limitations issue in context, and provides a complete and accurate

8 statement of the law. By contrast, the government's proposed

9 instruction defining the phrase "affect a financial institution" is

10 incomplete because it does not specify that there must be a

11 "realistic prospect" of financial loss, *United States v. Agne*, 214

12 F.3d 47, 52-3 (1st Cir. 2000); that a de minimis risk of loss is not

13 sufficient, *United States v. Corollo*, 2011 WL 5023241m *4 (S.D.N.Y.

14 2011); and that the transfer of funds by wire communication does not

15 affect a financial institution, *United States v. Grass*, 274

16 F.Supp.2d 648, 653-54 (M.D. Pa. 2003); *see also United States v.*

17 *Ubakanma*, 215 F.3d 421, 426 (4th Cir.2000) (enhanced sentencing

18 provisions for wire fraud affecting a financial institution apply

19 only if "institution itself were victimized by the fraud, as opposed

20 to the scheme's mere utilization of the financial institution in the

21 transfer of funds").

22

23

24

25

26

27

28

1    **DISPUTED INSTRUCTION NO. 28 RE:**

2    **SCHEME TO DEFRAUD -- VICARIOUS LIABILITY**

3    **PROPOSED BY THE GOVERNMENT**

4    If you decide that the defendant was a member of a scheme to

5    defraud and that the defendant had the intent to defraud, the

6    defendant may be responsible for other co-schemers' actions during

7    the course of and in furtherance of the scheme, even if the

8    defendant did not know what they said or did.

9    For the defendant to be guilty of an offense committed by a co-

10   schemer in furtherance of the scheme, the offense must be one that

11   the defendant could reasonably foresee as a necessary and natural

12   consequence of the scheme to defraud.

26   Ninth Circuit Model Criminal Jury Instructions, No. 15.33 (2022

27   ed.)[Scheme to Defraud -- Vicarious Liability (18 U.S.C. §§ 1341,

28   1343, 1344, and 1346)].

**DISPUTED INSTRUCTION NO. 28 RE:**

**SCHEME TO DEFRAUD -- VICARIOUS LIABILITY**

**PROPOSED BY DEFENDANT**

This instruction does not apply to charges against SZNW.

1   **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 28**

2   The government's proposed instruction applies to the facts of

3   this case and accurately instructs the jury on the applicable

4   vicarious liability theory.  As noted in the comments to the model

5   instruction, knowing participants in a scheme to defraud are liable

6   for fraudulent acts of co-schemers.  See United States v. Blitz, 151

7   F.3d 1002, 1006 (9th Cir. 1998); United States v. Lothian, 976 F.2d

8   1257, 1262-63 (9th Cir. 1992) (discussing similarity of co-

9   conspirator and co-schemer liability); United States v. Dadanian,

10  818 F.2d 1443, 1446 (9th Cir. 1987), modified, 856 F.2d 1391 (9th

11  Cir. 1988) (like co-conspirators, "knowing participants in the

12  scheme are legally liable" for their co-schemer's use of mails or

13  wires).

14  Here, the government will present evidence that charged and

15  uncharged co-schemers, including Ricky Zheng and Ray Chan, took

16  actions in furtherance of defendant's bribery scheme.  For instance,

17  Zheng facilitated and provided benefits to Huizar and Esparza on

18  behalf of defendant and for defendant's benefit in furtherance of

19  the scheme.  Ray Chan facilitated the arrangement to procure

20  defendant's collateral for Huizar and also worked with Huizar to

21  provide various favors and assistance to defendant in connection

22  with Huang's hotels.  The jury should be instructed that defendant

23  can be held liable for such actions, even if defendant did not know

24  what the co-schemers specifically said or did, so long as the co-

25  schemers' actions were reasonably foreseeable as a necessary and

26  natural consequence of the scheme.

27

28

1  **DEFENDANT'S POSITION RE: INSTRUCTION NO. 28**

2       The vicarious liability instruction does not apply to the facts

3  of this case. As a company, SZNW can only act with the requisite

4  mens rea through its agents. SZNW's criminal liability, if any, is

5  not vicarious. If the jury found that Huizar and others devised the

6  charged scheme, this instruction could be misconstrued to allowSZNW

7  to be held criminally responsible for Huizar's acts even if the jury

8  did not believe that any agent of SZNW knowingly participated the

9  scheme.

**DISPUTED INSTRUCTION NO. 29 RE:**

**TRAVEL ACT VIOLATIONS – ALLEGATIONS**

**PROPOSED BY THE GOVERNMENT**

This instruction misrepresents the charges and the law and misleadingly elevates the government's burden.  As explained below, this instruction should not be given.

1          **DISPUTED INSTRUCTION NO. 29 RE:**

2          **TRAVEL ACT VIOLATIONS – ALLEGATIONS**

3              **PROPOSED BY DEFENDANT**

4      The defendant Shen Zhen New World I, LLC is charged in Counts

5  Eighteen through Twenty-One of the indictment with violating the

6  Travel Act as set forth at Section 1952(a)(3) of Title 18 of the

7  United States Code. The Travel Act makes it a crime to travel in

8  interstate or foreign commerce with the intent to commit any

9  unlawful activity. Counts Eighteen through Twenty-One charge that

10  the defendant traveled in interstate or foreign commerce with the

11  intent to commit bribery in violation of Sections 67.5z, 85, and

12  165 of the California Penal Code.

13      Count Eighteen charges that, on January 1, 2016, Wei Huang,

14  acting as an agent of the defendant, traveled from Los Angeles,

15  California to Australia intending to commit bribery by agreeing to

16  pay group expenses and approximately 32,800 in Australian in

17  exchange for Los Angeles City Councilman Jose Huizar agreeing to

18  perform official acts to benefit the L.A. Grand Hotel Project.

19      Count Nineteen charges that, between April 30, 2016, and May 2,

20  2016, Wei Huang, acting as an agent of the defendant, traveled from

21  Los Angeles, California to Las Vegas, Nevada, intending to commit

22  bribery by agreeing to pay approximately $127,256 in group expenses

23  and approximately $10,000 in casino gambling chips in exchange for

24  Councilman Huizar agreeing to take official acts to benefit the L.A.

25  Grand Hotel Project.

26      Count Twenty charges that, between August 5, 2016, and August

27  7, 2016, Wei Huang, acting as an agent of the defendant, traveled

28  from Los Angeles, California, to Las Vegas, Nevada, intending to

1  commit bribery by agreeing to pay approximately $60,463 in group
2  expenses and approximately $11,000 in casino gambling chips in
3  exchange for Councilman Huizar agreeing to take official acts to
4  benefit the L.A. Grand Hotel Project.

5       Count Twenty-One charges that, between February 4, 2017, and
6  February 6, 2017, Wei Huang, acting as an agent of the defendant,
7  traveled from Los Angeles, California to Las Vegas, Nevada,
8  intending to commit bribery by agreeing to pay approximately $16,822
9  in group expenses and approximately $10,000 in casino gambling chips
10 in exchange for Councilman Huizar agreeing to take official acts to
11 benefit the L.A. Grand Hotel Project.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1     **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 29**

2       Defendant's proposed instruction on the allegations of the

3 indictment misrepresents the charges and the law and misleadingly

4 elevates the government's burden.

5       The government incorporates by reference its arguments set

6 forth in its position regarding Disputed Instruction No. 22 (Honest

7 Services Wire Fraud – Allegations).  The same principles that no

8 actual exchange or agreement is required under California bribery

9 law apply here.  <u>People v. Gaio</u>, 81 Cal. App. 4th 919, 928 (2000)

10 (no specific or pending official action required); <u>see also</u> <u>id.</u> at

11 931 ("[P]roof of the offenses in this case did not require that each

12 bribe have been given . . . with intent to influence a specific

13 official act[.]"; sufficient that briber made payments "with the

14 intent . . . that [the government employee] be influenced in any one

15 or more instances, types, or courses of official action.").

16       The defendant's revised "allegation" instruction now correctly

17 cites to Sections 67.5, 85, and 165, as set forth in the amended

18 FSI.

19       Defendant's instruction mischaracterizing the allegations of

20 the charges, should be not provided as a jury instruction.  As a

21 compromise, as stated above, the government has provided defendant

22 with a draft trial indictment setting forth the correct and

23 defendant-specific allegations be provided to the jury.

24

25

26

27

28

1    **DEFENDANT'S POSITION RE: INSTRUCTION NO. 29**

2        SZNW incorporates by reference its position regarding

3    Instruction No. 22 and submits that Instruction No. 29 accurately

4    summarizes the Travel Act counts charged in the first superseding

5    indictment.

<u>DISPUTED INSTRUCTION NO. 30 RE:</u>

<u>INTERSTATE OR FOREIGN TRAVEL IN AID OF BRIBERY</u>

<u>PROPOSED BY THE GOVERNMENT</u>

The defendant is charged in Counts Eighteen, Nineteen, Twenty, and Twenty-One of the indictment with interstate or foreign travel in aid of bribery in violation of Title 18, United States Code, Section 1952(a)(3). For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant traveled, or caused another to travel, from one state to another, or from the United States to some place outside the United States;

Second, the defendant did so with intent to promote, manage, establish, carry on, or facilitate an unlawful activity, namely, bribery in violation of California law, including California Penal Code sections 67.5, 85, or 165;

Third, thereafter the defendant did perform an act to promote, manage, establish, carry on, or facilitate bribery in violation of California law, including Penal Code sections 67.5, 85, or 165.

For Count Eighteen of the indictment, that charged act is, between on or about January 1 and 10, 2016, the defendant provided group expenses and Australian currency, in exchange for Jose Huizar agreeing to perform official acts to benefit the redevelopment of the L.A. Grand Hotel.

For Count Nineteen of the indictment, that charged act is between on or about April 30 and May 2, 2016, the defendant provided group expenses and casino gambling chips, in exchange for Huizar agreeing to perform official acts to benefit the redevelopment of

1  the L.A. Grand Hotel.

2  For Count Twenty, that charged act is, between on or about
3  August 5 and 7, 2016, the defendant provided group expenses and
4  casino gambling chips, in exchange for Huizar agreeing to perform
5  official acts to benefit the redevelopment of the L.A. Grand Hotel.

6  For Count Twenty-One, that charged act is, between on or about
7  February 4 and 5, 2017, the defendant provided group expenses and
8  casino gambling chips, in exchange for Huizar agreeing to perform
9  official acts to benefit the redevelopment of the L.A. Grand Hotel.

10

11  The government does not need to prove that the unlawful
12  activity was the only or even primary reason the defendant traveled.

13

14  California Penal Code Sections 67.5, 85, and 165

15  California Penal Code Section 67.5 is violated when a person
16  gives or offers a bribe to any ministerial officer, employee, or
17  appointee of the City of Los Angeles (or to someone acting on his
18  behalf).

19  California Penal Code Section 85 is violated when a person
20  gives or offers a bribe to any member of the legislative body of the
21  City of Los Angeles (or to someone acting on his behalf).

22  California Penal Code Section 165 is violated when a person
23  gives or offers a bribe to any councilmember of the City of Los
24  Angeles (or someone acting on his behalf).

25  A "bribe" is anything of value or advantage, present or future,
26  or a promise to give such a thing, that is given or offered with the
27  corrupt intent to unlawfully influence the public or official
28  action, vote, or opinion of the person to whom the bribe is given.

1   There need not be a specific official action pending when the bribe

2   is given, or proof that the bribe was intended to influence any

3   particular such act.  It is sufficient that there were subjects of

4   potential action by the recipient, and that the bribe was given with

5   the intent that some such action be influenced.

15  18 U.S.C § 1952(a)(3); Fed. Crim. Jury Instr. 7th Cir. 1952[1] (2022

16  ed.) (elements); Pattern Crim. Jury Instr. 11th Cir. OI O71 (2020)

17  (definition of interstate or foreign commerce; unlawful activity

18  need not be only or primary reason for travel); United States v.

