No. 23-972

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

### UNITED STATES OF AMERICA,

*Appellee,*

v.

### SHEN ZHEN NEW WORLD I, LLC,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the Central District of California
20-CR-326 (Hon. John F. Walter)

_____

### APPELLANT'S REPLY BRIEF
_____

Richard M. Steingard
LAW OFFICES OF
RICHARD M. STEINGARD
724 Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 260-9449
rsteingard@steingardlaw.com

Yaakov M. Roth
Harry S. Graver
Alexis Zhang
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone: (202) 879-3939
yroth@jonesday.com

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

I.    THE GOVERNMENT PROVED MANY GIFTS, BUT NO EXCHANGE. .................... 2

    A.    The Essence of Bribery Is an Exchange for Official Action. .................. 3

    B.    The Government Never Proved an Intended Exchange. ......................... 3

    C.    At Minimum, the Jury Instructions Were Inadequate. ............................ 9

II.    CALIFORNIA'S LOOSE BRIBERY LAWS CANNOT SERVE AS PREDICATES UNDER THE TRAVEL ACT. ....................................................................... 11

    A.    The Categorical Approach Applies. ....................................................... 11

    B.    California Law Exceeds the Bounds of "Generic" Bribery in 1961. ..... 14

III.    EVIDENTIARY ERRORS DAMNED SZNW WITH GUILT BY ASSOCIATION, AND PREVENTED ITS GOOD-FAITH REBUTTAL. ................................................... 17

    A.    The Evidence of Huizar's Unrelated Corruption Schemes Unfairly Colored the Case Against SZNW............................................................ 18

    B.    The Court Wrongly Excluded the Most Powerful Direct Evidence of the Chairman's Good Faith................................................................. 20

    C.    The Evidentiary Errors Were Not Harmless.......................................... 24

CONCLUSION ................................................................................................. 24

CERTIFICATE OF COMPLIANCE ..................................................................... 25

CERTIFICATE OF SERVICE .............................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

**Page**

<span style="font-variant: small-caps">Cases</span>

*Citizens United v. FEC,*
558 U.S. 310 (2010) ........................................................ 6

*FEC v. Cruz,*
596 U.S. 289 (2022) ........................................................ 4

*Garett v. McCotter,*
807 F.2d 482 (5th Cir. 1987) ......................................... 16

*Kennedy v. Lockyer,*
379 F.3d 1041 (9th Cir. 2004) ....................................... 24

*Mathis v. United States,*
579 U.S. 500 (2016) ................................................. 13, 14

*Norwood v. Vance,*
591 F.3d 1062 (9th Cir. 2010) ....................................... 11

*People v. Gaio,*
81 Cal. App. 4th 919 (2000) ..................................... 14, 16

*Perrin v. United States,*
444 U.S. 37 (1979) .............................................. 12, 16, 17

*State v. Ferraro,*
67 Ariz. 397 (1948) ....................................................... 15

*Taylor v. United States,*
495 U.S. 575 (1990) ................................................. 12, 13

*United States v. Abdelaziz,*
68 F.4th 1 (1st Cir. 2023) ............................................. 19

*United States v. Biaggi,*
674 F. Supp. 86 (E.D.N.Y. 1987) .................................. 17

*United States v. Boone,*
 628 F.3d 927 (7th Cir. 2010) ........................................ 19

*United States v. Brown,*
 880 F.2d 1012 (9th Cir. 1989) ...................................... 20

*United States v. Brown,*
 925 F.3d 1150 (9th Cir. 2019) ........................................ 8

*United States v. Charley,*
 1 F.4th 637 (9th Cir. 2021) ............................... 19, 20, 24

*United States v. Chi,*
 936 F.3d 888 (9th Cir. 2019) ...................................*passim*

*United States v. Clark,*
 31 F.3d 831 (9th Cir. 1994) .......................................... 5

*United States v. Davis,*
 803 F. App'x 80 (9th Cir. 2020) (*per curiam*) ................. 19

*United States v. Fernandez,*
 839 F.2d 639 (9th Cir. 1988) (*per curiam*) .................... 22

*United States v. Ferriero,*
 866 F.3d 107 (3d Cir. 2017) ........................................ 13

*United States v. Fontenot,*
 14 F.3d 1364 (9th Cir. 1994) ...................................... 23

*United States v. Galvez-Guerrero,*
 455 F. Appx. 749 (9th Cir. 2011) ................................. 10

*United States v. Holiday,*
 998 F.3d 888 (9th Cir. 2021) ...................................... 20

*United States v. Lopez,*
 4 F.4th 706 (9th Cir. 2021) ........................................ 23

*United States v. Lovern,*
 590 F.3d 1095 (10th Cir. 2009) ................................................................. 8

*United States v. McDonnell,*
 579 U.S. 550 (2016) ....................................................................... 4, 7, 17

*United States v. Mitchell,*
 502 F.3d 931 (9th Cir. 2007) ............................................................... 22

*United States v. Nardello,*
 393 U.S. 286 (1969) ........................................................................... 12

*United States v. Quinones-Chavez,*
 641 F. App'x 722 (9th Cir. 2016) ......................................................... 23

*United States v. Sawyer,*
 85 F.3d 713 (1st Cir. 1996) ................................................................. 10

*United States v. Silver,*
 948 F.3d 538 (2d Cir. 2020) .................................................................. 7

*United States v. Smith,*
 725 F.3d 340 (3d Cir. 2013) ................................................................. 20

*United States v. Sun-Diamond Growers of Cal.,*
 526 U.S. 398 (1999) ....................................................................... 4, 6, 15