19  Walsh, 700 F.2d 846, 854 (2d Cir. 1983) ("[U]nlawful activity need

20  not be the sole purpose of interstate travel for the Travel Act to

21  be violated."); Cal. Penal Code §§ 7(6), 67.5, 85, and 165; Judicial

22  Council Of California Criminal Jury Instruction 2601 (Pen. Code,

23  § 67.5); People v. Gaio, 81 Cal. App. 4th 919, 928 (2000) (defining

24  "bribe"; no specific or pending official action required)

1      <u>**DISPUTED INSTRUCTION NO. 30 RE:**</u>

2      <u>**TRAVEL ACT VIOLATIONS – ELEMENTS**</u>

3      <u>**PROPOSED BY DEFENDANT**</u>

4          For the defendant to be found guilty of violating the Travel

5  Act as charged in Counts Eighteen through Twenty-One of the

6  indictment, the government must prove each of the following elements

7  beyond a reasonable doubt:

8          First, on or about the dates alleged in the indictment, Wei

9  Huang traveled in interstate or foreign commerce with the intent to

10 promote, manage, establish, carry on, or facilitate the promotion,

11 management, establishment, or carrying on of the crime of bribery in

12 violation of Sections 67.5, 85, and 165 of the California Penal

13 Code;

14         Second, Wei Huang agreed to pay the group expenses, money or

15 casino gambling chips alleged in the indictment in exchange for Los

16 Angeles City Councilman Jose Huizar agreeing to take official acts

17 to benefit the L.A. Grand Hotel project;

18         Third, Wei Huang did something that was a substantial step

19 toward committing the crime and that strongly corroborated his

20 intent to commit the crime of bribery; and

21         Fourth, in doing so, Wei Huang acted as an agent of the

22 defendant Shen Zhen New World I, LLC.

23         Mere preparation is not a substantial step toward committing

24 the crime. To constitute a substantial step, a defendant's act or

25 actions must demonstrate that the crime will take place unless

26 interrupted by independent circumstances.

27

28 Ninth Cir. Model Crim. Jury Instr. 18.1 (2022).

1    **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 30**

2    The government's proposed instruction clearly lays out each of

3    the three required elements for the Travel Action violations: the

4    required travel; the required intent to commit bribery in violation

5    of California law, and the required subsequent act, followed

6    immediately by a description of the charged subsequent acts for each

7    count, for the jury's easy and convenient reference.  The

8    government's clear and straightforward instruction should be

9    provided.

10   Defendant's instruction, on the other hand, is both legally

11   incorrect and confusing.  It confusingly lumps both the travel, and

12   the intent behind the travel, into the first element.  The first

13   element also impermissibly elevates the government's burden by

14   misleadingly suggesting that defendant must have specifically

15   intended to violate specific sections of the California Penal Code.

16   There is no such requirement; rather, the intent element requires

17   only that defendant traveled with the intent to commit the unlawful

18   activity of bribery in violation of California law.  United States

19   v. Vaccaro, 816 F.2d 443, 453 (9th Cir. 1987), abrogated on other

20   grounds by Huddleston v. United States, 485 U.S. 681 (1988) (focus

21   of section 1952 "is the intent to facilitate the promotion or

22   carrying on of an unlawful activity.  Therefore, it must be proved,

23   not that the defendants knew interstate facilities were being

24   utilized, but only that they knew they were facilitating an unlawful

25   activity, [bribery] violations").

26   Defendant's instruction also fails to advise the jury that that

27   the unlawful activity need not be the only or even primary reason

28   for the travel.  Pattern Crim. Jury Instr. 11th Cir. OI O71 (2020)

(definition of interstate or foreign commerce; unlawful activity need not be only or primary reason for travel); United States v. Walsh, 700 F.2d 846, 854 (2d Cir. 1983) ("[U]nlawful activity need not be the sole purpose of interstate travel for the Travel Act to be violated.");

In the second and third elements, defendant's instruction misleadingly suggests that there are two separate acts required, when in fact it is only the single subsequent act that is needed. Moreover, defendant's proposed language incorrectly suggests an actual agreement or actual exchange of bribes for **official acts** is required.  (See 1/7/22 Hr'g Tr. at 73:5-12 (rejecting defense argument that the Travel Act counts "contain a quid pro quo and an official act as elements of the charge and linkage between the two"; "The Court does not believe that the allegations of the [FSI] are inconsistent with the elements of the California bribery statutes or somehow raise the Government's burden with respect to those counts.").)

Finally, defendant defines all the acts as specific to Wei Huang and additionally adds that Huang must have acted as an agent. But the defendant is SZNW, who can act through any agent, including Huang.  Whether Huang's actions, at any stage, can be imputed to defendant is separately and appropriately addressed in the government's Proposed Instruction No. 38 regarding Corporate Liability.

1    **DEFENDANT'S POSITION RE: INSTRUCTION NO. 30**

2         Counts Eighteen through Twenty-One allege that SZNW's violation

3    is based on Huang's travel in interstate and foreign commerce with

4    the intent to commit an unlawful act. (FSI 108-110). The

5    government's instruction would impermissibly permit the jury to

6    convict if it found that another SZNW agent travelled in interstate

7    or foreign commerce with the intent to commit the unlawful act.

1  **DISPUTED INSTRUCTION NO. 32**

2  **BRIBERY CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS - ALLEGATIONS**

3  **PROPOSED BY THE GOVERNMENT**

4      This instruction misrepresents the charges and the law and

5  misleadingly elevates the government's burden.  As explained below,

6  this instruction should not be given.

1    <u>**DISPUTED INSTRUCTION NO. 32**</u>

2    <u>**BRIBERY CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS - ALLEGATIONS**</u>

3    <u>**PROPOSED BY DEFENDANT**</u>

4         The defendant is charged in Count Twenty-Three of the

5    indictment with bribery in violation of Section 666(a)(2) of Title

6    18. This count alleges that, between October 28, 2015, and December

7    2018, the defendant gave Los Angeles City Councilman Jose Huizar and

8    George Esparza financial benefits, including casino gambling chips,

9    accommodations, travel expenses, and approximately $575,000 in

10   collateral applied to Councilman Huizar's personal loan from East

11   West Bank, intending to influence and reward Councilman Huizar in

12   connection with the L.A. Grand Hotel Project by presenting motions

13   and resolutions in City committees to benefit the project, voting on

14   the project in various City committees including the Planning and

15   Land Use Committee and City Council, taking action in the Planning

16   and Land Use Committee to expedite the approval process of the

17   project, and exerting pressure on other City officials to influence

18   the approval process of the project.

19

20

21

22

23

24

25

26

27

28

1   **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 32**

2      Defendant's proposed instruction on the allegations of the

3 indictment misrepresents the charges and the law and misleadingly

4 elevates the government's burden.

5      The biggest flaw with this instruction is that it misleadingly

6 suggests that certain means are conjunctively required, instead of

7 disjunctively.  For instance, the instruction states the allegations

8 as "intending to influence **and** reward" and listing the various acts

9 also in the conjunctive.  Because the allegations in an indictment

10 are not coextensive with the actual elements of the charge, this

11 instruction creates the misleading impression that the government

12 must prove more than is required.  Indictments frequently plead

13 multiple means of an offense in the conjunctive, even though the

14 charge requires only that the jury find one of the charged means;

15 accordingly, instructions should reflect the means in the

16 disjunctive.  <u>See, e.g.,</u> <u>United States v. Bettencourt</u>, 614 F.2d 214,

17 219 (9th Cir. 1980) ("[A] jury may convict on a finding of any of

18 the elements of a disjunctively defined offense, despite the grand

19 jury's choice of conjunctive language in the indictment.").

20      Additionally, defendant's instruction uses the term "financial

21 benefits" instead of "a thing of value" as required under § 666.

22      In sum, defendant's instruction mischaracterizing the

23 allegations of the charges, should be not provided as a jury

24 instruction.  The government incorporates by reference its arguments

25 regarding "allegations" as instructions as set forth in its

26 Instruction No. 22 (Honest Services Wire Fraud – Allegations).  As a

27 compromise, the government has provided defendant with a draft trial

28

1    indictment setting forth the correct and defendant-specific

2    allegations be provided to the jury.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S POSITION RE: INSTRUCTION NO. 32**

    SZNW incorporates by reference its position regarding Instruction No. 22 and submits that Instruction No. 32 accurately summarizes the briber count charged in the first superseding indictment

1              **DISPUTED INSTRUCTION NO. 35 RE:**

2                       **QUID PRO QUO**

3                 **PROPOSED BY THE GOVERNMENT**

4      This instruction misstates the law and is confusing and

5 unnecessary, for the reasons set forth below.

1    ### DISPUTED INSTRUCTION NO. 35 RE:

2    ### QUID PRO QUO

3    ### PROPOSED BY DEFENDANT

4    All counts against the defendant allege that that the defendant

5    bribed or intended to bribe Los Angeles City Councilman Jose Huizar

6    by giving him financial benefits in exchange for Councilman Huizar

7    taking or agreeing to take official acts to benefit the

8    redevelopment of the L.A. Grand Hotel.

9    Giving a financial benefit to a public official is not bribery

10   even if, by doing so, the giver obtains influence over or access to

11   the public official. Moreover, a public official's agreement to act

12   in a manner that may benefit a person or company that gives him a

13   financial benefit is not bribery.

14   For such conduct to constitute bribery, the person giving the

15   financial benefit must specifically intend to give it in exchange

16   for an official act by the public official. The fact that the person

17   who provides the financial benefit to the public official seeks to

18   ingratiate himself or obtain access to the public official is not

19   sufficient. Nor is it sufficient that the person who provides the

20   financial benefit to the public official is motivated by some

21   generalized hope or expectation of ultimate benefit to himself.

22   Rather, the person must be motivated by the public official's

23   agreement to take a definite decision or action on the specified

24   matter.

25   This is known as a "quid pro quo" which is a Latin phrase

26   meaning "this for that." It requires a direct exchange of money or

27   other financial benefit for an official act. The exchange must be

28   clear and unambiguous, leaving no uncertainty about the terms of the

1    bargain. A quid pro quo is essential to the crime of bribery and

2    distinguishes it from lawful conduct and lesser crimes that are not

3    charged in this case.

4         Therefore, as to each count, the government must prove beyond a

5    reasonable doubt that the defendant specifically intended that any

6    financial benefit that it may have provided to Councilman Huizar was

7    in exchange for Councilman Huizar's agreement to take one or more of

8    the specified official acts to benefit the L.A. Grand Hotel project.

1    **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 35**

2        Defendant's "quid pro quo" instruction misstates the law in

3    five regards and should not be given to the jury.

4        *First*, it incorrectly treats **"all counts"**--be it honest

5    services wire fraud, federal program bribery, or violations of the

6    Travel Act--the same, thereby impermissibly elevating the

7    government's burden.  Only honest services wire fraud requires at

8    least an implied quid pro quo, that is, a "specific intent to give .

9    . . something of value in exchange for an official act." United

10   States v. Garrido, 713 F.3d 985, 997 (9th Cir. 2013) (quoting United

11   States v. Sun-Diamond Growers of California, 526 U.S. 398, 404–

12   05(1999)).  Section 666 has no such requirement.  Id. at 1001

13   (rejecting authorities from the First, Fourth, and Fifth Circuits

14   and holding that "§ 666 does not require that a bribe be given or

15   received with the intent to influence the public official in an

16   official act"; id. at 1002 (section 666 "does not impose a specific

17   quid pro quo requirement"); collecting cases).  Nor do the charged

18   Travel Act violations, which rely on California bribery law, require

19   an official act, as this Court has already explained.  (1/7/2022

20   Hr'g Tr. at 63:22-64:11 (McDonnell definition of official acts does

21   not apply to the Travel Act violations).)

22        *Second,* defendant's instruction misleadingly suggests that

23   defendant must have intended to receive specific official acts.

24   That is also not the law, and the government incorporates by

25   reference its arguments in Proposed Instruction No. 22 (Honest

26   Services Wire Fraud – Allegations).

27        *Third*, this instruction misleadingly suggests a need for an

28   agreement by the public official when it states: "Rather, the person

1 must be motivated by the public official's **agreement** to take a

2 definite decision or action on the specified matter." But bribery

3 does not require any such agreement. See United States v. Silver,

4 948 F.3d 538, 551 (2d Cir. 2020) (rejecting argument that honest

5 services fraud requires a "meeting of the minds between the payor

6 and the official as to the corrupt purpose of the payments"); see

7 also Garrido, 713 F.3d at 996-97 (defining quid pro quo for briber

8 to mean briber's "intent to give or receive something of value in

9 exchange for an official act" (emphasis added)); cf. United States

10 v. Jacobs, 431 F.2d 754, 759-60 (2d Cir. 1970) ("Section 201(b) is

11 violated even though the official offered a bribe is not corrupted,

12 or the object of the bribe could not be attained, or it could make

13 no difference if after the act were done it turned out that there

14 had been actually no occasion to seek to influence any official

15 conduct. It is also perfectly plain that the crime is consummated

16 irrespective of whether an offer of an amount of money to influence

17 an official's behavior is accepted by the official."); United States

18 v. Rasco, 853 F.2d 501, 505 (7th Cir. 1988) ("The crime of offering

19 a bribe is completed when a defendant expresses an ability and a

20 desire to pay the bribe.").