*United States v. Vizcarra-Martinez,*
 66 F.3d 1006 (9th Cir. 1995) ............................................................... 24

*Wagner v. Cnty. of Maricopa,*
 747 F.3d 1048 (9th Cir. 2013) ......................................................... 22, 23

## STATUTES

18 U.S.C. § 201 .......................................................................... 15, 16, 17

18 U.S.C. § 1957 ............................................................................... 12

## OTHER AUTHORITIES

Albert W. Alschuler, *Criminal Corruption: Why Broad Definitions of Bribery Make Things Worse*, 84 FORDHAM L. REV. 463 (2015) ...................................14, 15, 16

Black's Law Dictionary (4th ed. 1951) ............................................................... 16

Fed. R. Evid. 106 ..................................................................................................... 23

Fed. R. Evid. 404 .............................................................................................19, 20

Fed. R. Evid. 801 ..................................................................................................... 21

Fed. R. Evid. 803 .............................................................................................22, 23

Model Penal Code § 240.1(1) ................................................................................ 16

C. Robertson *et al.*, *The Appearance and Reality of Quid Pro Quo Corruption: An Empirical Investigation*, 8 J. LEGAL ANAL. 375 (2016) ............................................. 10

## INTRODUCTION

Federal bribery law recognizes a fundamental distinction between *buttering up* and *buying off*. The latter is a crime. The former is everyday politics—sometimes regulated by ethics codes, but different in kind from *quid pro quo* bribery. The Government accepts that established legal dichotomy. But the core problem with its case against SZNW is that it never proved Wei Huang (aka, "the Chairman") crossed the line from persistent ingratiation to corrupt bargain. The Government emphasizes that Huang treated Councilman Huizar to gifts, travel, and more, and did so because of Huizar's powerful position in relation to real-estate developments. That alone, however, is not bribery, without evidence of an *exchange*. Yet even the Government continues to characterize Huang's gifts as an "investment," "priming" Huizar so he would be receptive to a future "big ask." That is textbook ingratiation. The evidence was thus insufficient; at minimum, a new trial is required given the court's failure to instruct the jury on how to distinguish *ingratiation-for-influence* from *bribery-for-official-action*. Contra the Government, that was the key issue in this case, and the court's instructions never touched on it.

The Travel Act counts fail regardless. Even if the Government proved a *quid pro quo*, it is undisputed that California's bribery statutes did not require one. Those state laws thus exceed "generic" bribery and are invalid Travel Act predicates. Abandoning its position below, the Government now tries to run from the "categorical approach," but precedent from this Court and the Supreme Court leave no escape.

1

Finally, serious evidentiary errors warrant a new trial.  With no proof of corrupt intent on the Chairman's part, the Government tarred him with misconduct of *others*—leading its star witness's testimony with "context" on how Huizar operated flagrant pay-to-play schemes with *others*.  SZNW thus started off with the jury presuming it engaged in corruption with Huizar, since everyone else did.  The court then blocked SZNW's best evidence to rebut that taint, excluding Huang's contemporaneous reaction when his colleagues expressed concerns about the gifts.  All this was error.  The evidence of distinct schemes was irrelevant and inadmissible, whereas Huang's exculpatory remarks were proper and probative evidence of his good-faith intent.  In arguing otherwise, the Government misrepresents both the record and the Rules of Evidence, repeatedly resting on nothing more than conclusory pronouncements.

## ARGUMENT

## I.  THE GOVERNMENT PROVED MANY GIFTS, BUT NO EXCHANGE.

The Government accepts that the *sine qua non* of bribery is an exchange.  But its own account of events reveals the absence of this critical element.  On its telling, the Chairman's gifts were part of an "investment," to get Councilman Huizar "sufficiently primed" before making his desires "known."  Govt.35-36.  But one cannot enter an *agreement* with a partner who is kept in the dark.  And plying someone with gifts so they may be amenable to something *later* is not an "exchange."  It is, by definition, ingratiation.  And while ingratiation may be icky, it is not bribery.

2

### A.    The Essence of Bribery Is an Exchange for Official Action.

The Government agrees with SZNW on the law: Bribery is an *exchange* for official action.  A person commits bribery if he gives an official something of value with "intent to enter a *quid pro quo*" on a "specific and focused matter."  Govt.30, 34; *see also* Govt.30 (bribery is "specific intent to give something of value in exchange for an official act").  Of course, no *actual* agreement is necessary—as SZNW made clear (Br.29).  What is required is an intent to effectuate an exchange, rather than merely the intent to grease the wheels for the possibility of future favors.

Notably, the Government agrees this standard governs all three counts.  Govt.34 & n.4.  The only questions are whether the evidence proved it (*infra*, Part I.B), and whether the jury instructions properly conveyed it (*infra*, Part I.C).

### B.    The Government Never Proved an Intended Exchange.

Although the Government maintains that it proved a *quid pro quo*, its own account of the facts—its very theory of the case—is definitional ingratiation.  It repeats its trial theme, that Huang saw his gifts to Huizar as part of an "investment" (Govt.35)—maybe they will pay off, maybe not.  It admits his largesse was not part of a contemporaneous exchange, but instead intended to "pave the way" for a *later* "big ask."  Govt.5, 36.  And it accepts the Chairman "held off on *revealing* to Huizar" any specific ask, even as he showered him with benefits.  Govt.36.  Instead, Huang only made his "objects known" "*after*" Huizar was "sufficiently primed," when he would hopefully be more likely to accede.  Govt.36-37 (emphasis added).