21     *Fifth* and finally, the instruction misleadingly suggests an

22 actual exchange, or agreement, is required. ("It requires a **direct**

23 **exchange** of money or other financial benefit **for an official act.**

24 The exchange must be clear and unambiguous, leaving no uncertainty

25 about the terms of the bargain.") As explained above, however, no

26 agreement is required and no official act need actually be

27 performed. Defendant relies on language from two inapplicable

28 cases: McCutcheon v. Fed. Election Comm'n, 572 U.S. 185 (2014),

1  which is a campaign finance case, and <u>McCormick v. United States</u>,

2  500 U.S. 257 (1991), which is a Hobbs Act extortion case.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **<u>DEFENDANT'S POSITION RE: INSTRUCTION NO. 35</u>**

2     Defendant modified its previously submitted instruction to

3 clarify the quid pro quo element of bribery applies to the

4 defendant's specific intent. The instruction accurately defines and

5 explains the quid pro quo element that is required for honest

6 services fraud charged in Counts Two through Four and the bribery

7 charge in Count Twenty-Four. <u>See</u> <u>United States v. Garrido</u>, 713 F.3d

8 985, 997 (9th Cir. 2013) (§ 1346 requires quid pro quo); <u>United</u>

9 <u>States v. Hamilton</u>, No. 21-11157, slip op. at 14 (5th Cir. 2022) (§

10 666 requires quid pro quo); <u>United States v. Fernandez</u>, 722 F.3d 1,

11 26 (1st Cir. 2013) (§ 666 requires quid pro quo); <u>see also</u> <u>United</u>

12 <u>States v. Jennings</u>, 160 F.3d 1006, 1015 & nn.3-4 (4th Cir. 1998)

13 (dicta that § 666 requires quid pro quo). Defendant further submits

14 that, regardless of whether the California bribery statute requires

15 a quid pro quo or official act, generic "burglary" within the

16 meaning of travel act does. Moreover, Counts Eighteen through

17 Twenty-One specifically charge that SZNW, through its agent Wei

18 Wang, agreed to pay the specified benefits "in exchange for"

19 Huizar's agreement to perform official acts to benefit the LA Grand

20 Hotel redevelopment project. Therefore, the instruction applies to

21 all charged counts.

22     Defendant submits that the instruction accurately states the

23 governing law and cites the Court to the cited authority. <u>McConnell</u>

24 <u>v. United States</u>, 136 S. Ct. at 2372 (quid pro quo requires

25 agreement by public official to take definite decision or action on

26 specified matter); <u>United</u> States v. Sun-Diamond Growers, 526 U.S.

27 398, 404-05 (1999) (quid pro quo in bribery requires "specific

28 intent to give or receive something of value in exchange for an

1  official act"); <u>McCormick v. United States</u>, 111 S. Ct. 1807, 1816-17

2  (1991) (bribery requires proof of a quid pro quo); <u>United States v.</u>

3  <u>Inzuza</u>, 580 F.3d 894, 900 (9th Cir. 2009) (<u>McCormick</u> requires that

4  quid pro quo be "clear and unambiguous"); <u>see also</u> <u>Citizens United</u>,

5  558 U.S. at 360 ("[i]ngratiation and access … are not corruption").

6  <u>United States v. Silver</u>, 948 F.3d 538, 577 (2d Cir. 2020) ("An

7  official who merely accepts a thing of value in an otherwise-legal

8  manner ... has not committed a crime. If that official later acts to

9  the benefit of the payor, [the official] still has not committed a

10  crime. It is only upon a showing that, at the time the official

11  accepted the payment, [the official] understood it to be a payment

12  in exchange for official influence on some specific, focused, and

13  concrete matter involving the formal exercise of governmental power

14  that the Government has met its burden.")

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **DISPUTED INSTRUCTION NO. 36 RE:**

2 | **OFFICIAL ACT**

3 | **PROPOSED BY THE GOVERNMENT**

4 | This instruction should not be given because it misstates the

5 | applicability and law of McDonnell, as explained further below.

1                  **DISPUTED INSTRUCTION NO. 36 RE:**

2                        **OFFICIAL ACT**

3                   **PROPOSED BY DEFENDANT**

4      All counts against the defendant allege that the defendant gave

5 or intended to give financial benefits to Los Angeles City

6 Councilman Jose Huizar in exchange for Councilman Huizar's agreement

7 to take official acts to benefit the redevelopment of the L.A. Grand

8 Hotel.

9      An "official act" is a decision or action by a public official

10 that involves the formal exercise of governmental power on a

11 specific and focused matter that is pending or may be brought before

12 the public official. The matter must involve a formal exercise of

13 governmental power that is similar in nature to a lawsuit before a

14 court, a determination before an agency, or a hearing before a

15 committee.

16      The decision or action may include the public official using

17 his official position to exert pressure on another official to

18 perform an official act, or advising another official knowing or

19 intending that such advice will form the basis for an official act

20 by the other official. However, simply expressing support for a

21 governmental act or arranging a meeting, event or call to discuss a

22 matter is not an official act.

23

24

25

26 McDonnell v. United States, 579 U.S. 550, 571-74 (2016).

27

28

**GOVERNMENT'S POSITION RE: INSTRUCTION NO. 36**

Defendant's instruction is misleading and misstates the law.

*First*, it incorrectly treats "**all counts**"--be it honest services wire fraud, federal program bribery, or violations of the Travel Act--the same, thereby impermissibly elevating the government's burden. Only honest services wire fraud requires at least an implied quid pro quo, that is, a "specific intent to give . . . something of value in exchange for an official act." United States v. Garrido, 713 F.3d 985, 997 (9th Cir. 2013) (quoting United States v. Sun-Diamond Growers of California, 526 U.S. 398, 404–05(1999)). Section 666 has no such requirement. Id. at 1001 (rejecting authorities from the First, Fourth, and Fifth Circuits and holding that "§ 666 does not require that a bribe be given or received with the intent to influence the public official in an official act"; id. at 1002 (section 666 "does not impose a specific quid pro quo requirement"); collecting cases). Nor do the charged Travel Act violations, which rely on California bribery law, require an official act, as this Court has already explained. (1/7/2022 Hr'g Tr. at 63:22-64:11 (McDonnell definition of official acts does not apply to the Travel Act violations).)

*Second*, this instruction omits accurate and helpful qualifiers regarding the definition of an official act. For instance, defendant's instruction states only that the matter must be "specific and focused," rather than using the full language of McDonnell, which states that the matter must be "more specific and focused **than a broad policy objective**." McDonnell v. United States, 579 U.S. 550 (2016) (emphasis added). Defendant's instruction omits that the bribe recipient need not be the final decisionmaker and

1    further omits that the public official need not actually perform an

2    official act, specify the means he will use, or intend to perform

3    the official act.  Id. at 572-73.

4         In its revised version, defendant struck a specific reference

5    to the "77-story tower," consistent with the Court's ruling at the

6    10/21/2022 hearing.

7         The Court should provide the government's proposed Instruction

8    No. 23 setting forth the substantive elements of honest services

9    wire fraud, which incorporates a full and accurate definition of an

10   "official act," including what does not qualify as an official act.

11   Notably, government's proposed Instruction No. 23 instructs that

12   "Merely arranging a meeting, hosting an event, or giving a speech do

13   not qualify as the taking of a specific action."

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANT'S POSITION RE: INSTRUCTION NO. 36**

2      Defendant modified its previously submitted instruction to

3  clarify the official act element of bribery applies to the

4  defendant's specific intent. Defendant submits that Instruction 36

5  is proper and incorporates by reference Defendant's Position Re:

6  Instruction No. 35 Unlike the government's proposed instruction on

7  this issue, Instruction 36 correctly informs the jury that "simply

8  expressing support for a governmental act or arranging a meeting,

9  event or call to discuss a matter is not an official act." McDonnell

10 v. United States, 579 U.S. 550, 571-74 (2016). To comport with the

11 Court's ruling at the October 21 status conference, defendant has

12 modified its earlier version of Proposed Instruction 36 to remove

13 the specific reference to the redevelopment of the LA Grand Hotel

14 into a 77-story skyscraper, notwithstanding that this specification

15 of the official act is taken verbatim from the first superseding

16 indictment. (FSI 6).

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

**DISPUTED INSTRUCTION NO. 37 RE:**

**LIMITING INSTRUCTION RE: NON-OFFICIAL ACTS**

**PROPOSED BY THE GOVERNMENT**

    This instruction misstates the law and is confusing.  The government believes this instruction need not be given for the reasons set forth below.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1               **DISPUTED INSTRUCTION NO. 37 RE:**

2       **LIMITING INSTRUCTION RE: NON-OFFICIAL ACTS**

3                 **PROPOSED BY DEFENDANT**

4     You have heard evidence that the defendant, through its agents,

5 requested Los Angeles City Councilman Jose Huizar's assistance with

6 a visa application for the defendant's employee, an application to

7 the University of Southern California for the son of the defendant's

8 owner, arranging a meeting with a labor union leader with whom the

9 defendant had a dispute, resolving a dispute with adjacent land

10 owners over a parking lot, and contacting media outlets to encourage

11 media coverage of a graduation ceremony at an educational

12 institution with which the defendant was affiliated; and that

13 Councilman Huizar assisted the defendant with these matters. These

14 are not "official acts" necessary to establish bribery.

15     You may consider this evidence only for the limited purposes of

16 determining whether the defendant acted with the intent to defraud

17 the City of Los Angeles and its citizens of Councilman Huizar's

18 honest services and whether the defendant intended to bribe

19 Councilman Huizar by providing him with financial benefits in

20 exchange for one or more of the specified official acts to benefit

21 the L.A. Grand Hotel. Do not consider this evidence for any other

22 purpose.

23     Of course, it is for you to determine whether you believe this

24 evidence and, if you do believe it, whether you accept it for the

25 purpose offered. You may give it such weight as you feel it

26 deserves, but only for the limited purposes that I described to you.

27     The defendant is not on trial for committing these other acts.

28 You may not consider the evidence of these other acts as a

1  substitute for proof that the defendant committed the crimes

2  charged. You may not consider this evidence as proof that the

3  defendant, its agents or Councilman Huizar have a bad character or

4  any propensity to commit crimes. Specifically, you may not use this

5  evidence to conclude that because the defendant and Councilman

6  Huizar may have committed the other acts, they must also have

7  committed the acts charged in the indictment.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  McDonnell v. United States, 579 U.S. 550, 571-74 (2016).; *see also*

27  Ninth Cir. Model Crim. Jury Instr. 2.10 (2022) (Other Acts of

28  Defendant).

1     **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 37**

2        This proposed instruction misstates the law and is confusing.

3        This Court already explained that evidence of these acts

4 "tend[] to demonstrate that Shen Zhen sought to develop and

5 cultivate a transactional and corrupt relationship to gain access to

6 Huizar and to obtain political favors, including official acts."

7 (9/23/22 Hr'g Tr. at 81:14-24.) The Court further explained that "a

8 special limiting instruction during and at the end of trial

9 regarding these specific items of evidence is unnecessary." (Id. at

10 82:23-25.) And while the Court stated it would consider an end-of-

11 trial instruction if it "adequately clarified the matter even more

12 for the jury," this proposed instruction does precisely the opposite

13 by "provoking confusion" and "improperly limit[ing] and

14 foreclos[ing] fair and relevant inferences that the jury is entitled

15 to make from all the evidence." (Id. at 83:5-13.) For instance,

16 the instruction confusingly states that the defendant is not on

17 trial for "committing these other acts." But those asks are

18 evidence of defendant's corrupt relationship with Huizar and of

19 defendant's bribery scheme. The instruction also confusingly states

20 that the evidence may not be used as proof that defendant had a bad

21 character or propensity to commit crimes; but these asks do not lend

22 themselves to the type of other wrongs or bad acts that might

23 warrant such a cautionary instruction.