3

This Court need only take the Government at its word to order acquittal. There is a fundamental difference between *priming* an official for a later ask, and *purchasing* an official act. The former is ingratiation: giving gifts to officials due to their "tenure in office"—*i.e.*, because of what they can *do* in office. *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 405 (1999). Bribery requires intent to enter an *agreement*, "at the time," to trade gifts for official acts on a specific matter. *United States v. McDonnell*, 579 U.S. 550, 572 (2016). On the Government's own story, that did not happen. In bribes as in ballrooms, it takes two; it is incoherent to suggest (Govt.36) that Huang intended to effectuate a corrupt bargain while keeping the existence of any exchange a secret. Huang may well have had the L.A. Grand in mind when he invited Huizar to Vegas or bailed him out of a scandal; he may even have "expected to get something in exchange," in the sense of dividends from the ingratiation. Govt.38. But that still is not bribery.

Indeed, the Government's two-step—where (1) the Chairman would "give, give, give," as part of an "investment" in a "relationship," and (2) later make an ask after the politician was "sufficiently primed" (Govt.35-36)—essentially defines modern lobbying. Nobody on K Street ingratiates for its own sake; there is always a later ask in mind. It is only bribery, however, when the ingratiator *collapses* the two steps, making the gift half of an *exchange* for an official act. *See FEC v. Cruz*, 596 U.S. 289, 309 (2022).

And that is why none of the Government's cited evidence moves the needle. None of it differentiates (lawful) ingratiation from (illicit) bribery. None of it shows the Chairman intended to trade his gifts for Huizar's official acts, as opposed to merely

4

buttering up Huizar to make it more likely he would accede to a future "big ask." This evidence is thus all inconclusive. And when evidence "is equally consistent with both legal or illegal activity," it is "not sufficient" even "to establish probable cause," *United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994), much less to convict.

Consider each category of evidence the Government cites (Govt.35-42):

*Huang's Statements and Actions.* At trial, the prosecution put forward a case where Chairman Huang gave, gave, gave in the lead up to a "big ask" that *never came.* That is why at closing, the Government needed to frame the "big ask" like this:

> There didn't have to be a big ask. Their entire relationship was the big ask. It was founded on the premise that Jose Huizar had the power to do something that Chairman Huang wanted, and Chairman Huang was willing to pay for it.

11-ER-2590.

Perhaps aware of how little that sounds like a bribe, the Government now pivots. It starts by asserting that "Huang made no secret about the reason for [his] payments" and *did* in fact make a "big ask" to Huizar in exchange for them. Govt.2. But that claim does not survive the Government's own fact section, to say nothing of the record.

For starters, on the Government's own telling, Huang *did* make a "secret" of the reasons behind his gifts. It says the Chairman did not reveal to Huizar the intent behind his gifts until at least 2016 (Govt.36), well after most of the trips to Las Vegas, the sexual harassment settlement loan, and more (Govt.18). That is inconsistent with bribery— which, again, requires an intended exchange *at the time* of the gift. Br.21.

5

Even later, there is no evidence—none—that Huang's other gifts to Huizar were contingent on his support for the (universally popular) L.A. Grand. Govt.20. The Government cannot point to one time where Huang even asked Huizar to take a single official act. It *asserts* Huang made "requests for official acts." Govt.37. But it cites nothing; nor could it. As even the prosecution accepted below, there was *not one instance* of Huang making such an ask to Huizar over their half-decade relationship. Br.24-25 (listing cites). Instead, Huang only asked Huizar to set up meetings and do other things that—as the Government itself concedes—were "not official acts." Govt.12-13, 40.

The Government thus hangs its hat on the fact that *after* ingratiating himself, Huang asked Huizar to support a redevelopment. Govt.37; *see also* Br.11. Once again, that is not bribery. As the Government's record cites confirm, never did the Chairman suggest his gifts were *in exchange* for Huizar's vote or that future gifts would be *contingent* on it. He simply asked Huizar for "support," since the L.A. Grand was his "dream" and would make him "very happy." 9-ER-1114-15; 8-ER-1817. If that is bribery, a lot of donors need to call a lawyer. *Cf. Sun-Diamond*, 526 U.S. at 405.

***Huizar's Conduct.*** The Government also dedicates pages to what Huizar *could* have done for SZNW using his office. Govt.7-10. But conspicuously absent is a single example of Huizar *actually doing* any of those things—because he never did.

As above, the Government tries to conjure smoke where there is no fire. It notes sternly that Huizar gave Huang "access" to his office, always willing to take a meeting. Govt.39-40. But such access is precisely what gifts are allowed to garner. *Citizens United*

*v. FEC*, 558 U.S. 310, 360 (2010). And there is not one instance of the Chairman asking for even such concededly unofficial acts in *exchange* for a benefit. The Government tellingly feels a need to claim otherwise. *E.g.*, Govt.13 (claiming Huizar acted "because" of bribes). But as above, the Government's own cites reveal its overstatements. *See* 5-ER-1005-06 (listing actions Huizar *could* take in office); 6-ER-1380 (Huang thought of Huizar as "investment").