24

25

26

27

28

1   **DEFENDANT'S POSITION RE: INSTRUCTION NO. 37**

2      Instruction 37 accurately states the law as it applies to

3   evidence that the government will seek to introduce with are

4   indisputably not "official acts." This instruction is a proper and

5   necessary limiting instruction given the evidence of legal favors

6   that Huizar provided to the defendant. Contrary to the government's

7   objection, Proposed Instruction 37 does not limit the jury's

8   consideration of the Huang resolution.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DISPUTED INSTRUCTION NO. 38 RE:**

2    **CORPORATE LIABILITY**

3    **PROPOSED BY THE GOVERNMENT**

4    The defendant is a limited liability company ("LLC"). An LLC

5    may be found guilty or not guilty of a criminal offense.

6    An LLC can act only through its agents, that is, its members,

7    managers, directors, officers, employees, and other persons

8    authorized to act for it or with authority to direct others to act

9    for it. The knowledge obtained by agents of LLCs acting within the

10   scope of their employment is imputed to the LLC. Accordingly, if a

11   specific agent knows something within the scope of his or her

12   employment, then the LLC can be said to know the same thing.

13   To find an LLC guilty, you must find beyond a reasonable doubt

14   that:

15   First, each element of the crime charged against the LLC was

16   committed by one or more of its agents;

17   Second, in committing those acts the agent(s) intended, at

18   least in part, to benefit the LLC; and

19   Third, each act was within the scope of employment of the agent

20   who committed it.

21   For an act to be within the scope of an agent's employment, it

22   must relate directly to the performance of the agent's general

23   duties for the LLC. It is not necessary for the act itself to have

24   been authorized by the LLC.

25   //

26   //

27   //

28   //

1        If an agent was acting within the scope of his or her

2   employment, the fact that an agent's act was illegal, contrary to

3   his or her employer's instructions, or against the LLC's policies

4   will not relieve the LLC of criminal responsibility for it.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19   Eighth Circuit Model Criminal Jury Instructions, No. 5.03 (2021 ed.)

20   [Corporate Responsibility] (modified); Seventh Circuit Model

21   Criminal Jury Instructions, No. 7.06 (2018 ed.) [Corporate Criminal

22   Responsibility] (modified); United States v. Hilton Hotels Corp.,

23   467 F.2d 1000, 1004-07 (9th Cir. 1973); United States v. Basic

24   Const. Co., 711 F.2d 570, 572 (4th Cir. 1983); United States v.

25   Mongol Nation, 370 F. Supp. 3d 1090, 1128-29 (C.D. Cal. 2019);

26   United States v. Shortt Accountancy Corp., 785 F.2d 1448 (9th Cir.

27   1986).

28

DISPUTED INSTRUCTION NO. 38 RE:

CORPORATE LIABILITY

PROPOSED BY DEFENDANT

Defendant Shen Zhen New World I, LLC is a California limited liability company. A limited liability company can act only through its agents, that is, its owners, officers, employees, and others who are authorized to act for the company. For the defendant to be found guilty of any charge in this case, you must find beyond a reasonable doubt as follows:

First, each and every element of the crime was committed by an agent of the defendant acting within the scope of his authority to act for the defendant; and

Second, the agent acted with the knowledge and intent required to commit the crime, and with the intent to benefit the defendant.

**GOVERNMENT'S POSITION RE: INSTRUCTION NO. 38**

The government's instruction is clearer, provides helpful definitions, and conforms with Ninth Circuit precedent, while the defendants' instruction is confusing, vague, and misstates Ninth Circuit precedent in several key respects.

First, paragraph two of the government's proposed instruction recognizes that knowledge obtained by agents acting within the scope of their authority is imputed to the LLC. See United States v. Pacific Gas and Elec. Co., 2015 WL 9460313, at *3-5 (N.D. Cal. Dec. 23, 2015); United States v. T.I.M.E.-D.C., Inc., 381 F. Supp. 730 , 739 (W.D. Va. 1974) ("knowledge acquired by employees within the scope of their employment is imputed to the corporation"); see also United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1454 (9th Cir. 1986) (corporation liable for collective intent in submitting false tax returns). This concept directly relates to facts the government intends to prove at trial and would be helpful to the jury in evaluating those facts.

Second, defendant's instruction incorrectly suggests that the elements must be satisfied by a single actor instead of by different or multiple actors. See, e.g., Def. Proposed Instruction No. 38 ("each and every element of the crime was committed by an agent of the defendant acting within the scope of his authority to act for the defendant"; "the agent acted with the knowledge and intent required to commit the crime"). This is contrary to the Ninth Circuit's holding in United States v. Hilton Hotels Corp., 467 F.2d 1000, 1001, 1004-07 (9th Cir. 1973).

Third, defendant's proposed instruction includes two compound elements (that is, each element contains two elements), which is

1  confusing.  The government's proposed instruction properly separates

2  these concepts into distinct elements.

3      Fourth, the language in defendant's proposed second element

4  that the agent must act "with the intent to benefit the defendant"

5  omits critical language that the agent need only have intended to

6  benefit the LLC, *at least in part*.  The government's proposed

7  instruction reflects Ninth Circuit precedent and would be helpful to

8  the jury: "Second, in committing those acts the agent(s) intended,

9  at least in part, to benefit the LLC."

10 Finally, the government's proposed instruction properly allows a

11 jury to find defendant guilty based upon theories of express,

12 implied, and apparent authority, whereas defendants' instruction is

13 so vague and simplified that it eliminates at least two of these

14 theories.  For example, defendant's instruction fails to define

15 "within the scope of his authority to act for the defendant."  The

16 government's instruction, by contrast, defines this concept and

17 includes helpful language supported by Ninth Circuit precedent that

18 a corporation can be held liable for the acts of agents even if

19 those acts are contrary to corporate policy or express instructions

20 given to the agent.  See Hilton Hotels 467 F.3d at 1007 ("Such

21 liability may attach without proof that the conduct was within the

22 agent's actual authority, and even though it may have been contrary

23 to express instructions."); id. ("For these reasons we conclude that

24 as a general rule a corporation is liable . . . for the acts of its

25 agents in the scope of their employment, even though contrary to

26 general corporate policy and express instructions to the agent.");

27 United States v. Mongol Nation, 370 F. Supp. 3d 1090, 1129 (C.D.

28 Cal. 2019) ("Such liability may attach without proof that the

conduct was within the agent's actual authority, and even though it may have been contrary to express instructions.  Actual authority can be either express or implied." (citations omitted)).  The Ninth Circuit's reasoning in Hilton Hotels makes good sense, because most companies have some statement or policy forbidding criminal or illegal acts.  But the absence of such express authority does not absolve the company of liability under an implied or apparent liability theories.  See Slayers v. Metro. Life Ins. Co., 871 F.3d 934, 940 (9th Cir. 2017) ("The legal consequences of an agent's actions may be attributed to a principal when the agent has actual authority (express or implied) or apparent authority"); Continental Baking Co. v. United States, 281 F.2d 137, 150-51 (6th Cir. 1960) ("A corporation is legally bound by the acts and statements of its agents done or made within the scope of their express or apparent authority.  Express authority is that specifically given to an agent by his superior; apparent authority is the authority which outsiders would normally assume that the agent would have, judging from his position with the company and the circumstances surrounding his past conduct.").  Here, the government should be permitted to argue that while defendant's agents (e.g., Huang, Zheng) may have acted contrary to policy, defendant nevertheless may be held liable if Huang, Zheng, and others were acting within the scope of their agency.

**DEFENDANT'S POSITION RE: INSTRUCTION NO. 38**

The government's instruction would permit the jury to convict SZNW if the intent and conduct of all of its agents collectively satisfied the elements of the crimes but without any single agent providing a financial benefit to Huizar in exchange for his agreement to take an official act to benefit the LA Grand project. At least one SZNW agent has to be criminally responsible for criminal liability to be imputed to SZNW. The government's proposed instruction would violate SZNW's right to due process and jury trial.

1    <u>**DISPUTED INSTRUCTION NO. 47 RE:**</u>

2    <u>**LIMITED PURPOSE OF EVIDENCE REGARDING LA GRAND HOTEL**</u>

3    <u>**PROPOSED BY THE GOVERNMENT**</u>

4        This instruction misstates the law and is confusing.  The

5    government believes this instruction need not be given for the

6    reasons set forth below.

(196 of 236) Page 196 of 236
Case: 23-972, 09/18/2023, DktEntry: 12.2, Page 196 of 236
Case 2:20-cr-00326-JFW Document 754 Filed 10/25/22 Page 127 of 129 Page ID #:16919

**DISPUTED INSTRUCTION NO. 47 RE:**

**LIMITED PURPOSE OF EVIDENCE REGARDING LA GRAND HOTEL**

**PROPOSED BY DEFENDANT**

You have heard evidence that the defendant made requests to City officials relating to the renovation of the LA Grand Hotel prior to applying for a permit to redevelop it. All official acts alleged in the indictment pertain to the redevelopment of the LA Grand Hotel. Therefore, you may not consider any act by a public official relating to the renovation of the LA Grand Hotel as an official act that was allegedly exchanged for a financial benefit from the defendant.

You have also heard evidence that Councilman Huizar prepared a letter at Wei Huang's request to assist Mr. Huang in returning to the United States from China for a meeting relating to the LA Grand Hotel project; as well as evidence that Councilman Huizar provided Mr. Huang with a list of land use consultants who could assist the defendant with the LA Grand Hotel project. Although these acts are related to the LA Grand Hotel project, they are not official acts that were allegedly exchanged for a financial benefit from the defendant.

1  **GOVERNMENT'S POSITION RE: INSTRUCTION NO. 47**

2      Defendant's proposed instruction is inappropriate and

3  unnecessary.  The government's instruction No. 23 (Honest Services

4  Wire Fraud – Elements) clearly defines the required specific

5  question/matter, as well as what constitutes an official act.  The

6  same is true of the government's proposed special verdict form,

7  which identifies the specific question/matter and enumerates the

8  qualifying official acts for the honest services wire fraud counts.

9  Defendant's instruction, which merely recites the terms "renovation"

10  and "redevelopment" does nothing to clarify the distinction between

11  a renovation and redevelopment.  In any event, that is an issue of

12  fact that can and should be addressed through the presentation of

13  evidence and testimony.  A limiting instruction is typically

14  required to restrict the jury's consideration of what may be

15  arguably prejudicial evidence to only certain permissible purposes.

16  Defendant's proposed limiting instruction does neither--it does not

17  pertain to prejudicial facts and only purports to restrict the

18  jury's consideration of an entire topic of evidence without

19  instructing on its permissible purposes.

20

21

22

23

24

25

26

27

28

**DEFENDANT'S POSITION RE: INSTRUCTION NO. 47**

    This instruction is appropriate and necessary to avoid any confusion about the "official acts" that may be properly considered by the jury in this case.

(199 of 236) Page 199 of 236 Case: 23-972, 09/18/2023, DktEntry: 12.2, Page 199 of 236
Case 2:20-cr-00326-JFW Document 699 Filed 10/07/22 Page 85 of 129 Page ID #:15848

85

1    by counsel on cross-examination and the Government's specific

2    questions, the Court cannot make an informed ruling.

3                Accordingly, the Motion in Limine No. 8 is

4    denied.

10:28AM 5                To the extent this issue even arises during

6    trial, Shen Zhen may raise objections on a question-by-question

7    basis during the Government's examination of this witness.

8                All right.  The next motion is Motion in

9    Limine No. 9.  This motion appears as docket No. 647.

10:30AM 10                In this motion, the defendant seeks an order from

11    the Court excluding evidence of other alleged bribery schemes,

12    including, but not limited to, testimony of Esparza that he and

13    Huizar participated in pay-to-play schemes with other

14    developers, a wiretap intercepted call between Ricky Zheng and

10:30AM 15    George Esparza involving an unrelated development project

16    involving Shanghai Construction.

17                Defendant argues that this other scheme evidence

18    involving unrelated developers, individuals, and projects is

19    irrelevant as to the case against Shen Zhen and should be

10:30AM 20    excluded under 403.