The only official action the Government claims Huizar ever took in relation to the Chairman was a non-binding resolution praising him, as part of a package of similar resolutions, "recognizing and honoring" groups like "renters and landlords" and the "Motorcycle Safety Organization." 2-ER-330. But it is frankly absurd to try to rest a criminal bribery conviction on that nothingburger. A resolution expressing praise is *not* an "official act," since it is not a "formal exercise of governmental power," but merely an "express[ion] [of] support." *McDonnell*, 579 U.S. at 573-74; *see* Br.24 n.2. Regardless, there is "no evidence" Huang intended any gifts to be in *exchange* for this empty gesture. *United States v. Silver*, 948 F.3d 538, 570 (2d Cir. 2020) (rejecting similar attempt to save conviction based on ceremonial resolution). Indeed, on the Government's own telling, Huizar did this of his *own accord*—as he regularly did to show off for "friends of the office." Govt.16; 6-ER-1242. There was never evidence Huang even *knew about* such resolutions, let alone tried to purchase one. The resolution was clearly Huizar's attempt to bolster himself with Huang, not a bribery agreement.

*Concealment and Flight.* With no real evidence of the central element of the offense, the Government resorts to sideshows: Huizar's concealment of his conduct, and Huang's return to China. Govt.40-42. Neither can prop up the main event.

As to concealment, Huang did not even know about Huizar's money-laundering (Br.42), and was generally happy to have their relationship in the open (*see, e.g.*, 6-ER-1267). He obliged *Huizar's* requests to keep a low profile—requests any politician would make given the optics, even absent any legal misgivings.

Moreover, even if *Huizar's* concealment were relevant evidence of *Huang's* intent, the former shows at most that Huizar saw *some* reason to stay under the radar—a lavish relationship with a Chinese national was politically toxic, in violation of ethics rules, or perhaps a campaign-finance faux-pas. Evidence that a defendant "knew *something* was amiss" or even against the "law" is not a panacea, however; to sustain a conviction, the evidence must support an inference that he "specifically" committed the *particular* offense. *United States v. Lovern*, 590 F.3d 1095, 1106-07 (10th Cir. 2009) (Gorsuch, J.). The Government's concealment evidence does not do so.

As for Huang's flight, that alone is not indicative of wrongdoing. *Cf. United States v. Brown*, 925 F.3d 1150, 1155-57 (9th Cir. 2019) (flight not enough even for reasonable suspicion). That a foreign national went home rather than face a new country's system of justice is unremarkable. It certainly cannot prove the missing piece of this *bribery* case—that Huang thought he was part of a corrupt exchange years earlier.

8

## C.    At Minimum, the Jury Instructions Were Inadequate.

If nothing else, the above reinforces that the line between ingratiation and bribery can be hard to locate.  Even as the Government agrees with SZNW on the law, it cannot help but slip into looser formulations that would cover, *e.g.*, a lobbyist who takes the Armed Services Committee staff director out for fancy dinners, hoping the resulting rapport will "influence" a favorable earmark in a year-end appropriation bill.  Govt.34.

The slippery nature of this critical dichotomy required jury instructions that left no risk of the jury sliding into felony convictions and clarified beyond any doubt that it is *not* sufficient to give benefits in hopes of merely "influencing" later action.  SZNW offered an instruction that expressly explained when ingratiation crossed into bribery, but the district court rejected it—and gave the jury no alternative.  ECF-754, at 85-86; 11-ER-2379; ECF-812, at 20-29.  The Government defends the district court's failure on three grounds, but none has merit.

Most bizarrely, the Government suggests there "was no foundation" to instruct on ingratiation since SNZW "did not pursue that defense at trial."  Govt.52.  It is not clear what trial the prosecutors attended.  As hammered at closing, ingratiation was the heart of the defense: Huang lavished Huizar so he would be "treated like a VIP"—*i.e.*, he "cultivated a friendship with Huizar" so that his calls got "answered."  11-ER-2252-53.  It might not be "fair" that "[p]olitical contributors get access," but nor is it "corrupt."  11-ER-2253-54.  It is lawful ingratiation—but the jury had no way to know it.

The Government also claims SZNW's proposal was "duplicative" because the instructions "correctly reflected" the law by requiring an "exchange." Govt.49-51. But the meaning of "exchange"—and how it differs from ingratiation—was the key to the case: The *quids* were conceded; the theoretical *quos* were not in doubt; the only question was the relationship between them. Nor is this an area where "jurors, based only on their lay experiences," would know how the Supreme Court has drawn the line. *United States v. Galvez-Guerrero*, 455 F. Appx. 749, 751 (9th Cir. 2011); *see also* C. Robertson *et al.*, *The Appearance and Reality of Quid Pro Quo Corruption: An Empirical Investigation*, 8 J. LEGAL ANAL. 375 (2016) (documenting how laypeople often brand ingratiation as "bribery"). Where the "line between the merely unattractive and actually criminal conduct is blurred, the court must take pains to explain the difference to the jury" between "cultivation" of a "political friendship" and "bribery." *United States v. Sawyer*, 85 F.3d 713, 741 (1st Cir. 1996). Here, *nothing* in the instructions did so. Worse, they at times suggested that simply intending to "influence" a given act sufficed (Br.28); the jury thus could easily have believed it had to convict if the Chairman gave gifts intending to secure "influence" over the L.A. Grand project through lawful ingratiation.

Last, the Government says SZNW's proposal contained errors. Govt.44-49. Its primary example, however, is a brazen mischaracterization. The proposal did *not* require an "actual agreement or exchange." It said bribery requires that the person giving the benefit "*specifically intend* to give it in exchange for an official act." 1-ER-171 (emphasis added); *see also* 1-ER-172 (same). The Government *agrees* that is the law. Govt.30.

Regardless, SNZW brought to the court's attention the need to instruct on the bribery-versus-ingratiation line, and even if "the proposed instruction was misleading," that "does not alone permit the district judge to summarily refuse to give any instruction on the topic." *Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2010). The court's failure to say *anything* on this defining issue renders the verdicts fundamentally unreliable, and warrants a new trial even if this Court believes the evidence was legally sufficient.