21                In its opposition, the Government represented

22    that it intends to elicit testimony about the general framework

23    of the pay-to-play scheme as well as a few limited examples of

24    how the scheme operated, including as it related Shanghai

10:31AM 25    Construction, as referenced in the May 11th call.  It disavowed

1    any intent to elicit evidence that would be needed to prove up

2    the 940 Hill bribery scheme, the Luxe Hotel bribery scheme, the

3    Mateo project bribery scheme, and the Businessperson A schemes.

4    That was at paragraph -- or page 17 of the Government's portion

10:31AM  5    of the motion.

6              The Government argues that limited and tailored

7    evidence of a pay-to-play scheme within the City is direct

8    evidence of the charged scheme to defraud against Shen Zhen and

9    probative of Shen Zhen's knowledge and intent; and, two,

10:31AM  10   inextricably intertwined with the charges against Shen Zhen and

11   necessary to present a comprehensive story of how the

12   pay-to-play scheme worked.

13             After reviewing the Government's opposition, I

14   was particularly concerned with the Government's intention to

10:32AM  15   elicit testimony about unspecified limited examples of the

16   pay-to-play scheme and, thus, ordered the Government to file an

17   offer of proof as to those limited examples.

18             On September 19th, the Government filed its offer

19   of proof, indicating that it would seek to elicit testimony

10:32AM  20   regarding the following specific examples, in addition to the

21   Shanghai Construction example:

22             One, testimony from Esparza regarding the

23   $500,000 that Mr. Lee, the majority owner of 940 Hill, agreed

24   to pay Huizar in exchange for Huizar's use of his official

10:32AM  25   position to resolve a then pending union appeal against

1    940 Hill Project.  Incredibly, the Government seeks to

2    introduce this evidence despite its representation in its

3    opposition to the motion that it would not elicit any evidence

4    that would be needed to prove up the 940 bribery scheme.

10:32AM   5              The second, quote, "limited example" is testimony

6    from Esparza that, as an example of how he and Huizar would

7    test out whether and what a particular developer was willing to

8    pay without directly asking for a financial benefit, Esparza on

9    behalf of Huizar asked a particular developer if they would be

10:33AM  10   willing to purchase some Katy Perry concert tickets for

11   Huizar's family.

12              And finally, testimony from Special Agent Civetti

13   regarding the scope of the investigation, including the range

14   of benefits provided by developers and/or their proxies to

10:33AM  15   public officials, including campaign contributions, directly

16   and through PACs.

17              For example, the Government intends to elicit

18   testimony from Agent Civetti that the FBI investigated a

19   lobbyist, Morrie Goldman, and a developer for agreeing to pay

10:33AM  20   $50,000 to a PAC to benefit the campaign of Mr. Huizar's wife,

21   Richelle Rios, in exchange for Huizar's use of his official

22   position to vote in PLUM and the PLUM Committee against a union

23   appeal, threatening to stall one of the developer's major

24   projects.

10:34AM  25              Again, with respect to the exhibits that are

88

1    subject to this motion, the only trial exhibit specifically

2    objected to in Motion in Limine No. 9 is the 392.  But the

3    pretrial exhibit stipulation contains several additional

4    exhibits.  And again, I'm going to have -- make sure that -- I

10:34AM   5    want to make sure that counsel is going to fix that in the next

6    pretrial exhibit stipulation.

7            By way of background, on August 9th of 2021,

8    defendants Shen Zhen, 940 Hill, and David Lee moved to sever

9    their trials, arguing that the allegations against them were

10:35AM   10   separate and distinct from the other schemes charged in the

11   First Superseding Indictment and that introducing the other

12   scheme evidence at a joint trial would be unfairly prejudicial.

13   That was set forth in docket No. 200.

14           The Government opposed the motions, claiming that

10:35AM   15   all the charged defendants were engaged in a single honest

16   services fraud scheme and that evidence of all of the schemes

17   was admissible against all of the defendants.  And that

18   opposition was docket No. 228.

19           At the hearing on January 7, the Court expressed

10:35AM   20   its concerns regarding the potential prejudice of introducing

21   the other scheme evidence in a joint trial if the Government

22   failed to prove a single scheme to defraud against all

23   defendants.  Accordingly, the Court ordered the Government to

24   file an offer of proof regarding the existence of a single

10:35AM   25   scheme, including Shen Zhen's participation in that scheme.

1    On January 21st, the Government submitted its

2    offer of proof, which begins at page 13 of docket No. 353.

3    On March 7, the Court found that the Government's

4    offer of proof failed to establish a single scheme and granted

10:36AM   5    defendants' severance motion.  Including that severance was

6    appropriate, the Court reasoned in relevant part at page 24 of

7    the transcript.  I'm not going to read it.

8    The First Superseding Indictment -- and I'm

9    quoting from the transcript -- "RICO and honest services and

10:36AM   10   bribery charges will allow the Government to introduce some

11   evidence of criminal activities in which defendants did not

12   participate in order to prove the enterprise and the fraudulent

13   scheme.  However, in this case, there is a substantial amount

14   of evidence of schemes and acts which these defendants played

10:37AM   15   absolutely no part.

16   "While evidence relating to their development

17   projects will be used to prove the existence of the enterprise

18   and scheme to defraud against Huizar and Chan, the majority of

19   the evidence in this case involves unrelated conduct involving

10:37AM   20   Huizar and Chan and other co-schemers and has absolutely

21   nothing to do with Lee, 940 Hill, or Shen Zhen.

22   "The evidentiary disparity where a jury will

23   listen to countless hours of testimony related to other conduct

24   and other defendants is particularly prejudicial.  Inevitably,

10:37AM   25   prejudice is caused by the slow but deliberate accumulation of

1    evidence against major players.

2           "Defendants --" I ruled "Defendants have made a

3    sufficient showing of disproportional involvement in the

4    overall scheme to establish the substantial risk that they

10:37AM  5    would be prejudiced by the gradually accumulating effect of the

6    evidence of Huizar's widespread wrongdoing."  It was my view

7    and I ruled that the sheer volume of evidence against the other

8    schemers would dwarf the amount of evidence presented against

9    Lee, 940 Hill, and Shen Zhen.

10:38AM  10          Moreover, I was concerned that there was a real

11    danger that the jury will infer, because of the overwhelming

12    amount of evidence, that other developers paid Huizar bribes to

13    benefit their projects, that Defendants Lee, 940 Hill, and

14    Shen Zhen must have also paid a bribe to Mr. Huizar.

10:38AM  15          The Court concluded by indicating that I was

16    mindful of its duty to protect the integrity of the jury's

17    consideration of the evidence against the more minimally

18    involved defendants by guarding against both guilt by

19    association and guilt by confusion.

10:38AM  20          Accordingly, I granted the motion to sever.

21          In the recent 940 Hill/Lee trial, the Government

22    elicited testimony from Esparza that he and Huizar engaged in

23    an extensive pay-to-play scheme with other Council District 14

24    developers.

10:39AM  25          On direct and cross-examination, Esparza made

1    clear that the scheme applied to all developers.  However, the

2    940 Hill/Lee defendants did not object to the admission of this

3    testimony, which appears to have been a part of an intentional

4    trial strategy to distinguish themselves from other developers

10:39AM  5    who engaged in Huizar's scheme.

6             Thus, the admission of that evidence in the

7    940 Hill/Lee case does not control the admission of the

8    evidence here.  In this case, Shen Zhen objects to the

9    admission of all of the other scheme evidence.

10:39AM  10             I will hear from you, Mr. Steingard, but I agree

11    and it is my tentative that I'm not going to permit the limited

12    examples of -- I'm not going to let in the Lee bribe.  My

13    ruling is fairly detailed in terms of how I consider what

14    evidence is going to come in and what evidence is not going to

10:40AM  15    come in.  So I'm not sure that any argument would help because

16    I'm pretty much convinced in terms of what I'm going to do.

17    And it's really going to be up to the Government to, at trial,

18    try to conform with the ruling.

19             I think the Government is entitled to put on some

10:40AM  20    evidence of the pay-to-play scheme.  But with respect to the

21    specific examples and the offer of proof, I'm not going to

22    allow that.

23             But if you want to argue, I will hear from you.

24    Otherwise, I will hear from the Government and then I will

10:40AM  25    rule.

(206 of 236)   Page 206 of 236
Case: 23-972, 09/18/2023, DktEntry: 12.2, Page 206 of 236
Case 2:20-cr-00326-JFW   Document 699   Filed 10/07/22   Page 92 of 129   Page ID #:15855

92

1          MR. STEINGARD:  You know, Your Honor, I'm going

2    to keep my remarks short.  But I do want to say a couple

3    things.  I don't know precisely what your plan is here.  And I

4    don't mean that --

10:41AM  5          THE COURT:  Why don't we do this.  Why don't you

6    let me make my ruling, and then we can come back and revisit

7    it.

8          MR. STEINGARD:  Perfect.

9          THE COURT:  Does the Government want to proceed

10:41AM 10   in that fashion?

11         MS. HAR:  Your Honor, if I may, before you do

12   read the ruling, I don't know if this will be addressed, but

13   one of the issues, of course, is if in the course of trial --

14   how to handle George Esparza, who we expect to testify, his

10:41AM 15   factual basis, which covers a broad range of schemes.

16         So we wanted to flag that, if that's something in

17   particular that the cross is going to veer into, we would need

18   to be able to address that, including upfront during the direct

19   examination.

10:42AM 20         THE COURT:  All right.  Let me give my ruling.

21   As an initial matter, contrary to defendant's argument, the

22   Court's severance ruling did not preclude the Government from

23   putting on any or all other schemes' evidence.  Indeed, in

24   granting the severance motion, I was primarily concerned with

10:42AM 25   the overwhelming amount of other scheme evidence, most of which

**ER-0206**

1    had little or nothing to do with or any relevance as to

2    Shen Zhen.

3            However, the Court certainly did not intend to

4    preclude the Government from putting on relevant and admissible

10:42AM   5    evidence against Shen Zhen.  In other words, if the evidence is

6    relevant and otherwise admissible, the Court's severance ruling

7    has no impact on the admissibility of that evidence.

8            However, the Government ignores the substance of

9    the Court's severance ruling entirely and continues to argue

10:42AM  10    that Shen Zhen was part of a single scheme with other

11    developers without demonstrating or attempting to demonstrate

12    why the Court's prior ruling was erroneous.

13            For example, on page 9 of the motion in limine,

14    the Government states -- and I quote -- "In proving defendant

10:43AM  15    devised or knowingly participated in a scheme or plan to

16    deprive the City of Los Angeles or its citizens of their right

17    of honest services, the Government is entitled to present

18    evidence of that scheme or plan defendant devised or knowingly

19    participated in the pay-to-play scheme.  Merely because

10:43AM  20    defendant was not involved in every aspect of the pay-to-play

21    scheme does not mean that he wasn't a member of the scheme or

22    that the evidence is inadmissible against the defendant."

23            The Government has made no attempt to demonstrate

24    that Shen Zhen was a knowing participant in the single scheme

10:43AM  25    to defraud.  As the 11th Circuit summarized in the holding in

1    *Kotteakos* where the spokes of the conspiracy have no knowledge

2    of or connection with any other dealing independent with the

3    hub conspirator, there is not a single conspiracy but, rather,

4    as many conspiracies as there are spokes.

10:44AM   5         As the Government argues, just as acts and

6    statements of co-conspirators are admissible against other

7    conspirators, so too are the statements and acts of

8    co-participants in a scheme to defraud admissible against other

9    participants.  However, because the Government has failed to

10:44AM   10   demonstrate by a preponderance of the evidence that Shen Zhen

11   was a knowing co-participant in the broader scheme to defraud

12   devised by Huizar, evidence of other schemes is admissible only

13   under, in my view, Rule 404(b) or, as inextricably intertwined,

14   with the charged offense against Shen Zhen.

10:44AM   15        The Court agrees with the Government that at

16   least some of the evidence regarding the general framework of

17   the pay-to-play scheme is not other acts' evidence but is

18   inextricably intertwined with the charges against Shen Zhen.