## II. CALIFORNIA'S LOOSE BRIBERY LAWS CANNOT SERVE AS PREDICATES UNDER THE TRAVEL ACT.

Even if all the other convictions could stand, the Travel Act counts are legally infirm because they rest on state-law predicates that are categorically inadequate. Below, the Government admitted "[t]he categorical approach applies to determining whether [California's bribery laws] may serve as predicates" for the Travel Act. ECF-259, at 29 (citing *United States v. Chi*, 936 F.3d 888, 894 (9th Cir. 2019)). But, to avoid *that* question on appeal, the Government flip-flops on the premise, and shunts its main argument below to the back of its brief. That tack is revealing, but unavailing. New and old, the Government's Travel Act arguments fail.

### A. The Categorical Approach Applies.

Everyone agreed below that the Travel Act follows the categorical approach. *See, e.g.*, 13-ER-2978. In now arguing the opposite (Govt.54-57), the Government never acknowledges its about-face. Regardless, the Government was right the first time under this Court's decision in *Chi*, which followed Supreme Court precedent.

*Chi* involved a statute with a materially identical structure: It outlawed "offense[s] against a foreign nation," defined to include a list of crimes under foreign law (including bribery). 18 U.S.C. § 1957. This Court adopted the categorical approach to determine what constitutes "bribery" under § 1957. 936 F.3d at 895-96. It did so, moreover, based on how the Supreme Court has construed *the Travel Act*. *Id.* at 896.

Relying on a district court case predating *Chi*, the Government now insists *Chi* involved a "different provision," and Supreme Court precedent actually *supports* a non-categorical approach. Govt.55. Both claims are squarely at odds with *Chi*; there, this Court reasoned that the statutes were similar, and that the Supreme Court's Travel Act cases demanded a categorical approach for § 1957 too. And even without *Chi*, the Supreme Court precedent is controlling. Twice, the Court held that a state law may only serve as a Travel Act predicate if it outlaws the "generic" offense. *Perrin v. United States*, 444 U.S. 37, 49 (1979); *United States v. Nardello*, 393 U.S. 286, 296 (1969).

True, the Court mentioned the defendants' conduct in those cases—but only in analyzing whether the *statutes* proscribing that conduct amounted to "generic" offenses such that they could serve as Travel Act predicates. *See Perrin*, 444 U.S. at 39-40; *Nardello*, 393 U.S. at 293-95. Neither time did the Court suggest that what mattered is whether the *conduct itself* constituted the "generic" offense. And if there were any doubt, it was dispelled by the canonical categorical-approach case, *Taylor v. United States*, 495 U.S. 575 (1990). *Taylor* cited both *Perrin* and *Nardello* as examples of the categorical approach in action (even if the doctrine only got that name years later). *Id.* at 595-96.

As a fallback, the Government says that even if the categorical approach applies normally, here it took on a higher burden to prove conduct beyond what California law proscribes, so the Court should ask only whether that conduct counts as generic bribery. Govt.56. But that is not how the categorical approach works. Courts applying it never compare the defendant's *actual conduct* against the generic definition; rather, "whether a state-law violation qualifies as a federal predicate depends on whether the *state offense* falls within that crime's generic definition." *United States v. Ferriero*, 866 F.3d 107, 115 (3d Cir. 2017) (emphasis added). The Government cannot use the jury instructions to augment state laws (Govt.56), such that they are transformed into valid predicates in some cases but not in others. *Taylor*, 495 U.S. at 601.

To be sure, if a statute has "multiple alternative elements"—so that it establishes multiple variations of an offense—then a court may look to the defendant's conduct to "determine *what crime*, with *what elements*, a defendant was convicted of." *Mathis v. United States*, 579 U.S. 500, 505-06 (2016) (emphasis added). But the point of this exercise—often called the "modified" categorical approach—remains to "compare *that crime* … with the relevant generic offense." *Id.* at 506 (emphasis added). "It is not to be repurposed as a technique for discovering whether a defendant's [conduct] … could have satisfied the elements of a generic offense." *Id.* at 513-14. As *Mathis* makes clear, how a defendant "perpetrated the crime" thus never makes a "difference"; all that matters is how the offense elements measure against the "generic offense." *Id.* at 509.

The upshot is that the "facts" found by the jury are "irrelevant" to the predicate analysis. *Mathis*, 579 U.S. at 513. As the Government admitted below, all that matters is how the *elements* of California's "bribery statutes" measure up to the "generic federal definition of bribery," as of 1961. ECF-259, at 29. If broader, those statutes cannot "serve as predicates" under any factual circumstances. *Id.*

## B. California Law Exceeds the Bounds of "Generic" Bribery in 1961.

The Government tries to avoid the categorical approach for a reason: California's loose bribery laws are far broader than the generic definition of bribery in 1961, and thus cannot serve as Travel Act predicates as a matter of law.

Not even the Government defends the district court's contrary reasoning. The court held that California's bribery laws fell within the generic definition of bribery as stated in *Chi*. But *Chi* held—and the Government there agreed—that an "exchange" is the essence of bribery. 936 F.3d at 898; U.S. Br. at *31-32, *Chi*, 936 F.3d 888 (No. 17-50358), 2018 WL 3018747. And the Government concedes the California statutes *do not* require an exchange. Govt.59; *People v. Gaio*, 81 Cal. App. 4th 919, 928-29 & n.8 (2000). So if *Chi* controls, the Travel Act convictions fall.