19        As the 9th Circuit stated in *United States versus*

10:45AM   20   *Martinez* at 66 F.3d 1006, "Other act evidence is inextricably

21   intertwined with the charged offense and need not meet the

22   requirements of 404(b) if admitting the evidence is necessary

23   to permit the prosecutor to offer a coherent and comprehensible

24   story regarding the commission of the crime.  The jury cannot

10:45AM   25   be expected to make its decision in a void without knowledge of

1    the time, place, and circumstances of the acts which form the

2    basis of the charge."

3              The general framework evidence of the pay-to-play

4    scheme, assuming that framework equally applied to Shen Zhen,

10:45AM    5    appears to meet this test.  The Court has reviewed the limiting

6    examples of the general framework testimony the Government

7    might seek to elicit, and those appear at page 12 of the Motion

8    in Limine No. 9.  And the Court is of the view that this

9    evidence is inextricably intertwined.

10:46AM   10              However, without specific evidence or testimony

11    before it and the relationship of that evidence or testimony to

12    Shen Zhen, the Court cannot definitively determine if it is

13    inextricably intertwined or not.  Moreover, it is difficult to

14    assess whether any such pay-to-play scheme evidence is unfairly

10:46AM   15    prejudicial without knowing exactly what testimony the

16    Government will seek to elicit.

17              As I indicated earlier in connection with any

18    motion in limine to exclude evidence, the evidence must be

19    inadmissible on all potential grounds.  Unless evidence meets

10:46AM   20    this high standard, evidentiary ruling should be deferred until

21    trial so the questions of foundation, relevance, and potential

22    prejudice may be resolved in the proper context.  This is

23    because, although rulings on motions in limine may save time,

24    cost, effort, and preparation, the Court is almost always

10:47AM   25    better situated during the actual trial to assess the value and

1    utility of the evidence.

2             Accordingly, the Court denies Motion in

3    Limine No. 9 with respect to the general framework pay-to-play

4    scheme evidence, and defense counsel may object to this

10:47AM    5    evidence during the course of trial on a question-by-question

6    basis so the Court can assess the value and utility of the

7    evidence in the proper context.

8             However, with respect to specific examples of the

9    pay-to-play scheme evidence, the Court concludes that the

10:47AM    10    Government has not even attempted to meet its burden to

11    demonstrate that this evidence is admissible as inextricably

12    intertwined or under Rule 404(b).

13             Accordingly, the Court will grant Shen Zhen's

14    Motion No. 9 as to specific examples of other developer

10:47AM    15    conduct.  The Government will not be allowed to elicit

16    testimony from Esparza regarding the 940 Hill bribe or the

17    Katy Perry concert tickets or from Special Agent Civetti

18    regarding the $50,000 PAC contribution to benefit the campaign

19    of Ms. Rios in exchange for Huizar's use of his official

10:48AM    20    position to vote in the PLUM Committee.

21             This evidence appears to be mere propensity

22    evidence because Huizar accepted a bribe from another developer

23    in exchange for an official act, so too must Huizar have

24    accepted a bribe from Shen Zhen in exchange for an official

10:48AM    25    act.

1    In addition, with respect to the Lee bribery

2    scheme in particular, the Court concludes that any probative

3    value of that evidence would be substantially outweighed by the

4    dangers under Rule 403, including unfair prejudice, confusing

10:48AM    5    the issues, and undue delay.

6    Not only would defense counsel be forced to rebut

7    the evidence, which would take an inordinate amount of time,

8    the Court concludes that the 940 Hill scheme, which more

9    clearly involved a bribe in exchange for an official act, would

10:49AM    10    create a risk that the jury would find the requisite official

11    act and/or find Shen Zhen guilty by mere association with

12    Mr. Huizar.

13    Finally, the Court concludes that the evidence of

14    the May 11, 2017, call between Esparza and Ricky Zheng

10:49AM    15    regarding Shanghai Construction is inadmissible.  This May 11th

16    call raises unique issues from the other evidence at issue in

17    this motion because Ricky Zheng, the former executive director,

18    was directly involved.

19    According to Ricky Zheng's 302 dated February 21,

10:49AM    20    2019, Shanghai Construction was a Chinese investment company

21    that purchased hotels and had a project in Council District 14.

22    Ricky Zheng previously had a relationship with Shanghai

23    Construction and referred Shanghai Construction to a real

24    estate agent.  Zheng knew the manager of Shanghai Construction

10:50AM    25    who knew that Zheng knew Huizar.  The manager wanted to invite

 1   Huizar to a meal or a meeting because Shanghai Construction

 2   knew that Huizar was in charge of the district.

 3          Zheng was expected to receive a commission based

 4   on a referral fee for the introduction to Huizar and a monthly

10:50AM   5   consulting fee.  Huizar told Zheng that he needed to give the

 6   money or a portion of the money to Huizar and to see how much

 7   Zheng could get from Shanghai Construction.  Zheng did not want

 8   to do the deal because he did not want to give the money to

 9   Huizar.  Importantly, Mr. Huang and Shen Zhen were not aware of

10:50AM  10   this potential arrangement.

11          The Government intends to offer a recorded call

12   between Esparza and Ricky Zheng where the two discuss how

13   Huizar has stalled Shanghai Construction's project for the past

14   year because that developer had not fulfilled its commitments

10:51AM  15   or been supportive of the councilman.

16          During that call, Esparza reminds Zheng that

17   Huizar had stalled the Shanghai Construction project for a year

18   now which could not even start without a bunch of stuff,

19   approvals.  Esparza explains that the reason for blocking the

10:51AM  20   project was because Shanghai Construction, quote, "hasn't come

21   through with any of their financial commitments to us, so why

22   even be helpful to them?"

23          Esparza asks Zheng what he wanted them to do, and

24   Zheng provides instructions to Esparza to keep ignoring them

10:51AM  25   and don't meet the chairman of Shanghai Construction.

(213 of 236), Page 213 of 236 Case: 23-972, 09/18/2023, DktEntry: 12.2, Page 213 of 236
Case 2:20-cr-00326-JFW Document 699 Filed 10/07/22 Page 99 of 129 Page ID #:15862

99

1    The Government contends this call is relevant to

2  demonstrate the power of Huizar and Huizar's office to block

3  development projects, the fact that developers who did not

4  engage in the pay-to-play scheme were treated adversely, and

10:51AM  5  the relationship dynamic between Esparza and Zheng in which

6  Zheng called the shots as to how Huizar's office should handle

7  another developer.

8    The Government also contends that the call is

9  probative of Shen Zhen's knowledge via Zheng's knowledge of the

10:52AM  10  power, ability, and influence of Jose Huizar to treat

11  development projects adversely or favorably, Shen Zhen's

12  understanding that Huizar punished developers who did not come

13  through or provide financial benefits for Huizar, and

14  Shen Zhen's own motive and intent to provide benefits to Huizar

10:52AM  15  to advance his own development projects.

16    As an initial matter, the parties disagree over

17  whether Zheng was an agent of Shen Zhen during this time

18  period.  The Court need not decide this question.  Regardless

19  of whether Zheng was acting as an agent at the time of the

10:52AM  20  call, it was clear that Zheng was not acting in furtherance of

21  a scheme in which Shen Zhen was a co-participant.  Indeed,

22  Shen Zhen and Huang were not even aware of the potential

23  arrangement between Zheng and Shanghai Construction, as

24  indicated by Zheng's 302.

10:53AM  25    As such, Zheng's statements and Esparza's

1    statements, if offered for the truth of the matters asserted,

2    are hearsay based on the Government's reasons for offering

3    these out-of-court statements.  And it appears that they are

4    being offered for the truth of the matter asserted.

10:53AM    5              Accordingly, this recording is inadmissible.

6              The next motion --

7              MS. HAR:  Your Honor, may I ask for one

8    clarification?

9              THE COURT:  Sure.

10:53AM    10             MS. HAR:  In the Court's ruling that there won't

11   be testimony elicited about the 940 Hill, the Katy Perry

12   tickets, or the Morrie Goldman involvement, would that apply to

13   the defense's ability to cross-examine those same subject areas

14   with respect to --

10:53AM    15             THE COURT:  I don't understand the question.

16             MS. HAR:  The Court's ruling said that --

17             THE COURT:  I understand the Court's ruling.  So

18   what's your point?

19             MS. HAR:  The question is whether this would

10:54AM    20   preclude the defense from eliciting that same testimony during

21   cross-examination.

22             THE COURT:  I can almost guarantee you that

23   Mr. Steingard isn't going to go anywhere near that testimony

24   because, if he does, he opens the door to allow all the

10:54AM    25   testimony to come in.  Mr. Steingard has a grin on his face.

1          I may have -- I may be correct; right,

2    Mr. Steingard?

3              MR. STEINGARD:  This isn't my first rodeo,

4    Your Honor.

10:54AM    5              THE COURT:  Right.

6              MR. STEINGARD:  If I may, Your Honor, you

7    suggested that I could make some remarks after hearing your

8    rulings.  Could I just -- I'm in agreement.  I just want to

9    make a couple points and see if I can just elicit some

10:54AM   10    information from the Court.  I will be brief.  I know we have

11    been at this a while.

12              THE COURT:  Why don't we wait until later because

13    I have a few more motions I want to rule on, and we're going to

14    have to give the court reporter a break.

10:55AM   15              MR. STEINGARD:  I will reserve.  I will reserve

16    my remarks.

17              THE COURT:  All right.  The next motion -- and

18    this is Motion in Limine No. 10, and this is the -- this motion

19    is docket No. 667.

10:56AM   20              In the motion, Shen Zhen seeks an order from the

21    Court excluding Huizar's alleged money laundering activities,

22    including cash financial transactions Huizar conducted with his

23    relatives and cash seized from his house.  Shen Zhen argues

24    that this motion is a, quote, "corollary to Motion in

10:56AM   25    Limine No. 1."

1   with favorable affordable housing requirements and height

2   requirements as set forth or alleged in overt acts 264 through

3   275.

4           Accordingly, there is no basis to strike the

09:32AM  5   third contribution overt acts as alleged in Count 29.  Of

6   course, it will be for the jury to decide based upon the

7   evidence at trial whether a clear and unambiguous quid pro quo

8   existed based upon the Court's instructions.

9           The next series of issues relate to the -- that

09:33AM 10   are raised in the motion relate to the Travel Act, and those

11   appear in Counts 18 through 21 of the First Superseding

12   Indictment.  Those charge defendants with violating the

13   Travel Act which is -- the statute is 18 United States Code

14   Section 1952(a)(3) by committing bribery in violation of

09:33AM 15   California law, specifically, Penal Code Sections 67, 67.5, and

16   68.

17           The Travel Act makes it a crime to travel in

18   interstate or foreign commerce or use the mail or any facility

19   in interstate or foreign commerce with the intent to promote,

09:34AM 20   manage, establish, carry on, or facilitate the promotion,

21   management, establishment, or carry on of any unlawful activity

22   and thereafter perform or attempt to perform an act to do so.

23   Unlawful activity is defined, in relevant part, as bribery in

24   violation of the laws of the state in which committed or of the

09:34AM 25   United States.

(217 of 236) Page 217 of 236 Case: 23-972, 09/18/2023, DktEntry: 12.2, Page 217 of 236
Case 2:20-cr-00326-JFW Document 346 Filed 01/20/22 Page 56 of 114 Page ID #:8367

56

1      The defendants argue that the Travel Act

2  Counts 18 through 21 should be dismissed because the California

3  bribery statutes that I just referred to are broader than the

4  generic meaning of the term bribery as used in the Travel Act

09:34AM  5  and thus cannot serve as predicates for the Travel Act

6  offenses.

7      I found this motion to be very interesting, but

8  my tentative is -- or this portion of the motion.  My tentative

9  is to deny it.

09:35AM  10      So, Mr. Snyder, if you have anything you want to

11  add to your papers, I will hear from you.

12      MR. SNYDER:  This one -- Mr. Steingard is going

13  to take this one and Ms. Alé if she has anything to add.

14      THE COURT:  You will have to speak into the

09:35AM  15  microphone because I'm not hearing you.

16      MR. SNYDER:  For this one Mr. Steingard is going

17  to take the lead, and Ms. Alé will add anything if he misses

18  it.