The Government instead argues that California's bribery statutes fall within the generic definition of bribery because they outlaw giving things of value with "intent to influence" an official's work—and nothing more is needed. Govt.59-60. That conflates two notions of bribery. There is a fundamental distinction between a bribery offense premised on *intent to influence*, and one premised on *intent to exchange*. Albert W. Alschuler,

14

*Criminal Corruption: Why Broad Definitions of Bribery Make Things Worse*, 84 FORDHAM L. REV. 463, 466-76 (2015). The former requires only that a *quid* be given with an intent to taint the decisionmaking process by introducing an improper consideration; the latter demands more, in that the *quid* is intended as part of an illegal contract. *See id.* at 474 ("'Intent to influence' and 'exchange' are not different words for the same thing.").

The question for Travel Act purposes is thus *which* of these two conceptions of bribery was the conventional one when the statute was passed. And every source points the same way—in 1961 as in 2024 (as in 2001, the year the statute in *Chi* was enacted), the essence of bribery was an intended exchange for action.

*States.* The Government emphasizes many state laws used "intent to influence" language akin to California's at the time of the Travel Act's passage. Govt.60-61. What the Government ignores is that even where bribery laws use such language, many courts read those laws to still require a corrupt *bargain*. Indeed, at the time of the Travel Act, most state courts did. Br.37 n.4 (collecting cases); *e.g.*, *State v. Ferraro*, 67 Ariz. 397, 399, 401 (1948) (explaining that "essential element" of bribe is "agreement," even though statutory text proscribed corrupt "influence"); *see also Sun-Diamond*, 526 U.S. at 404-05 (construing § 201 to require "*quid pro quo*" even though its terms proscribe all corrupt giving with intent "to influence" official action).

*MPC.* The Model Penal Code confirmed in 1962 that the "more conventional formula" across state bribery laws was to require an intended "agreement by the donee," rather than a "situation[] where gifts are given in the mere hope of influence." Model

Penal Code § 240.1(1), note on status of section (Am. L. Inst., Proposed Official Draft 1962). Indeed, it adopted specific text to confirm that a bribe must be "'in consideration' of the official action or agreement therefor," *id.*, and many states soon followed suit, *see* Alschuler, *supra*, at 473; *see also, e.g.*, *Garett v. McCotter*, 807 F.2d 482, 485 (5th Cir. 1987) (explaining how Texas amended its bribery statute accordingly). The Government agrees the MPC's definition is important; it just states (without more) that California's bribery statues are "consistent" with it. Govt.59-60. But that is wrong. A bribe paid in "consideration" for something is a bribe made as part of an *exchange*; the language of contract is intentional. California requires less. *Gaio*, 81 Cal. App. 4th at 928-29 & n.8.

*Treatises/Dictionaries.* The lion's share of dictionaries at the time defined "bribery" as requiring an exchange for official action. Br.37. The Government has no response—it does not acknowledge any of the treatises SZNW assembled. Instead, it points out that Black's Law Dictionary defined bribery to mean the giving of "anything of value to influence" official action. Govt.59. But it omits that Black's *also included* narrower formulations, tracking the notion that bribery requires some corrupt bargain. Black's Law Dictionary 239 (4th ed. 1951) ("The corrupt tendering or receiving of a price for official action."). And that narrower concept was the "generic" one.

*Section 201.* The Government also dismisses the relevance of 18 U.S.C. § 201. Govt.62. Of course, the Travel Act did not incorporate its every jot-and-tittle—after all, generic bribery extended *beyond* public officials. *Perrin*, 444 U.S. at 49. The point is that, unlike the statute in *Chi*, the same Congress considered and passed both the Travel

16

Act and § 201, and thought the latter to be codifying generic bribery as it "currently existed." *United States v. Biaggi*, 674 F. Supp. 86, 88-89 (E.D.N.Y. 1987). That informs what Congress had in mind when it enumerated "bribery" as a Travel Act predicate.[1]

*Precedent.* The Government last suggests California's bribery laws comport with the "broad construction of bribery" laid out in *Perrin*. Govt.58. But *Perrin* never provided a generic definition of bribery. It simply held that "bribery" in the Travel Act should be given its "ordinary, contemporary, common meaning" as of 1961. 444 U.S. at 42-43. Per the authorities above, the essence of that meaning was an exchange.

Then as now, generic bribery requires an intended *exchange* for official action. Because California's statutes require less, they cannot serve as Travel Act predicates.

## III. EVIDENTIARY ERRORS DAMNED SZNW WITH GUILT BY ASSOCIATION, AND PREVENTED ITS GOOD-FAITH REBUTTAL.

If nothing else, SZNW is entitled to a new trial, because the district court let the prosecutors frame their case around Huizar's unrelated corruption and then excluded the most exculpatory evidence as to the Chairman's intent. The Government maintains that nothing tainted SZNW's trial, but at each turn, it offers only cursory declarations— not meaningful defenses of the lower court's errors.

---

[1] The same logic underscores that generic bribery *also* required an exchange for an "official act." The Government does not dispute that the majority of state laws at the time required "official action." *Biaggi*, 674 F. Supp. at 86. And it makes no sense to think Congress thought *this* "official act" requirement was any different from the "official act" requirement in § 201. Rather, as in § 201, generic bribery did not reach everything an official does. *McDonnell*, 579 U.S. at 573-74 (interpreting § 201's meaning in 1961). But California's broad bribery statutes do.