19      THE COURT:  Okay.  Mr. Steingard.

09:35AM  20      MR. STEINGARD:  Your Honor, I appreciate what you

21  said.  You commented you found the motion interesting, and it

22  sounds like --

23      THE COURT:  Well, interesting because I think the

24  *Chi* case is very helpful.  I struggled with the ruling in the

09:36AM  25  *Chi* case when that -- that issue is different obviously because

```
 1   of the money laundering -- when that issue was litigated in

 2   that case which was ultimately affirmed by the 9th Circuit.  So

 3   I find it interesting because of the complexity of the

 4   analysis.  In any event, for what that is worth.

 5            MR. STEINGARD:  Well, I appreciate that.

 6            THE COURT:  And I thought everybody has done a

 7   good job on these papers.  The papers were helpful.

 8            MR. STEINGARD:  This is a very, very complex area

 9   of the law trying to figure out the categorical approach.  I

10   tend to simplify it quite a bit.  And that is simply -- just

11   simply -- there is a beeping going on.  I hope that's not me.

12   I'm sorry.  The simplest way I look at it is whether the state

13   statute is broader or the same act or less broad than the

14   federal statute.

15            There's no doubt the California courts have said

16   that the federal bribery and state statutes are different.  I

17   think there's a federal case Frega that sort of affirms that

18   comment.

19            If you begin with the proposition that they're

20   different, I think you have to conclude that the state statute

21   is broader.  The way it is drafted, the wording, the cases that

22   have interpreted have all been far more expansive than the

23   federal cases.

24            The one area, when I was prepping for this motion

25   hearing today, the one area that I wanted to talk about briefly
```

Timestamps in left margin:
09:36AM (line 5)
09:36AM (line 10)
09:37AM (line 15)
09:37AM (line 20)
09:38AM (line 25)

09:38AM

1    was the Government's Indictment which actually alleges a quid

2    pro quo.  And it doesn't appear that that necessarily requires

3    under the state statute, but it is contained in the Indictment.

4    So the question is whether the Indictment can narrow the scope

5    of the state statute such that it falls within the federal

6    parameters.  The short answer is I don't think it can do that.

7    I don't think the categorical approach allows for those kind of

8    modifications.

9         The other thing I want to say is I'm concerned at

09:39AM

10   trial the Government does not prove up an official act -- and

11   we have said over and over again that there is no official act

12   in this case.  The Government is relying on the

13   proposition that eventually Mr. Huizar would have done

14   something, put his hands beyond the justice, so to speak, to

09:39AM

15   benefit the L.A. Grand Hotel project.  Not that it happened.

16   In all the other schemes you are hearing about, the Government

17   is alleging something happened.  In this one the Government is

18   saying that something would have happened down the road.

19   There's no firm evidence of an agreement implicit or explicit.

09:39AM

20        So what if this scenario happens, the Government

21   doesn't prove up an official act, and then says to Your Honor,

22   for purposes of the Travel Act counts, we didn't have to prove

23   that up, and then you do have a situation in which the state

24   statute is broader than the federal statute.  There is no quid

09:40AM

25   pro quo requirement under state law.

1    So I don't believe that the Indictment can narrow

2    the -- necessarily narrow the scope of the state statute such

3    that it falls within the parameters of the federal statute.

4    If Your Honor disagrees, then we would ask the

09:40AM  5    Government be held to that, that they alleged a quid pro quo in

6    the Travel Act counts and that they must prove up a quid pro

7    quo in the Travel Act counts, and they can't back out of it at

8    the end of the trial if they simply say, well, we didn't prove

9    up an official act, but we don't need to with respect to the

09:40AM  10   Travel Act counts.  So those are the positions I wanted to

11   advance to the Court.  Thank you.

12   THE COURT:  All right.  The Court makes the

13   following ruling:

14   In order to resolve the defendant's Motion to

09:41AM  15   Dismiss Counts 18 through 21, the Court must determine whether

16   bribery in violation of the California Penal Code Sections 67,

17   67.5, and 68 falls within the meaning of bribery as

18   contemplated by the Travel Act.  Congress did not define the

19   term "bribery" in the Travel Act.

09:41AM  20   As the Supreme Court stated in the *Perrin* case,

21   P-e-r-r-i-n, at 444 U.S. 37 -- and I quote -- "A fundamental

22   canon of statutory construction is that, unless otherwise

23   defined, words will be interpreted as taking their ordinary,

24   contemporary, common meaning.  Therefore, we look to the

09:41AM  25   ordinary meaning of that term bribery at the time congress

(221 of 236) Page 221 of 236 Case: 23-972, 09/18/2023, DktEntry: 12.2, Page 221 of 236
Case 2:20-cr-00326-JFW   Document 346   Filed 01/20/22   Page 60 of 114   Page ID #:8371

60

1    enacted the statute in 1961."  And that's the end of the quote.

2            In other words, and as the parties agree, the

3    Court must apply the categorical approach to determine whether

4    the California state bribery statutes qualify as bribery as

5    that term is used in the Travel Act.  Under the categorical

6    approach, the predicate state bribery statutes are compared to

7    the generic federal definition of bribery at the time the

8    Travel Act was enacted to determine whether they are a

9    categorical match.  If the state statutes are a categorical

10   match, i.e., require the same essential elements or are

11   narrower than the generic federal definition of bribery, they

12   are appropriate predicate offenses for the Travel Act.

13           In determining what the general -- in determining

14   what the generic federal definition of bribery was at the time

15   of the travel -- at the time the Travel Act was enacted in

16   1961, the Court looks at any relevant sources in effect at the

17   time.

18           In 1961 Black's Law Dictionary 4th Edition

19   defined bribery as "the offering, giving, receiving, or

20   soliciting of anything of value to influence actions as an

21   official or in discharge of legal or public duty;

22           "The corrupt tendering or receiving of a price

23   for official action;

24           "The receiving or offering of any undue reward by

25   or to any person concerned in the administration of public

 1    justice or a public officer to influence his behavior in

 2    office"; and,

 3                    "The taking or giving of reward for public

 4    office."

09:43AM  5            The Model Penal Code was not yet published in

 6    1961 but was first published shortly thereafter in 1962 after a

 7    ten-year drafting period.  It defined bribery as "offering,

 8    conferring, or agreeing to confer upon another or soliciting,

 9    accepting, or agreeing to accept from another any pecuniary

09:44AM 10    benefit as consideration for the recipient's decision, opinion,

11    recommendation, vote, or other exercise of discretion as a

12    public servant, party official, or voter, or any benefit as

13    consideration of a known legal duty as a public servant or

14    party official."

09:44AM 15            Defendants contend that the Court should look --

16    should also look to the federal bribery statute which is

17    codified at 18 United States Code Section 201 to determine what

18    congress meant by the term bribery in the Travel Act.  Like the

19    Model Penal Code, the current version of 201 was not enacted

09:44AM 20    until 1962 after the Travel Act.

21            However, from 1948 until the current version of

22    18 United States Code Section 201 was enacted in 1962, there

23    was a predecessor Section 201 statute which provided in

24    relevant part as follows -- and I quote -- "Whoever promises,

09:45AM 25    offers, or gives any money or thing of value or makes or

(223 of 236) Page 223 of 236 Case: 23-972, 09/18/2023, DktEntry: 12.2, Page 223 of 236
Case 2:20-cr-00326-JFW  Document 346  Filed 01/20/22  Page 62 of 114  Page ID #:8373

62

1    tenders any check, order, contract, undertaking, obligation,

2    gratuity, or security for the payment of money or for the

3    delivery or conveyance of anything of value to any officer or

4    employee or person acting for or on behalf of the United States

09:45AM   5    with intent to influence his decision or action in any

6    question, matter, cause, or proceeding which may at any time be

7    pending or which may by law be brought before him in his

8    official capacity or his place of trust or profit or to induce

9    him to do or omit to do any act in violation of his unlawful

09:45AM  10    duty shall be fined not more than three times the amount of

11    such money or value of such thing or imprisoned not more than

12    three years or both."

13              Section 202, in effect from 1948 to 1962, covered

14    the acceptance or solicitation by officer or other person and

09:46AM  15    provided -- and I quote -- "Whoever, being an officer or

16    employee of or person acting for or on behalf of the

17    United States in any official capacity asks, accepts, or

18    receives any money or any check, order, contract, promise,

19    undertaking, obligation, gratuity, or security for the payment

09:46AM  20    of money or for the delivery or conveyance of anything of value

21    with the intent to have his decision or action on any question,

22    matter, cause, or proceeding which may at any time be pending

23    or which may by law be brought before him in his official

24    capacity or his place of trust or profit influenced thereby

09:46AM  25    shall be fined not more than three times the amount of the

1    value of such thing or imprisoned not more than three years or

2    both."  And there is a provision of forfeiture of his office.

3              The current version of Section 201 is very

4    similar.  It defines bribery in relevant part as directly or

09:47AM   5    indirectly corruptly giving, offering, or promising anything of

6    value to any public official with the intent to influence any

7    official act or corruptly demanding, seeking, receiving,

8    accepting, or agreeing to accept anything of value in return

9    for being influenced in the performance of any official act.

09:47AM   10             The term "official act" is defined in Section 201

11    as any decision or action on any question, matter, cause, suit,

12    proceeding, or controversy which may at any time be pending or

13    which may by law be brought before any public official in such

14    official's official capacity or in such official's place of

09:48AM   15    trust or profit.

16             Although the predecessor version of 201 does not

17    use the term "official act," it similarly covered an intent to

18    influence the decision or action on any question, matter,

19    cause, or proceeding which may at any time be pending or which

09:48AM   20    may by law be brought before him in his official capacity or

21    his place of trust or profit.

22             Although the Court agrees with the defendants

23    that Section 201's definition of bribery is at least helpful in

24    determining what the ordinary contemporary common meaning of

09:48AM   25    bribery meant in 1961, the Court declines to adopt the exact or

1    specific elements of bribery as defined in Section 201 and

2    certainly does not incorporate the Supreme Court's

3    interpretation of the elements set forth in *McDonnell versus*

4    *the United States*, a decision that was issued over 50 years

09:49AM    5    after the Travel Act was enacted.

6            In *McDonnell* the Supreme Court interpreted the

7    statutorily defined term "official act" in Section 201, and

8    that interpretation was principally based on the express and

9    specific terms of that statute as well as on accepted canons of

09:49AM    10    statutory construction.  Importantly, it was not based upon the

11    generic or common meaning of bribery.

12            The 9th Circuit's recent decision in

13    *United States versus Chi* which is at 936 F.3d 888 which I

14    indicated I'm very familiar with since I presided over that

09:49AM    15    case is helpful.  In that case the 9th Circuit examined the

16    generic definition of bribery as it existed in 2001 in

17    interpreting a different statute which is the 18 United States

18    Code Section 1956(c)(7)(b) which was enacted in 2001.  The

19    9th Circuit looked to both Black's Law Dictionary and the Model

09:50AM    20    Penal Code as they existed in 2001.

21            The definition of bribery in Black's Law

22    Dictionary in 2001 had a similar definition to the definition

23    in Black's Law Dictionary in 1961.  The Model Penal Code in

24    2001 defined bribery exactly as it had in 1962.

09:50AM    25            After examining Black's Law Dictionary and the

09:50AM

09:51AM

09:51AM

09:51AM

09:52AM

 1   Model Penal Code, the 9th Circuit summarized the common

 2   understanding of the term bribery in 2001 as follows -- and I

 3   quote -- "These sources demonstrate that, based on the common

 4   understanding of the term at the time the statute was enacted,

 5   bribery contained several elements.  First, it required two

 6   parties, one who paid, offered, or conferred the bribe and one

 7   who received, solicited, or agreed to accept it.  Second, it

 8   required something to be given to the bribe-giver, either a

 9   private favor, a pecuniary benefit, or any benefit.  And,

10   third, it required something to be given by the bribe-taker,

11   either official action, the recipient's decision, opinion,

12   recommendation, vote, or other exercise of discretion as a

13   public servant or a violation of a known legal duty as a public

14   servant."

15        Notably the 9th Circuit in *Chi* rejected the

16   defendant's argument that the use of the term bribery of a

17   public official in the statute 1956 was a reference to section

18   201 or that incorporated the elements from that statute.  The

19   9th Circuit rejected that argument because the money laundering

20   statute did not include a specific reference to Section 201

21   while other language within that section included references to

22   other specific federal laws.

23        Moreover, the 9th Circuit noted that, even if a

24   bribery of a public official were interpreted as a reference to

25   a specific federal statute, it's not clear to which statute it

1  would refer.  Section 201 is merely one strand of an intricate

2  web of regulations, both administrative and criminal, governing

3  the acceptance of gifts and other self-enriching actions by

4  public officials.