### A. The Evidence of Huizar's Unrelated Corruption Schemes Unfairly Colored the Case Against SZNW.

The case against SZNW had a vulnerability—at least a factual weakness, if not a legal defect: There was no concrete evidence Huang and Huizar had entered a corrupt exchange. To cover that flank, prosecutors used evidence that Huizar was manifestly corrupt. They opened with it; closed with it; made it a theme. Huizar's corrupt practices let the Government transform Huang's "investment" into a purchase. Esparza's testimony about Huizar's other schemes may have consumed only "seven minutes" at the trial's start. Govt.70-71. But as anyone who has seen the *Wizard of Oz* or *Sixth Sense* would know, opening moments often define the story. And Esparza "referenc[ed] back" to it throughout. Govt.65. The Government thus used Huizar's corruption to color its entire case—just as it does in its brief. Govt.11-12 ("The same scheme ensued with Huang."). That was improper, since a defendant must be tried for its *own* conduct. As the Government emphasizes, only Huang's intent matters. Yet it insists the testimony about schemes Huang did not even know of was properly admitted.

*First*, the Government claims this material is actually direct evidence of SZNW's malfeasance. Govt.68. But stating it does not make it so, and the Government struggles to articulate *why* evidence of Huizar entering corrupt deals with others is direct evidence of anything Huang did. It is not. The Government accepts the ruling that this evidence concerned *separate* schemes. 12-ER-2833. And, as the Government's own cited case says, evidence of a "distinct scheme" is, by definition, not direct evidence of the charged

18

scheme—and so is not "admissible" to prove the latter. *United States v. Boone*, 628 F.3d 927, 935 (7th Cir. 2010). That is why the Government cannot introduce evidence of a hub's interactions with other spokes in a conspiracy, absent proof of a rim connecting them. *See, e.g.*, *United States v. Abdelaziz*, 68 F.4th 1, 55-57 (1st Cir. 2023).

The Government only highlights the problem by treating this evidence as proof that SZNW dealt with Huizar in the "same manner" as other developers—*i.e.*, corruptly. Govt.68. As that framing concedes, the purpose of this evidence was to invite the jury to understand SZNW's actions in light of how Huizar engaged with *others*. But evidence about a scheme "with which [defendant] was not involved" is "not direct evidence of [his] involvement in the charged scheme." *United States v. Davis*, 803 F. App'x 80, 82-83 (9th Cir. 2020) (*per curiam*). It is quintessential "other act" evidence under Rule 404(b): insinuating that SZNW must have interacted with Huizar corruptly, because that is how others interacted with him in his "general … pay-to-play scheme." Govt.68.

*Second*, the Government says this evidence is "inextricably intertwined" with the charged scheme. Govt.67. Here too, the Government offers no reasoning. And here too, its assertion is nonsensical. The "inextricably intertwined" doctrine is "narrowly circumscribed and limited" to cases where it is *impossible* otherwise to tell a cogent story. *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021). That is not so here: There is no reason—and the Government does not suggest one—why it was necessary for the jury to learn about Huizar's corrupt dealings with others. The Government's story about SZNW alone was *coherent* on its own terms; it was just not *compelling*.

*Third*, the Government invokes Rule 404(b)'s exceptions. Govt.68. But it makes no effort to back up this assertion—nor did it do so in the district court. 12-ER-2833; ECF-649, at 8-11. That is fatal, as the Government bears this burden. *See United States v. Holiday*, 998 F.3d 888, 895 (9th Cir. 2021). Anyway, no safe harbor permitted this evidence. As this Court has explained, Rule 404(b)'s exceptions allow evidence related to the *particular* crime charged—*e.g.*, evidence of one crime to explain the motive for another. *See, e.g.*, *United States v. Brown*, 880 F.2d 1012, 1015 (9th Cir. 1989) (collecting proper uses). But the sole purpose of the Government's "other act" evidence here was to prove it was more likely SZNW bribed Huizar, because Huizar was in the business of taking bribes. That does not "establish a chain of inferences no link of which is based on a propensity inference." *United States v. Smith*, 725 F.3d 340, 345 (3d Cir. 2013); *see also Charley*, 1 F.4th at 648-50. Quite the opposite.[2]

## B. The Court Wrongly Excluded the Most Powerful Direct Evidence of the Chairman's Good Faith.

As the Government emphasizes, this case hinged on the Chairman's *intent* when he gave gifts to Huizar. Govt.27, 30-33, 35-36, 38, 40, 41-42, 50, 52. Did he think he was buying official action, or merely greasing the wheels? That puts a high premium on any direct evidence bearing on the Chairman's thought process.

---

[2] All this was compounded by the gratuitous and inflammatory evidence of Huizar's crimes and concealment efforts—most of which Huang did not even know about (Govt.63-64), at least some of which involved money derived from *other* schemes (Govt.64), and none of which bore on how *Huang* saw his dealings with Huizar (Br.42).

Such evidence existed: a contemporaneous conversation between Huang and his right-hand man, Ricky Zheng, who cooperated and testified for the Government. Long before any investigation, the Chairman's aides "expressed … concerns" about "giving thousands of dollars in casino chips" to "a government official." 8-ER-1778-79. But the Chairman was not moved, since—as he told Zheng—"they were just having fun," "not doing anything wrong," and he "had not asked Mr. Huizar for anything." 12-ER-2659. Confronted by anxious aides, the Chairman essentially told them to relax. That is, by far, the single most direct and probative piece of evidence of the Chairman's mental state at the relevant time.

The district court excluded it. *See* 8-ER-1835-37. That exclusion was obviously prejudicial, and also legally erroneous. The court thought the Chairman's statement was inadmissible hearsay. It was not, for three independent reasons.