09:52AM  5           Faced with this web of regulations,

6  Section 1956(c)(7)(B) gives no indication which, if any,

7  federal law should define the meaning of bribery of a public

8  official.  Hence, absent a statutory basis to refer to and

9  adopt the elements of Section 201, the 9th Circuit interpreted

09:52AM  10  bribery of a public official per *Perrin's* instruction in

11  accordance with ordinary, contemporary, common meaning.

12           This Court similarly interprets bribery as used

13  in the Travel Act in accordance with its ordinary contemporary

14  common meaning and not as defined in Section 201.  In 1961,

09:53AM  15  just as in 2001, there was a web of various federal statutes

16  that govern bribery and graft including Section 201 through

17  Section 223.  Congress could have but did not reference any of

18  these sections in defining bribery as it was used in the

19  Travel Act.

09:53AM  20           Moreover, there is even less of a reason to

21  specifically apply 201 as the Travel Act, unlike the money

22  laundering statute at issue in *Chi,* does not simply cover

23  bribery of a public official but rather bribery in all of its

24  forms if it is in violation of the laws in the state in which

09:53AM  25  it is committed or of the United States.

1        Even so, defendants contend that the Court must

2   limit the interpretation of the term "bribery" in the

3   Travel Act based upon the constitutional considerations raised

4   in *McDonnell*.  The Court rejects that argument as the

09:54AM  5   constitutional concerns raised in *McDonnell* arose out of the

6   specific statute at issue Section 201 and, in particular, out

7   of the Government's proposed expansive and limitless

8   interpretation of official act in that case.

9        Moreover, with respect to the federalism concerns

09:54AM  10  raised in *McDonnell* as well as the case *Rewis*, R-e-w-i-s, at

11  401 U.S. 801, the Court finds that those concerns are not

12  applicable here.  As the Court stated in *Perrin* -- and I

13  quote -- "Reliance on federalism principles articulated in

14  *Rewis* to dictate a narrow interpretation of bribery is

09:54AM  15  misplaced.  Our concern there was with the tenuous interstate

16  commerce element.  Looking at congressional intent in that

17  light, we held that congress did not intend that the Travel Act

18  should apply to criminal activity within one state solely

19  because that activity was sometimes patronized by persons from

09:55AM  20  another state.

21        "Here the sufficiency of the interstate nexus is

22  no longer at issue.  Rather, so long as the requisite

23  interstate nexus is present, the Travel Act reflects a clear

24  and deliberate intent on the part of congress to alter the

09:55AM  25  federal-state balance in order to reinforce state law

1    enforcement.  In defining an unlawful activity, congress has

2    clearly stated its intention to include violations of state as

3    well as federal bribery law."  That's the end of the quote.

4            In *United States versus Nader* at 542 F.3d 713,

09:55AM  5    the 9th Circuit likewise concluded that the Travel Act did not

6    offend the principles of federalism stating -- and I quote --

7    "The Travel Act establishes only concurrent federal

8    jurisdiction over what are already state and local crimes.  The

9    federal government cannot usurp state authority via the

09:55AM  10   Travel Act because the state must first decide the conduct at

11   issue is illegal.  The Travel Act also does not render state or

12   local law enforcement agencies any less capable -- any less

13   able to fight crime.  It supplements, not supplants, their

14   capabilities.  While there may be a valid question as to the

09:56AM  15   wisdom of drafting such a broad statute, these are policy

16   issues within the discretion of the other branches, and they

17   raise no federalism concerns."  That's the end of the quote.

18           For the foregoing reasons, absent a statutory

19   basis to refer and adopt the specific elements of Section 201

09:56AM  20   and the Supreme Court's interpretation of those specific

21   elements of *McDonnell,* the Court interprets bribery in

22   accordance with its ordinary, contemporary, common meaning in

23   1961.

24           The Court concludes like the 9th Circuit that

09:56AM  25   there were essentially three elements.  First, it required two

(230 of 236) Page 230 of 236
Case: 23-972, 09/18/2023, DktEntry: 12.2, Page 230 of 236
Case 2:20-cr-00326-JFW  Document 346  Filed 01/20/22  Page 69 of 114  Page ID #:8380

69

1    parties, one who paid, offered, or conferred the bribe and one

2    who received, solicited, or agreed to accept it.  Second, it

3    required something to be given by the bribe-giver, either a

4    private favor, a pecuniary benefit, or any benefit.  And,

09:57AM    5    third, it required something to be given by the bribe-taker,

6    either official action, the recipient's decision, opinion,

7    recommendation, vote, or other exercise of discretion as a

8    public servant or in violation of a known legal duty as a

9    public servant.

09:57AM   10              The Court also concludes that the bribery

11    statutes at issue, California Penal Code Section 67, 67.5, and

12    68 are consistent with the generic definition of bribery as

13    contemplated by the Travel Act.

14              California Penal Code Section 67 makes it

09:57AM   15    unlawful for a person to give or offer any bribe to any

16    executive officer in this state with the intent to influence

17    him with respect to any act, decision, vote, opinion, or other

18    proceedings as such an officer.

19              Penal Code Section 67.5 makes it unlawful for a

09:58AM   20    person to give or offer as a bribe any -- to any ministerial

21    officer, employee, or appointee of the State of California,

22    county or city therein, or any political subdivision anything.

23              Penal Code Section 68 makes it unlawful for an

24    executive or ministerial officer, employee, or appointee of the

09:58AM   25    State of California, county or city therein, or political

```
 1    subdivision thereof to ask, receive, or agree to receive any

 2    bribe upon any agreement or understanding that his or her vote,

 3    opinion, or action upon any matter then pending or that may be

 4    brought before him or her in his official capacity shall be

 5    influenced thereby.

 6              Bribe is defined in each of -- actually, bribe is

 7    defined in Penal Code Section 7 as anything of value or

 8    advantage, present or prospective, or any promise or

 9    undertaking to give any, asked, given, or accepted with corrupt

10    intent to influence unlawfully the person to whom it is given

11    in his or her -- in his or her action, vote, or opinion in any

12    public or official capacity.

13              In essence, as analyzed in the state case -- the

14    last name is G-a-i-o -- at 81 Cal App. 4 at 919, the statutes

15    define bribery as the giving or receipt of something of value

16    with the intent that the recipient be influenced in his or her

17    vote, action, or opinion in an official capacity and in the

18    case of a recipient with respect to any matter then pending or

19    which may be brought before him.

20              The Court agrees with the Government that these

21    three bribery statutes thus include the three essential

22    elements of bribery as identified by the 9th Circuit in *Chi*.

23    Based upon the plain language of the statutes, the statutes

24    require two parties, one who gave or offered the bribe and one

25    who asked, received, or agreed to receive it.  Two, the
```

09:58AM  5
09:59AM  10
09:59AM  15
09:59AM  20
10:00AM  25

**ER-0231**

1    statutes require something to be given by the bribe-giver,

2    anything of value or advantage.  And, three, they required

3    something to be given by the bribe-taker, example -- for

4    example, an action, vote, or opinion in any public or official

10:00AM    5    capacity.

6                In my view, these statutes fall comfortably

7    within the generic definition of bribery as it existed in 1961.

8                Defendants argue that the California statutes are

9    broader than the generic definition of bribery because they do

10:00AM   10    not require identification of a specific official act as the

11    object of the bribe citing the *Gaio* case.  Specifically in that

12    case, the California Court of Appeal concluded that bribery

13    does not require that a specific official action be pending

14    when the bribe is given or that they -- or that there be proof

10:01AM   15    that the bribe was intended to influence any such act.  Rather,

16    it is sufficient that the evidence reflect that there existed

17    subjects of potential action by the recipient and the bribe was

18    given or received with the intent that some action be

19    influenced.

10:01AM   20                In other words, bribery under California law does

21    not require identification of the specific official action, but

22    it still requires that the bribe was given or received with the

23    intent that some official action be influenced.

24                The generic definition of bribery, like the

10:01AM   25    California definition of bribery, does not require the

(233 of 236) Page 233 of 236
Case: 23-972, 09/18/2023, DktEntry: 12.2, Page 233 of 236
Case 2:20-cr-00326-JFW Document 346 Filed 01/20/22 Page 72 of 114 Page ID #:8383

72

1    identification of a specific official act as the object of the

2    bribe.  Defendants base their argument on the Supreme Court

3    decision in the *Sun-Diamond* case at 526 U.S. 398 interpreting

4    the illegal gratuity statute and *McDonnell* interpreting the

10:02AM  5    federal bribery statute Section 201(b).

6            The Supreme Court's interpretations, however,

7    depended upon the specific statutory language at issue and not

8    on the generic definition of bribery, and thus the Court finds

9    them not applicable.

10:02AM  10           Accordingly, the Court concludes that California

11   Penal Code Section 67, 67.5, and 68 may serve as predicate

12   offenses for the violation of the Travel Act and denies that

13   portion of the Motion to Dismiss.

14           In the alternative, defendants argue that

10:02AM  15   Counts 18 through 21 should be dismissed because the

16   Government, through its allegations in those counts, required

17   itself to prove a quid pro quo, an official act, and a linkage

18   between them even if the California bribery statutes do not

19   require those elements.

10:03AM  20           As a result, they argue that the Court should

21   dismiss these counts because the four Travel Act counts fail to

22   identify a specific official action that Mr. Huizar allegedly

23   performed or agreed to perform in exchange for the alleged

24   benefits.

10:03AM  25           In Counts 18 through 21 of the First Superseding

1    Indictment, the Government alleges that defendants Huizar and

2    Shen Zhen committed the identified acts in exchange for

3    Defendant Huizar agreeing to perform official acts to benefit

4    the L.A. Grand Hotel project.

10:03AM    5        Accordingly, the defendants argue at page 42

6    that, by its own language, the Travel Act counts contain a quid

7    pro quo and an official act as elements of the charge and a

8    linkage between the two.  The Court does not believe that the

9    allegations of the First Superseding Indictment are

10:04AM   10   inconsistent with the elements of the California bribery

11   statute or somehow raise the Government's burden with respect

12   to those counts.

13       In any event, contrary to defendants' arguments,

14   the Court concludes that the allegations within the Travel Act

10:04AM   15   counts as well as the 15-page section labeled "L.A. Grand Hotel

16   Bribery Scheme" which identifies 84 acts -- overt acts in

17   furtherance of that scheme adequately inform defendant of the

18   specific official acts alleged including those alleged in

19   connection with the Travel Act counts such that the defendants

10:04AM   20   are able to prepare their defense, defendants are prosecuted on

21   the basis of facts presented to the grand jury, defendants are

22   able to plead jeopardy against later prosecution, and the Court

23   is informed of the facts alleged so it can determine the

24   sufficiency of the charges.

10:05AM   25       So that -- to the extent -- to that extent, the

1    motion is also denied.

2              There is also a motion with respect to Count 24.

3    Defendant Huizar argues that the Court should strike the

4    language -- and I quote -- "pressuring Labor Organization A to

10:05AM    5    dismiss its appeal against the 940 Hill project because of an

6    act exerting pressure on a labor union is not capable of

7    serving as a predicate for a 66(a)(1)(B) conviction."

8              The Court incorporates its order denying 940 Hill

9    and leaves motion to strike language from Count 25 and denies

10:05AM   10    that portion of the motion.

11              The next issue or group of issues relate to the

12    miscellaneous constitutional issues that have been raised by

13    the defense.

14              Mr. Snyder, I assume this is your area, but quite

10:06AM   15    frankly, I don't need any argument on this -- on these.  If you

16    have something you wish to add, I will hear briefly from you.

17              MS. ALE:  Actually, Your Honor, I was going to

18    cover this section.  I will submit on the papers --

19              THE COURT:  You have to get closer to the

10:06AM   20    microphone because you are not being clear.

21              MS. ALE:  Yes, Your Honor.  Is this better?

22              Your Honor, I will submit on the papers.  I only

23    have one brief reply to the Court's denial of the 940 Hill

24    Motion to Dismiss Section 666 which is that the Court adopted

10:06AM   25    the 2nd Circuit's reasoning in --

**ER-0235**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 18, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 18, 2023                     */s/Yaakov M. Roth*
                                             Yaakov Roth