*First*, the testimony was not hearsay because it was not introduced "to prove the truth of the matter asserted," Fed. R. Evid. 801(c)(2)—*i.e.*, that Huang and Huizar were "just having fun" or "not doing anything wrong." Rather, the point was to illuminate the Chairman's mental state. Someone with corrupt intent would have reacted to his friends' concerns by saying "don't tell anyone and we'll be fine," or "don't worry, they'll never catch me." Instead, the Chairman shrugged off the worries because he did not believe his conduct was problematic. That reaction provides a critical window into his thinking, whether or not Huang was *in fact* "having fun" or "doing anything wrong."

21

That distinguishes the Government's cases, in which defendant tried to introduce their own denials to law enforcement that they had committed the crimes. *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (*per curiam*) ("denied committing the robbery"); *United States v. Mitchell*, 502 F.3d 931, 964 (9th Cir. 2007) ("denied killing anyone"). Those statements are *only* relevant for their truth—as evidence the defendant had not committed the crime. That is classic hearsay. By contrast, Huang gave the gifts and never denied it. The question is what he was *thinking* when he did so.

*Second*, even if otherwise hearsay, this testimony was admissible as a statement "of the declarant's then-existing state of mind." Fed. R. Evid. 803(3). As explained, Huang's reaction to the concerns revealed his "state of mind" (innocent) and "intent" (to cozy up to Huizar). "The statements were offered to show his state of mind at the time," not "to establish the truth of what he had said," and were thus admissible under Rule 803(3). *Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1052-53 (9th Cir. 2013).

The Government responds that Rule 803(3) still excludes a statement of belief used "to prove the fact … believed." Govt.71-72. But that "bar applies only when the statements are offered to prove the truth of the *fact underlying the … belief*." *Wagner*, 747 F.3d at 1053 (emphasis added). "I was scared because the defendant threatened to kill me" cannot be used to prove the defendant made death threats. But, contrary to the Government, that is not what was going on here. The Chairman expressed a belief (he was "not doing anything wrong") and gave his reason for that belief (they were "just having fun" and he "had not asked Mr. Huizar for anything"). As explained, however,

that statement was not being introduced for the truth of the facts underlying the belief (which were irrelevant or undisputed). Its probative value is for Huang's intent, so Rule 803(3) permitted it. This Court rejected the Government's broader approach to that Rule's carve-out in *Wagner*. *See id.* at 1053; *id.* at 1057 (Smith, J., dissenting) (invoking the Government's case, *United States v. Fontenot*, 14 F.3d 1364 (9th Cir. 1994)).

*Finally*, the common-law rule of completeness demanded admission because, despite its denial (Govt.74), the Government created a misleading impression when it elicited testimony that Huang's advisors held and "expressed" their "concerns" about the gifts. 8-ER-1778-80. Without hearing Huang's response, the jury was left to assume he blew them off—turning what should have been evidence of good faith into proof of corrupt intent. When prosecutors create a "misleading impression" by introducing part of a conversation, the defendant may introduce other parts that "serve to correct" it, even if otherwise inadmissible. *United States v. Lopez*, 4 F.4th 706, 717 (9th Cir. 2021).

The Government responds that *Federal Rule of Evidence 106* does not apply to oral conversations or compel admission of hearsay. SZNW never invoked Rule 106; the common-law rule "operate[s] independently," covers "oral statements," and "trumps the hearsay rule." *United States v. Quinones-Chavez*, 641 F. App'x 722, 728 (9th Cir. 2016) (Fisher, J., concurring in part, dissenting in part, concurring in judgment).[3]

---

[3] The Government also claims SZNW invoked this rule "for the first time" on appeal (Govt.73), but that is false. SZNW raised this error below (ECF-995, at 14), and the trial court denied relief without invoking forfeiture (ECF-1052, at 6-7).

### C.  The Evidentiary Errors Were Not Harmless.

The wrongful introduction of "other acts" evidence is presumptively prejudicial under this Court's cases, and "almost always" warrants reversal.  *Kennedy v. Lockyer*, 379 F.3d 1041, 1055-56 (9th Cir. 2004); *see also Charley*, 1 F.4th at 651.  Compounding the prejudice here, the court excluded the most direct evidence available to rebut the guilt-by-association tactic.  Together, these errors require a new trial.

The Government ignores the presumption and never grapples with the power of the excluded evidence.  At most, it makes a *pro forma* assertion that other evidence was substantial.  But that is not true as to the key element—the existence of an exchange.  And even if other evidence was weighty, the prosecutors "relied heavily" on improper material, creating "a grave danger that the defendant's guilt was established" by "other acts of wrongdoing."  *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1017 (9th Cir. 1995).  The Government cannot dismiss these errors as harmless.

## CONCLUSION

This Court should reverse the convictions, or order a new trial.

Richard M. Steingard
LAW OFFICES OF
RICHARD M. STEINGARD
724 Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 260-9449
rsteingard@steingardlaw.com

*/s/ Yaakov M. Roth*
Yaakov M. Roth
Harry S. Graver
Alexis Zhang
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone: (202) 879-3939
yroth@jonesday.com

*Counsel for Defendant-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____23-972_____

I am the attorney or self-represented party.

**This brief contains** _____6,497_____ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _____/s/ Yaakov M. Roth_____ **Date** _____March 1, 2024_____

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on March 1, 2024. I certify that all participants in the case are ACMS users and that service will be accomplished by the appellate ACMS system.

Dated: March 1, 2024                                          */s/ Yaakov M. Roth*
                                                                              Yaakov Roth